# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KARTIK PATEL, and PMK CORPORATION, d/b/a BUDGET 8 INN, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:23-cv-01495-JMS-MKK |
| CONSOLIDATED CITY OF INDIANAPOLIS/ MARION COUNTY; CITY OF INDIANAPOLIS DEPARTMENT OF BUSINESS AND NEIGHBORHOOD SERVICES; ABBEY BRANDS, in her Official capacity; AMY WUNDER, in her Official capacity, and CHARLES ASKEW In his official and individual capacities, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

Defendants, Consolidated City of Indianapolis and Marion County, City of Indianapolis Department of Business and Neighborhood Services, Abbey Brands, Amy Wunder, and Charles Askew, by counsel, hereby responds to Plaintiff's Complaint as follows:

## Nature of the Action

1.     This action arises from Defendants' campaign to shut down Plaintiffs' hotel in violation of Plaintiffs' due process rights under the United States and Indiana constitutions, and in violation of City ordinances and Indiana statutes, whjle interfering with Plaintiffs' contracts and business relationships with their hotel guests and publicly disseminating false and defamatory statements that plaintiff

Patel had been anested. Not s111p1isingly, Defendants' actions have had a devastating effect on Plaintiffs' finances and business reputation. Plaintiffs have brought the present action to obtain financial compensation and restore their wrongfully besmirched good names in the community.

**Answer: Deny.**


2.     Since 2015, Plaintiffs have operated the Budget 8 Inn Hotel (the "Hotel") on the troubled east side of Indianapolis. Through Plaintiffs' efforts, the Hotel has become a much-needed asset to that community. Those efforts have included making rooms at the Hotel available for free or at a discount to individuals trying to get back on their feet. Indeed, the Hotel often provides the only safe haven for individuals and families in the community, many of whom are in transition to a more permanent living situation.

**Answer: Deny.**


3.     Plaintiffs worked independently and with the City to address what the City has deemed to be an excessive number of 911 calls by Hotel guests, successfully keeping the call ratio at a level below the threshold set by the City when calculated consistent with the language of the Revised Code of the Consolidated City of County of Indianapolis/Marion County ("Revised Code"). Nonetheless, Defendants decided that the time had come to shut down the Hotel.

**Answer: Deny.**

4.     On January 18, 2023, Plaintiffs applied to renew their annual license to operate the Hotel. While the application was still pending, Defendants sent a City social worker to talk to Hotel guests under the guise of providing information about City services, but who instead surreptitiously told guests that the Hotel was shutting down.

**Answer: Deny.**

5.     The following day, Defendants issued a decision denying the Hotel's license renewal application based in part on false info1mation. Despite knowing that the Hotel's license would remain in effect for what could be months while the decision was appealed, Defendants ordered Plaintiffs by email to stop taking guests immediately and to shut down the Hotel within 60 days. Upon receiving the email, plaintiff Patel promptly advised Defendants that the denial was based on inaccurate information. Nonetheless, Defendants took it upon themselves to begin the process of shutting down the Hotel-effectively and improperly rescinding the Hotel's operating license immediately without notice or hearing. Defendants directed police and other City officials to go door-to-door at the Hotel and tell guests falsely that they would have to leave because the Hotel was no longer licensed to operate. Although Defendants later admitted their mistake, the damage had been done. A large number of guests vacated the Hotel before their stay ended, and the Hotel experienced a substantial drop in new guests.

**Answer: Deny.**

6.     To further damage Plaintiffs' business and reputations, Defendants also held

out to the public that Patel had been arrested and that Patel lied about the arrest in

the Hotel's license renewal application, knowing that these assertions were false.

**Answer: Deny.**


7.     Defendants' interference with their business, false statements, and violation

of Plaintiffs' civil rights have caused Plaintiffs to suffer significant monetary

damages and damage to reputation. Patel has also suffered ongoing mental anguish

and emotional distress arising from Defendants' intentional and malicious violation

of his rights, and resulting reputational damage. Plaintiffs demand compensation

for lost revenue and earnings, mental anguish, emotional distress, and punitive

damages, as well as attorneys' fees and costs pursuant to 42 U.S. Code§§ 1983 and

1988.

**Answer: Deny.**

### Parties

8.     Plaintiffs incorporate by reference each and eve1y paragraph above as though

fully set forth herein.

**Answer: Defendants incorporate by reference each and every answer.**


9.     Plaintiff Patel is domiciled in Indiana and maintains his permanent

residence in Brownsburg, Indiana but bas been living at the Hotel (Budget 8 Inn,

6850 E. 21st Street, Indianapolis, IN 46219) full-time with his wife, son, and mother since March 2020.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

l 0.     Plaintiff PMK is a corporation organized under the laws of Indiana, and maintains a principal place of business at 6850 East 21st Street, Indianapolis, Indiana 46219.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

11.     Plaintiff Patel and his wife own all of the outstanding shares of PMK.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

12.     Defendant City is a consolidated municipal government located within, and duly chartered under, the laws of the State of Indiana, with its seat of government located at 200 East Washington Street, 2501 City-County Building, Indianapolis, Indiana 46204.

**Answer: Admit.**

13.     Defendant BNS is the administrative agency responsible for granting, renewing, revoking, denying, and suspending hotel licenses on behalf of the City, and is located at 1200 Madison Ave, Suite 100, Indianapolis, Indiana 46225.

**Answer: Admit.**

14.     Defendant Brands is the Director of BNS and, upon information and belief, is domiciled and maintains a pe1manent residence in Indianapolis, Indiana.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

15.     Defendant Amy Wunder was an Administrator at BNS during all relevant times. She is currently the Deputy Director of Construction and Business Services at BNS. Upon information and belief, Wunder is domiciled and maintains a permanent residence in Indianapolis, Indiana.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

16.     Defendant Askew is a License Administrator with BNS and, upon information and belief, is domiciled and maintains a permanent residence in Indianapolis, Indiana.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

## Jurisdiction and Venue

17.     This Court has federal subject matter jurisdiction over Plaintiffs' claims asserting violations of federal constitutional rights under 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1343 (civil rights jurisdiction).

**Answer: Deny.**


18.     This Court can and should exercise supplemental jurisdiction over Plaintiffs' state law claims, which arise out of the same transactions and occurrences as Plaintiffs' federal claims, pursuant to 28 U.S.C. § 1367(a).

**Answer: No response is required. To the extent that another response is required, Defendants deny the allegations.**


19.     Personal jurisdiction is proper in this Court because all the Defendants reside and are domiciled in this judicial district.

**Answer: No response is required. To the extent that another response is required, Defendants deny the allegations.**


20.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and 18 U.S.C. § 1965 because all Defendants reside in Indiana, and the City, its agencies, and its political subdivisions are located in this judicial district, wherein a substantial part of the events, actions, and omissions giving rise to Plaintiffs' claims occurred.

**Answer: No response is required. To the extent that another response is required, Defendants deny the allegations.**

Factual Allegations

## The Hotel

21.     On August 31, 2015, PMK pm-chased a shuttered hotel property located at 6850 East 21st Street on Indianapolis' east side.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

22.     Patel, who owns PMK with his wife, invested roughly $3.85 million to pm-chase, renovate, enhance, and rebrand the Hotel as the Budget 8 Inn Hotel.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

23.     With the City's approval, Plaintiffs re-opened the property on December 22, 2016.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

## Plaintiffs and the Hotel: Vital to the Community

24.     Since re-opening the Hotel, Patel has undertaken significant efforts to suppo1t the surrounding community and its residents.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

25.    The Hotel has offered its guests long-te1m stays, frequently serving as a safe haven for individuals and families who are in transition to a more permanent living situation.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

26.    Patel makes rooms at the Hotel available at a discount to local churches that assist individuals and families to get back on their feet.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

27.    The Community Alliance for the Far Eastside also relies on the Hotel to provide housing assistance to residents of the local community.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

28.    Patel frequently makes rooms at the Hotel available for free to individuals in particular need when funding for their stays is not otherwise available.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

29.    Patel also makes substantial donations to support the communities in which his hotels are located. For example, Patel donated $20,000 in Visa gift cards to the Indianapolis Public Safety Foundation so Indianapolis Metropolitan Police Department ("IMPD") officers could give the gift cards to local residents in need in an effort to build relationships in their communities.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

30.    Patel was also presented with the 2018 East District Crime Fighter of the Year Award by the IMPD in August 2018 for his efforts in working with the IMPD and local officials to help reduce crime on the east side of Indianapolis.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

## The "Calls for Service Ratio"

31.    In 2018, the Indianapolis City Council passed an ordinance intended to address public safety concerns at hotels in the City that were considered to be hot spots for calls to emergency services. See Title IV ("Business and Commercial Regulation and Licenses"), Chapter 901 ("Hotels and Places of Lodging") of the Revised Code, §§ 102, 204, and 303-04.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

32.     The Revised Code requires BNS to calculate a "calls for service ratio" for each hotel in the City, which allows BNS to identify hotels considered to have an unacceptably high number of emergency calls. See Revised Code § 901-102.

**Answer: No response is required. To the extent that another response is required, Defendants deny the allegations.**


33.     To calculate the "calls for service ratio," BNS uses 911 data to dete1mine the number of calls originating from within a hotel and "divide[s that] by the number of rooms in service at the hotel." See Revised Code § 901-102.

**Answer: No response is required. To the extent that another response is required, Defendants deny the allegations.**


34.     The Revised Code defines "calls for service" as "the total number of calls to law enforcement or the fire department that result in a request that a representative be dispatched or directed to the hotel, over a one year period, when those responses: (1) Result in a representative being dispatched or directed to the hotel; (2) Allege evidence of criminal activity; (3) Result in an arrest, charge or citation; or (4) Find an imminent threat to safety of persons or property." See Revised Code§ 901-102 (emphasis added).

**Answer: No response is required. To the extent that another response is required, Defendants deny the allegations.**

35.     If the "calls for service ratio" for a hotel exceeds 2.5 for a one-year period, the Revised Code requires BNS to put the hotel on probation. See Revised Code§ 901-303(a).

**Answer: No response is required. To the extent that another response is required, Defendants deny the allegations.**

36.     "Any hotel that enters a probationary period [must] complete meetings, separately or combined, with police, fire, health, and zoning officials to discuss issues related to the property contributing to criminal activity and actions to mitigate them and limit their impact." See Revised Code§ 901-303(b) (emphasis added).

**Answer: No response is required. To the extent that another response is required, Defendants deny the allegations.**

37.     BNS has the discretion not to renew a hotel's license if, "[f]or any hotel operating in a probationary period, the calls for service ratio is at or above 2.5 over any one year period after entering probation." See Revised Code§ 901-204(e)(4).

**Answer: No response is required. To the extent that another response is required, Defendants deny the allegations.**

## Unwanted Scrutiny of the Hotel and BNS by the Local Media

38.     The Hotel is located in a troubled area on the east side of the City.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

39.     Plaintiffs do not dispute that the Hotel receives frequent visits from police and other emergency services, however, a significant number of 911 calls from Hotel are not related to criminal activity.

 **Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

40.     On June 7, 2021, local news reporter Zach Myers emailed BNS Chief Communications Officer Brandi Pahl to request information for a story about a shooting that occurred at the Hotel that morning.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

41.     Myers requested "information on the current status of the motel, as it relates to the city's 'problem hotel' ordinance... Based on the number of emergency runs within a year's time" and whether "the motel currently [is] in good standing, or [on] any kind of probationary status, etc.?"

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

42.     License and Data analyst Andrew Jaworski provided Pahl with the calls for service ratio at the Hotel, which was 2.09 at the time, and advised that it is "impo1iant to note that most locations have received more calls than usual since the pandemic began."

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

43.     Askew also advised Pahl that the Hotel was "in good standing with their license expiring 1/22/2022," and that "BNS has not had any reported concerns about this location."

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

44.     Askew also noted that"[w]e collect data for runs made by citizens or guests of the hotel. There possibly could be a high number of runs but if requested by staff of the hotel those are not counted against them."

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

45.     On June 7, 2021, Pahl responded to Myers as follows:

The Budget 8 Inn is currently in good standing as they have not reached the 2.5 runs per room ratio that would place them on probation and require them to adopt a mitigation plan.

They are currently sitting at 2.09 runs per room. Attached is the data we have, we only have IMPD and IFD runs. It is also important to note that these are calls made by citizens or guests of the hotel/motel. There could be a high number of runs, but those that are requested by staff of the hotel/motel are not included in our formula.

Their license expires on January 22, 2022 - at which time DBNS will take into consideration any complaints and data that we have collected before issuing a renewal.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

46.     On the evening of June 7, 2021, CBS4 News published an article authored by Myers.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

47.     Although Pahl stated that the calls for service ratio for the Hotel was below the threshold for probation and the Hotel was in good standing, the article reported that the Hotel "has become a 'hot spot' for drugs, overdoses and various other crimes associated with drug activity."

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

48.  The article also noted that "data from [BNS] only includes IMPD and Indianapolis Fire Department calls," and that the "city's hotel and motel ordinance formula does not factor in emergency calls from motel or hotel employees."

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

49.    The article further reported that "a sign could be seen posted outside the Budget 8 Inn office door" which stated:

If you need police assistance: Notify the office.

911 calls made from rooms may result in your being asked to leave (without a refund).

$50 penalty will apply

**Answer: Defendants admit that the hotel had a sign posted threatening a penalty for 911 calls made from rooms.**

50.    The article ended quoting Pahl's statement:

"The Budget 8 Inn's license expires on January 22, 2022," Pahl said in a statement.

"At which time DBNS will take into consideration any complaints and data that we have collected before issuing a renewal."

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

51.     On August I 0, 2021, Patel met with Askew and Jaworski to discuss these issues and ensure that BNS was properly tallying the calls for service at the Hotel.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

52.     Patel provided the telephone numbers for the rooms at the Hotel and the private cell phone numbers of employees to assist BNS in identifying calls that came from the Hotel's rooms and the Hotel's staff.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

53.     On or about December 13, 2021, Myers contacted Pahl asking for an update on the license status of the Hotel, and requested the 9 l l data collected by BNS and the number of runs per year that BNS was going to use to determine if the Hotel would be put on probation.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

54.     Pahl asked Askew how to respond and said she thought that the information Myers sought was for the local television news that evening because Myers had given BNS a deadline to respond to his inquiry of 1:30pm that afternoon.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

55.     Askew spoke with BNS Administrator Amy Wunder before responding to Pahl.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

56.     Ninety minutes later, Askew responded to Pahl that if Plaintiffs submitted an application for renewal, they would consider putting the Hotel on probation.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

57.     Upon information and belief, Askew and Wunder decided BNS would put the Hotel on probation, at least in pa1t so that BNS would not be po1trayed unfavorably in the local news.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

## BNS Puts the Hotel on Probation as Wunder and Askew had Planned

58.     On or about January 18, 2022, Patel received a letter from BNS License Administrator Charles Askew.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

59. According to Askew, the "calls for service ratio" at the Hotel was 3.19 as of the end of the one-year license term ending in January 2021.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

60. The letter indicated that the Hotel was being placed on probation for a one-year period, and asked that Patel set up a meeting with City officials to discuss how to address the issue.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

61. Patel met with Askew and other City officials on March 16, 2022.

**Answer: Defendants admit only that Patel met with Askew and others.**

62. Before the meeting, Patel had already begun to implement measures to lower the "calls for service ratio" at the Hotel, which included installing a security system with live cameras linked to the IMPD, biting additional security personnel, and maintaining a "do not rent" registry of disorderly guests, all at PMK's expense.

**Answer: Deny.**

63. At the March 16, 2022, meeting, Patel reported to Askew and other City officials about these efforts to lower the number of calls for service at the Hotel.

**Answer: Deny.**

<u>Suspicions Arise that Defendants Are Targeting the Hotel for Closure</u>

64.     At the March 16 meeting, Patel again expressed concern that BNS's calculation of the "calls for service ratio" was incorrect. Among other errors, Patel pointed out that BNS had sometimes improperly double-counted or triple-counted calls to which more than one emergency service responded.

**Answer: Deny.**

65.     Patel also noted that BNS counted calls originating from Hotel employees and calls for welfare checks, both of which are expressly excluded from the "calls for service" count by the Revised Code. See Revised Code § 901-102.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

66.     Finally, Patel observed that BNS included calls unrelated to criminal activity, such as health-related emergencies for low-income Hotel guests whose only access to healthcare is through emergency services. Although BNS is technically allowed to include such calls in the count, Patel observed that doing so was not consistent with the purpose of Revised Code § 901- 102.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

67.     After the meeting, Patel provided Askew with a detailed analysis of the data showing each of the errors.

**Answer: Deny.**


68.     Patel emailed Askew several times, attempting to demonstrate BNS's miscalculation of the "calls for service ratio" at the Hotel, to which Askew responded by letter that BNS "would not debate the monthly data or change what has been captured" without further explanation.

**Answer: Deny.**


69.     In light of Askew's steadfast refusal to recalculate the Hotel's "calls for service ratio" in a manner consistent with the Revised Code, Patel began to suspect that Askew was specifically targeting the Hotel for closure.

**Answer: No response is required. To the extent that another response is required, Defendants deny the allegations.**


## Nonetheless, Plaintiffs Continue in Good Faith to Address the "Calls for Service Ratio"

70.     In the following months, Plaintiffs continued to implement policies to lower the 911 call volume at the Hotel.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

71.     Patel had hired off-duty police officers to patrol the property since it opened in 2016. In January 2022, he replaced them with other personnel he believed would do a more effective job at maintaining security. Patel also regularly patrols the property himself.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

72.     Patel reiterated to Hotel employees that they should continue to assist police in their efforts to investigate any crimes at the Hotel.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

73.     Patel also instructed Hotel employees to record when emergency services visited the Hotel to keep a real-time record of the "calls for service ratio."

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

74.     On May 10, 2022, Patel attended another meeting with BNS and other City officials at which he provided an update on the security measures being taken at the Hotel.

**Answer: Deny.**

## A Summons is Issued Under Curious Circumstances; No One is Arrested

75.     On July 22, 2022, an IMPD police officer observed a 911 call sign at another hotel Patel owned, the Regal 8 Motel, similar to the one Myers reported about at the Hotel.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

76.     The officer asked an employee at the Regal 8 Motel about the sign and spoke with Patel over the phone.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

77.     Patel told the officer about his situation with BNS and his motivation for putting up the sign. The officer nonetheless advised Patel that the sign likely violated the law.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

78.     Patel thereafter removed the sign from the Regal 8 Motel and from the Hotel.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

79.     Patel met with Askew again on August 9, 2022, to further update Askew on the security measures being taken at the Hotel. IMPD Detective Tiffany Mastin attended the meeting, together with other IMPD officials, to address the sign observed by the IMPD officer on July 22.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

80.     For reasons that are unclear but troubling in light of the previous unwanted attention from the local news and subsequent events, the incident involving the sign had apparently been turned over to an IMPD Detective to determine probable cause despite the "offense" at most constituting a misdemeanor.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

81.     Detective Mastin asked Patel "if he was gaming the system by controlling how 911 calls are made from his hotels."

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

82.     Patel answered that all 911 calls were being funneled through his staff to ensure that the calls were only being placed for reasons appropriate to call 911.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

83.     Detective Mastin then waited almost two more months, until September 27, 2022, to complete an Affidavit for Probable Cause in connection with the sign the IMPD officer observed on July 22.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**


84.     By that time, however, Patel had already removed the signs.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**


85.     No criminal action was filed at that time.

**Answer: Deny.**


86.     Instead, Detective Mastin emailed BNS on September 29, 2022, to request the "calls for service ratio" at the Hotel.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**


87.     BNS responded the same day, advising Detective Mastin that the "calls for service ratio" for the Hotel as of the end of August 2022 was 1.53 - well below the 2.5 threshold for probation required by the Revised Code.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

88.    BNS emailed Detective Mastin again on October 3, 2022, to advise the Detective that data from September yielded an updated "calls for service ratio" of 1.7 - again, well below the 2.5 threshold.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

89.    It was not until October 19, 2022 - three months after Patel spoke with the IMPD officer about the 911 signs - that the Affidavit for Probable Cause was acted upon and the City filed a criminal action against Patel related to the signs.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

90.    Patel received via email a Summons issued on October 21, 2022.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

91.    The Summons stated that the City was charging Patel with two misdemeanor counts of intimidation in connection with the signs.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

92.    The Summons described Patel's alleged offenses as follows:

COUNT I: On or about July 22, 2022, Kartik Patel, the owner of the Regal 8 Motel, did communicate a threat to Mindy Andrew, that is: that she must leave the hotel without a refund for the cost of her hotel room, with the intent that Mindy Andrew be placed in fear of retaliation for calling 911 for assistance, a prior lawful act;

COUNT II: On or about July 22, 2022, Kartik Patel did communicate a threat to Mindy Andrew, another person, that is: that she will be asked to leave the hotel without a refund for the cost of her hotel room if she calls 911 for assistance, with the intent that Mindy Andrew engage in conduct against her will by not calling 911 for assistance;

all of which is contrary to statute and against the peace and dignity of the State of Indiana.

**Answer: No response is required. To the extent that another response is required, Defendants deny the allegations.**

93.     This again was curious as Patel was not present at the Regal 8 Motel during the incident described in the Summons.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

94.     Moreover, none of Patel's employees told anyone named Mindy Andrew that she would have to leave the Regal 8 Motel for calling 911.

**Answer: Deny.**

95.     Indeed, there is no record of any Mindy Andrew ever being a guest at the
Regal 8 Motel.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained
in this paragraph, and therefore deny the allegations.**


96.     Prosecutors asked Patel to waive his claims against the City in connection
with the Summons in exchange for a diversion plea, whereby Patel would avoid a
conviction by paying a fine and performing community service. In light of his
innocence, however, Patel refused to plead to a diversion for the charged infractions.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained
in this paragraph, and therefore deny the allegations.**


97.     The Summons has been outstanding against Patel for roughly nine months as
of the date of this Complaint, with minimal progression by City prosecutors.

**Answer: Deny.**


98.     On May 17, 2023, Patel filed a motion to dismiss the charges, which is
currently under consideration.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained
in this paragraph, and therefore deny the allegations.**


99.     Patel was never arrested for the offenses alleged in the Summons.

**Answer: Deny.**

100.　Service of a Summons does not now, and never has, constituted an "arrest" under Indiana law.

**Answer: No response is required. To the extent that another response is required, Defendants deny the allegations.**

101.　With the benefit of hindsight, it appears that the involvement of Detective Mastin and the issuance of the Summons was intended to further the City's efforts to target the Hotel for closure, as Patel suspected.

**Answer:** Deny.

**The Suspicions Prove Correct**

102.　On January 18, 2023, Patel submitted an application to renew the Hotel's operating license.

**Answer: No response is required. To the extent that another response is required, Defendants deny the allegations.**

103.　BNS assigned Askew to process Plaintiffs' application.

**Answer: No response is required. To the extent that another response is required, Defendants deny the allegations.**

104.　Defendant Brands, who became Director of BNS on January 1, 2023, supervised Askew's and BNS's processing of Plaintiffs' application to renew the Hotel's operating license.

**Answer: No response is required. To the extent that another response is required, Defendants deny the allegations.**

105.    Upon information and belief, Askew was also supervised by defendant Amy Wunder.

**Answer: No response is required. To the extent that another response is required, Defendants deny the allegations.**

106.    Brand and Wunder were personally involved in internal BNS discussions regarding the license renewal application of the Hotel.

**Answer: No response is required. To the extent that another response is required, Defendants deny the allegations.**

107.    The renewal application included the following question:

Has the applicant, partner or any corporate officer of the business ever been *arrested* or *convicted* of a felony, misdemeanor or ordinance violation other than a minor traffic charge? (emphasis added)

**Answer: No response is required. To the extent that another response is required, Defendants deny the allegations.**

108.    Patel correctly responded "No" to this question.

**Answer: Deny.**

109.   At some point before February 5, 2023, Defendants decided to deny the license renewal application and shut the Hotel down.

**Answer: Deny.**


## Defendants Implement Their Plan: Step 1 - Denying the Renewal Application on False Grounds

110.   On February 5, 2023, while the renewal application was still pending, Defendants sent a social worker to the Hotel purpo1tedly to provide guests with information about City services available to them, including transportation and food benefits.

**Answer: Deny.**


111.   In fact, guests at the Hotel advised Patel that the social worker told them that the City was going to shut the Hotel down.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**


112.   Upon information and belief, BNS provided the social worker with the information that she shared with Hotel guests.

**Answer: Deny.**

113.    This was Patel's first intimation that BNS would be denying his renewal application.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**


114.    On February 9, 2023, Patel sent an email to Askew inquiring about the status of the Hotel renewal application.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**


115.    That same day, Askew responded by email that BNS had denied the Hotel's renewal application.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**


116.    The email identified five sections of the Revised Code as supporting denying the application under Revised Code§§ 901-204(b)(l), 901-204(d), 801-303(a)(2), 801-303(a)(4), and 901-204(f).

**Answer: No response is required. To the extent that another response is required, Defendants deny the allegations.**


117.    It stated that the application was denied because: (1) Patel "*failed to disclose being arrested* and charged for two ... counts of intimidation, an A Misdemeanor,

under cause number 49D35-2210-CM-028423"; (2) "A letter received from the [IMPD] shows that this hotel location is *inimical to the public welfare*"; and (3) "IMPD has provided a letter to the license administrator *stating objections to the Budget 8 Inn license renewal because of concerns for public safety*." (emphasis added).

**Answer: No response is required. To the extent that another response is required, Defendants deny the allegations.**

118.    Section 901-204(b)(l) provides that "[t]he administrator shall deny any application for a new license, or renewal of a license, if ... : (1) [t]he applicant makes a material misrepresentation of fact on the application."

**Answer: No response is required. To the extent that another response is required, Defendants deny the allegations.**

119.    Patel responded to Askew's email and informed him that there was no misrepresentation on the license renewal application because he has never been arrested.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

120.    Askew ignored this information and, as of the date of this Complaint, has never explained the source of the error or corrected it.

**Answer: Deny.**

121.     Section 901-204(d) provides that "[t]he administrator shall deny any application for renewal of a license, if the licensee bas failed to comply with sections 801-301 through 801-303."

**Answer: No response is required. To the extent that another response is required, Defendants deny the allegations.**


122.     Section 801-303(a)(2) provides that "[a]ll licenses shall be issued upon the condition that the licensee shall: ... (2) Conduct and maintain the licensed business and premises in such a manner that they will not create a nuisance or become inimical to the public welfare."

**Answer: No response is required. To the extent that another response is required, Defendants deny the allegations.**


123.     As of the date Plaintiffs submitted the application, the Hotel's yearlong "calls for service ratio" was below 2.5.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**


124.     Section 801-303(a)(4) provides that "[a]ll licenses shall be issued upon the condition that the licensee shall: ... (4) [n]ot permit any illegal activity to take place on the licensee's premises or in the conduct of the licensed business."

**Answer: No response is required. To the extent that another response is required, Defendants deny the allegations.**

125.    Despite Askew's sweeping and highly insulting accusation that Patel permitted illegal activity at the Hotel, Askew provided not a single instance of illegal activity at the Hotel that Patel or any Hotel employees purportedly permitted.

**Answer: Deny.**

126.    To the contrary, Askew was acutely aware of the substantial effort, time, and money Patel invested in order to reduce any criminal activity at the Hotel and serve as a resource to law enforcement to support their efforts and initiatives to reduce crime at the Hotel.

**Answer: Deny.**

127.    Section 901-204(£) provides that "the administrator may deny any application for a new license, or renewal of a license, if a written objection detailing the reason for objection is submitted by Marion Comity Health and Hospital Corporation, Indianapolis Metropolitan Police Department, or the Indianapolis Fire Department, and the administrator concludes that issuance or renewal of the license would be inimical to the public welfare."

**Answer: No response is required. To the extent that another response is required, Defendants deny the allegations.**

128.    Chief Randal Taylor of the IMPD submitted a letter objecting to the renewal of the Hotel's license, in part based on "observations made by the IMPD officers who

participated in" meetings with Patel that Patel "has not been willing to implement any of the security and safety recommendations made by my officers."

 **Answer: Admit.**


129.    Chief Taylor's statements were directly contradicted by BNS's determination nearly a year earlier that Plaintiffs implemented a number of deterrent measures at the Hotel "to support lowering the Calls for Se1vice Ratio and illegal activity on the prope1ty," including implementing "live link cameras to IMPD, new security officers, do not rent registry for disorderly guests, and Outreach programs providing services for those in need."

**Answer: Deny.**


130.    Chief Taylor's statements were not accurate, and BNS knew that his statements were not accurate.

**Answer: Deny.**


131.    Moreover, as previously noted, the Hotel's yearlong "calls for service ratio" was below 2.5 as of the date Plaintiffs submitted the application and has now decreased by 30% to roughly 1.4, both when calculated consistent with the language of the Revised Code.

**Answer: Deny.**

**Defendants Double Down on Their Error: Effectively Shutting the Hotel Down in Conscious Disregard of Plaintiffs' Constitutional Rights and the Governing Statutes**

132.    Denial of the application to renew the Hotel's license was not effective until February 24, 2023, at the earliest, pursuant to the Administrative Adjudication Act (IC 4-21.5-3-1 through 4-21.5-3-37), which was adopted into the Revised Code via§ 801-435(b). See IC 4-21.5- 3-5(f).

**Answer: No response is required. To the extent that another response is required, Defendants deny the allegations.**

133.    The Revised Code also provided Patel with 20 days to appeal the denial of the application to renew. See Revised Code§ 801-434(b). Upon filing an appeal, the license would remain in effect until a final decision was made on the appeal. IC 4-21.5-3-5(g).

**Answer: No response is required. To the extent that another response is required, Defendants deny the allegations.**

134.    BNS and Askew were aware that the termination of the Hotel's license would not take effect, if ever, for what was likely to be several months.

**Answer: Deny.**

135.    BNS and Askew knew, therefore, that it would be unlawful to order Plaintiffs to stop taking guests immediately.

**Answer: Deny.**

136.   Nonetheless, Askew instructed Patel in the February 9 email that the "Budget 8 Inn is immediately prohibited from furnishing or renting guestrooms to new guests and must cease operations within sixty (60) days of a final decision."

**Answer: No response is required. To the extent that another response is required, Defendants deny the allegations.**

137.   Section 901-205 provides that the license administrator "may revoke or suspend a hotel license at any time in accordance with section 801-412 of the Code, and shall follow the procedures set forth in that section."

**Answer: No response is required. To the extent that another response is required, Defendants deny the allegations.**

138.   Section 801-412 of the Revised Code requires that a "license administrator shall not suspend or revoke a license under this section without first holding a license administrator's hearing to investigate and examine the qualifications and conduct of the licensee. The license administrator shall serve notice of and conduct the heating according to the provisions of Division 2 of this article."

**Answer: No response is required. To the extent that another response is required, Defendants deny the allegations.**

139.   Accordingly, BNS could not revoke Plaintiffs' license without providing notice and conducting a hearing to investigate the reasons for denial.

**Answer: No response is required. To the extent that another response is required, Defendants deny the allegations.**

140.    BNS and Askew were aware of the notice and hearing requirements in the Revised Code.

**Answer: No response is required. To the extent that another response is required, Defendants deny the allegations.**

141.    BNS and Askew were aware that effectively revoking the Hotel's license by ordering Plaintiffs to stop accepting new guests and advising existing guests that they would need to leave, was improper without providing advance notice and conducting a hearing.

**Answer: No response is required. To the extent that another response is required, Defendants deny the allegations.**

142.    Nonetheless, on February 10, 2023, Defendants directed Andrew Merkley, an administrator with the City's Office of Public Health and Safety ("OPHS"), to go to the Hotel.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

143.    Merkley. was accompanied by City staff and IMPD officers.

**Answer:** Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.

144.    Merkley handed Patel a letter from Askew dated February 10, 2023, which stated as follows:

> Pursuant to Section 801-201 of the Revised Code of the Consolidated City of Indianapolis and Marion County ("Revised Code"), the hotel license for Budget 8 Inn located at 6850 E. 21st Street, Indianapolis, Indiana, has been denied by the Department of Business and Neighborhood Services. Kartik Patel, the owner of Budget 8 Inn, has been notified of the license denial and informed of next steps for closing the hotel. At this time, Budget 8 Inn does not have a license to operate in the City of Indianapolis, as required by the Revised Code.

> IMPORTANT INFORMATION FOR GUESTS: Budget 8 Inn must cease operations within sixty (60) days of a final decision. Mr. Patel must allow current guests a reasonable amount of time to vacate guestrooms (no less than one week). Mr. Patel must also allow the City of Indianapolis or any partnering organization or charities to contact current guests directly in order to provide information regarding potential resources and alternative lodging options.

The City of Indianapolis Office of Public Health and Safety ("OPHS") and the Indianapolis Metropolitan Police Depaiiment's ("IMPD") Homeless Division have been engaged to help guests connect to resomces and provide information on other lodging options. Guests are not required to be assisted by OPHS or IMPD's Homeless Division if they do not wish.

If you have questions or concerns regarding potential resomces at a later date, please reach out to OPHS at 317-327-4291 or email [OPHSHousing@indy.gov](mailto:OPHSHousing@indy.gov).

**Answer: No response is required. To the extent that another response is required, Defendants deny the allegations.**

145. The statement in the letter that the Hotel no longer had a license to operate was false, as shown herein supra.

**Answer: Deny.**

146. Notwithstanding, and per Askew's instructions, Merkley, City staff, and the IMPD officers proceeded to visit Hotel guests door-to-door, falsely telling them that the Hotel was no longer licensed to operate, would be closing, and that they would have to leave.

**Answer: Deny.**

147.    Merkley, City staff, and the IMPD officers provided guests with pamphlets containing information about alternative housing arrangements, sliding pamphlets under the doors of guests who did not answer door knocks.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

148.    Per the directive in the February 10 letter, Patel stopped accepting new guests at the Hotel at 3:00 pm on February 10, 2023.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

149.    The following day, on February 11, 2023, Patel received from Askew for the first time a formal order denying the Hotel's renewal application.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

150.    The order, dated February 6, 2023, contained the same infomiation, directions, and false statements as were in Askew's February 9, 2023, email.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

151.    Under the terms of the February 6 Order, Patel was immediately prohibited from taking new guests at the Hotel and ordered to cease all operations within 60 days of a final decision.

**Answer: No response is required. To the extent that another response is required, Defendants deny the allegations.**

## Oops: Defendants Admit their Error (Sort Of)-But the Damage Is Done

152.    On Februa1y 23, 2023, Patel timely appealed the February 6 Order. Once again, this meant that the Hotel continued to have a valid operating license-and continues to have one through the present.

**Answer: Deny.**

153.    Plaintiffs do not now seek judicial review of BNS's decision to deny the Hotel's license, which is currently pending on appeal to the Board of Business and Neighborhood Services.

**Answer: No response is required. To the extent that another response is required, Defendants deny the allegations.**

154.    By letter dated March 3, 2023, Patel's attorney requested a meeting with Askew to discuss the possibility of a limited and conditional grant of authority for continued operations at the Hotel during the pendency of the appeal.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

155.    In the letter, PMK advised that:

PMK is interpreting [the phrase 'cease operations within 60 days of a final decision in the February 6 Order] with a common sense definition to the effect that the decision becomes "final" when the appeal process is concluded. This would be consistent with Court rules and other protocols applicable to contested matters. If the Department of Business and Neighborhood Services ("BNS") is employing a different definition or taking a different approach, we ask that you please advise and further provide the basis for any such position.

**Answer: No response is required. To the extent that another response is required, Defendants deny the allegations.**

156.    On March 7, 2023, an attorney for the City wrote Patel's counsel responding that BNS's "position has not changed" and that "all operations must cease at the hotel within sixty (60) days of the Committee's decision."

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

157.    The City's letter gave no indication that Plaintiffs could once again accept new guests.

**Answer: No response is required. To the extent that another response is required, Defendants deny the allegations.**

158.    By letter dated March 14, 2023, Patel's attorney emailed the City attorney seeking clarification on whether Plaintiffs could take new guests.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**


159.    The City's attorney responded by email admitting that the February 6 Order was stayed pursuant to the Administrative Adjudication Act.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**


160.    Upon receipt of the March 14 letter, the Hotel once again started accepting new guests. But the damage had been done.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**


161.    Defendants' unlawful effort to remove guests from the Hotel and begin shutting it down succeeded.

**Answer: Deny.**


162.    Existing guests vacated the Hotel.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

163.    New guests stopped coming to the Hotel.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**


164.    Local community organizations stopped sending people that required temporary housing to the Hotel.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**


165.    Because Patel complied with the express terms of the February 6 Order and did not accept new guests at the Hotel from February 10 to March 14, the Hotel experienced a substantial drop in revenue.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**


166.    The Hotel also lost substantial revenues due to the premature departure of guests before the end of their agreed-upon stays, caused by the actions of the City Defendants and Askew in falsely advising guests on February 10, that the Hotel was closing and they needed to find alternative accommodations.

**Answer: Deny.**

167.    The drop in Hotel revenue caused by Defendants' actions continues to date, as indicated by substantial decreases in year-over-year revenue for the months of February, March, April, May, June, and July of 2023.

**Answer: Deny.**


## COUNT I

Deprivation of Right to Procedural Due Process under the Fourteenth Amendment to the United States Constitution - Municipal Liability/Custom or Practice

(As Against the City Defendants and the Individual Defendants in their official capacities)


168.    Plaintiffs incorporate by reference each and every paragraph above as though fully set forth herein.

**Answer: Defendants incorporate by reference each and every answer.**


169.    The Fourteenth Amendment to the United States Constitution prohibits local government actors from depriving an individual of property without due process of law. Included within this protection are the rights to notice and a hearing when a local government deprives an individual of a protectable property interest.

**Answer: No response is required. To the extent that another response is required, Defendants deny the allegations.**

170.    Plaintiffs held a protectable property interest in the license to operate the Hotel and the right to engage in their business and therefore, pursuant to the Constitution of the United States, were entitled to procedural due process prior to revocation of the license, including notice, a hearing, and a right of appeal.

**Answer: No response is required. To the extent that another response is required, Defendants deny the allegations.**

171.    Defendants deprived Plaintiffs' of their due process rights by ordering Plaintiffs to immediately stop taking new guests, without adequate notice, the right to appeal, or a hearing, when they denied Plaintiffs' application to renew the license to operate the Hotel.

**Answer: Deny.**

172.    Defendants further deprived Plaintiffs' of their due process rights by sending City officials and police to the Hotel to tell guests that the Hotel was not licensed to operate and that they would have to leave, effectively revoking Plaintiffs' license before the Febrnary 6 Order legally took effect and without adequate notice, the right to appeal, or a hearing.

**Answer: Deny.**

173.    Defendants were acting in their official capacities under color of state law with deliberate indifference to the constitutional rights of Plaintiffs.

**Answer: Deny.**

174.    Defendants' actions were not isolated but in accordance with a policy or practice so permanent and well-settled as to constitute a custom or usage with the force of law.

**Answer: Deny.**


175.    Plaintiffs were deprived of their due process rights as a direct and proximate result of Defendants' actions.

**Answer: Deny.**


176.    As a direct and proximate result of Defendants' deprivation of Plaintiffs' due process rights, Plaintiffs have suffered, and will continue to suffer, damages in the form of lost revenue, a substantial decrease in the value of the Hotel property, harm to Patel's personal reputation, harm to PMK's business reputation, emotional distress and mental anguish suffered by Patel, and attorneys' fees to defend against Defendants' improper license revocation and effective shutdown of the Hotel.

**Answer: Deny.**


177.    Plaintiffs have also incurred, and will continue to incur, attorneys' fees in order to enforce their rights through the prosecution of this action.

**Answer: Deny.**

## COUNT II

Deprivation of Right to Procedural Due Process under the Fourteenth Amendment to the United States Constitution - Municipal Liability/Failure to Train and Supervise

(As Against the City Defendants and Brands and Wunder in their official capacities)

178.    Plaintiffs incorporate by reference each and every paragraph above as though fully set forth herein.

**Answer: Defendants incorporate by reference each and every answer.**

179.    The City and BNS, as well as defendants Abbey Brands, as the Director of BNS, and Amy Wunder, as a BNS Administrator, had a duty to ensure that License Administrators, including Defendant Askew, were trained and supervised to perform their duties in a way that did not violate the rights of members of the public protected by the United States Constitution.

**Answer: No response is required. To the extent that another response is required, Defendants deny the allegations.**

180.    The City, BNS, Brands, and Wunder were aware of Askew's actions at the time they occurred.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

181. The City, BNS, Brands, and Wunder were aware or acted with deliberate indifference to whether Askew's actions described herein violated the due process rights of Patel and PMK protected by the United States Constitution.

**Answer: Deny.**


182. The City, BNS, Brands, and Wunder directed, approved, and/or ratified through inaction, Askew's actions described herein.

**Answer: Deny.**


183. The City, BNS, Brands, and Wunder failed to train and supervise Askew sufficiently to prevent and/or mitigate Askew's violation of the constitutional rights of the public, including the constitutional rights of Plaintiffs, protected by the United States Constitution.

**Answer: Deny.**


184. The failure of the City, BNS, Brands, and Wunder to train and supervise Askew to prevent and/or mitigate Askew's violation of the rights of the public, including the constitutional rights of Plaintiffs protected by the United States Constitution, amounts to a deliberate indifference to the constitutional rights of the public and Plaintiffs, and directly and proximately caused the deprivation of Plaintiffs' due process rights.

**Answer: Deny.**

185.   As a direct and proximate result of the failure of the City, BNS, Brands, and Wunder to train and/or supervise Askew to prevent and/or mitigate Askew's violation of the constitutional rights of the public, including the constitutional rights of Plaintiffs, protected by the United States Constitution, Plaintiffs have suffered, and will continue to suffer, damages in the form of lost revenue, a substantial decrease in the value of the Hotel property, harm to Patel's personal reputation, harm to PMK's business reputation, emotional distress and mental anguish suffered by Patel, and attorneys' fees to defend against Defendants' improper license revocation and shutdown of the Hotel.

**Answer: Deny.**


186.   Plaintiffs have also incurred and will continue to incur attorneys' fees in order to enforce their rights through the prosecution of this action.

**Answer: Deny.**


## COUNT III

Deprivation of Right to Procedural Due Process under the Fourteenth Amendment to the United States Constitution - Personal Liability

(As Against Defendant Askew in his personal capacity)

187.   Plaintiffs incorporate by reference each and every paragraph above as though fully set forth herein.

**Answer: Defendants incorporate by reference each and every answer.**

188.    Defendant Askew's actions described herein violated the due process rights of Patel and PMK protected by the United States Constitution.

**Answer: Deny.**


189.    Defendant Askew was aware or acted with deliberate indifference to whether his actions described herein violated the due process rights of Patel and PMK protected by the United States Constitution.

**Answer: Deny.**


190.    Defendant Askew personally and directly participated in the violation of Plaintiffs' procedural due process rights protected by the United States Constitution.

**Answer: Deny.**


191.    Askew was acting under color of state law.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**


192.    Plaintiffs were deprived of their due process rights as a direct and proximate result of Askew's actions.

**Answer: Deny.**

193.    As a direct and proximate result of Askew's violation of Plaintiffs' rights to due process under the United States Constitution, Plaintiffs have suffered, and will continue to suffer, damages in the form of lost revenue, a substantial decrease in the value of the Hotel property, harm to Patel's personal reputation, harm to PMK's business reputation, emotional distress and mental anguish suffered by Patel, and attorneys' fees to defend against Defendants' improper license revocation and effective shutdown of the Hotel.

**Answer: Deny.**

194.    Plaintiffs have also incurred and will continue to incur attorneys' fees in order to enforce their rights through the prosecution of this action.

**Answer: Deny.**

## COUNT IV

Deprivation of Right to Procedural Due Process Under Article I § 12 of the Indiana Constitution

(As Against the City Defendants and the Individual Defendants)

195.    Plaintiffs incorporate by reference each and every paragraph above as though fully set forth herein.

**Answer: Defendants incorporate by reference each and every answer.**

196.    Article I § 12 of the Indiana Constitution provides that "[a]ll courts shall be open; and every person, for injury done to him in bis person, property, or reputation, shall have remedy by due course of law." Included within this protection are the rights to notice and a hearing when a local government deprives an individual of a protectable property or reputational interest.

**Answer: No response is required. To the extent that another response is required, Defendants deny the allegations.**


197.    Plaintiffs held a protectable property interest in the license to operate the Hotel and the right to engage in their business, as well as a protectable interest in their reputation, and therefore, pursuant to the Indiana Constitution, were entitled to procedural due process prior to the effective revocation of the Hotel's license, including notice, a hearing, and a right of appeal.

**Answer: Deny.**


198.    Defendants deprived Plaintiffs of their Indiana due process rights by denying Plaintiffs application to renew the license to operate the Hotel on the grounds that Patel lied about being arrested and the Hotel was "inimical to the public welfare," and by ordering Plaintiffs to immediately stop taking new guests without adequate notice, the right to appeal, or a hearing.

**Answer: Deny.**

199.    Defendants further deprived Plaintiffs' of their due process rights by sending City officials and police to the Hotel to tell guests that the Hotel was not licensed to operate and that they would have to leave, effectively revoking Plaintiffs' license before the February 6 Order legally took effect, without adequate notice, the right to appeal, or a hearing.

**Answer: Deny.**

200.    Defendant Askew's actions described herein violated the due process rights of Patel and PMK protected by the Indiana Constitution.

**Answer: Deny.**

201.    Defendant Askew was aware or acted with deliberate indifference to whether his actions described herein violated the due process rights of Patel and PMK protected by the Indiana Constitution.

**Answer: Deny.**

202.    Defendant Askew personally and directly participated in the violation of Plaintiffs' procedural due process rights protected by the Indiana Constitution.

**Answer: Deny.**

203.    The City and BNS, as well as defendant Abbey Brands, as the Director of

BNS, and Amy Wunder, as a BNS Administrator, had a duty to ensure that License

Administrators, including Defendant Askew, were trained and supervised to

perform their duties in a way that did not violate the rights of members of the

public protected by the Indiana Constitution.

**Answer: No response is required. To the extent that another response is required,**

**Defendants deny the allegations.**


204.    The City, BNS, Brands, and Wunder were aware of Askew's actions described

herein.

**Answer: Deny.**


205.    The City, BNS, Brands, and Wunder were aware or acted with deliberate

indifference to whether Askew's actions described herein violated the due process

rights of Patel and PMK protected by the Indiana Constitution.

**Answer: Deny.**


206.    The City, BNS, Brands, and Wunder directed, approved, and/or ratified

through inaction, Askew's actions described herein.

**Answer: Deny.**


207.    The City, BNS, Brands, and Wunder failed to train and supervise Askew

sufficiently to prevent and/or mitigate Askew's violation of the constitutional rights

of the public, including the constitutional rights of Plaintiffs, protected by the Indiana Constitution.

 **Answer: Deny.**


208.    The failure of the City, BNS, Brands, and Wunder to train and supe1vise Askew to prevent and/or mitigate Askew's violation of the rights of the public, including the constitutional rights of Plaintiffs, protected by the Indiana Constitution amounts to a deliberate indifference to the constitutional rights of the public and Plaintiffs, and directly and proximately caused the deprivation of Plaintiffs' due process rights under the Indiana Constitution.

**Answer: Deny.**


209.    As a direct and proximate result of Defendants' deprivation of Plaintiffs' due process rights, Plaintiffs have suffered, and will continue to suffer, damages in the form of lost revenue, a substantial decrease in the value of the Hotel property, harm to Patel's personal reputation, harm to PMK's business reputation, emotional distress and mental anguish suffered by Patel, and attorneys' fees to defend against Defendants' improper license revocation and shutdown of the Hotel.

**Answer: Deny.**


210.    Plaintiffs have also incurred and will continue to incur attorneys' fees in order to enforce their rights through the prosecution of this action.

**Answer: Deny.**

<br>

## COUNT V

Tortious Interference with Contractual Relationship

(As Against the City Defendants)

<br>

211.   Plaintiffs incorporate by reference each and every paragraph above as though fully set forth herein.

**Answer: Defendants incorporate by reference each and every answer.**

<br>

212.   Defendant Askew instructed police and other City officials to approach guests at the Hotel door-to-door on February 10, 2023, and tell them that the Hotel was no longer licensed, would be closing, and that guests would have to leave.

**Answer: Deny.**

<br>

213.   At the time Askew instructed police and other City officials to approach guests at the Hotel door-to-door on February 10, 2023, and tell them that the Hotel was no longer licensed, would be closing, and that guests would have to leave, he was aware that Plaintiffs' Hotel license was still in effect, pursuant to the Revised Code and Administrative Adjudication Act.

**Answer: Deny.**

214.    Askew was aware as of February 10, 2023, that the Hotel rented guest rooms for extended stays, which generated a substantial portion of the Hotel's revenue.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

215.    Askew was aware as of February 10, 2023, that Hotel guests signed agreements governing the terms of their occupancy, including the length of their stay.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

216.    Askew sent the police and City officials to the Hotel with the intention of having guests vacate their rooms.

**Answer: Deny.**

217.    As a direct result of Askew's instructing police and other City officials to approach guests at the Hotel door-to-door on February 10, 2023, to tell them that the Hotel was no longer licensed, would be closing, and that guests would have to leave, a significant number of guests at the Hotel vacated the Hotel and stopped paying for their rooms in breach of their agreements with Plaintiffs.

**Answer: Deny.**

218.    As a direct and proximate result of Askew's conduct in tortiously interfering with the contracts between Plaintiffs and Hotel guests, Plaintiffs lost, and will continue to lose, substantial revenues.

**Answer: Deny.**


219.    At all material times, Askew was acting within the scope of his employment with the City Defendants in tortiously interfering with agreements between the Hotel and its guests.

**Answer: Deny.**


## COUNT VI

Intentional Interference with Business Relationships

(As Against the City Defendants)


220.    Plaintiffs incorporate by reference each and eve1y paragraph above as though fully set forth herein.

**Answer: Defendants incorporate by reference each and every answer.**


221.    Defendant Askew instrncted police and other City officials to approach guests at the Hotel door-to-door on February 10, 2023, and tell them that the Hotel was no longer licensed, would be closing, and that guests would have to leave.

**Answer: Deny.**

222.    At the time Askew instructed police and other City officials to approach guests at the Hotel door-to-door on Febrna1y 10, 2023, and tell them that the Hotel was no longer licensed, would be closing, and that guests would have to leave, he was aware that Plaintiffs' Hotel license was still in effect, pursuant to the Revised Code and Administrative Adjudication Act.

**Answer: Deny.**


223.    Askew was aware as of February 10, 2023, that the Hotel rented guest rooms for extended stays, which generated a substantial portion of the Hotel's revenue.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**


224.    Askew was aware as of February 10, 2023, that Plaintiffs had valid business relationships with Hotel guests in connection with their stay at the Hotel.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**


225.    Many of these business relationships were not governed by contracts.

**Answer: Defendants lack sufficient information to admit or deny the allegations contained in this paragraph, and therefore deny the allegations.**

226. Askew sent the police and City officials to the Hotel with the intention of having guests vacate their rooms.

**Answer: Deny.**


227. As a direct result of Askew's instructing police and other City officials to approach guests at the Hotel door-to-door on February 10, 2023, to tell them that the Hotel was no longer licensed, would be closing, and that guests would have to leave, Askew interfered in the Plaintiffs' business relationship with a significant number of guests at the Hotel who vacated the Hotel and stopped paying for their rooms.

**Answer: Deny.**


228. As a direct and proximate result of Askew's conduct in intentionally interfering with the business relationships between Plaintiffs and Hotel guests, Plaintiffs lost, and will continue to lose, substantial revenues.

**Answer: Deny.**


229. At all material times, Askew was acting within the scope of his employment with the City Defendants in intentionally interfering with the business relationships between the Hotel and its guests.

**Answer: Deny.**

## COUNT VII

Defamation

(As Against the City Defendants)

230.    Plaintiffs incorporate by reference each and every paragraph above as though fully set forth herein.

**Answer: Defendants incorporate by reference each and every answer.**

231.    The February 6, 2023, order was drafted by, or at the direction of, Defendant Askew.

**Answer: Deny.**

232.    The February 6 Order was issued by Askew.

**Answer: Deny.**

233.    At the time Askew issued the February 6 Order, he was aware that the statement in the order that Patel "failed to disclose being arrested and charged for two ... counts of intimidation, an A Misdemeanor, under cause number 49D35-2210-CM-028423" in the license renewal application for the Hotel was false.

**Answer: Deny.**

234.    Upon information and belief, Askew distributed the February 6 Order to police, City officials, and members of the public, holding out to them that Patel had been arrested and had lied about the arrest in the Hotel's license renewal application.

**Answer: Deny.**


235.    As of February 10, 2023, Askew was aware that Plaintiffs' Hotel license was still in effect, pursuant to the Revised Code and the Administrative Adjudication Act.

**Answer: Deny.**


236.    On February I0, 2023, Askew instructed police and other City officials to approach guests at the Hotel door-to-door to tell them that the Hotel was no longer licensed, would be closing, and that guests would have to leave. Askew knew these statements were false.

**Answer: Deny.**


237.    Upon information and belief, Askew advised members of the public and/or press that the Hotel was no longer licensed, would be closing, and that guests would have to leave. Askew knew these statements were false.

**Answer: Deny.**

238.	The false statements described herein were defamato1y on their face in that they harmed Plaintiffs' personal and business reputations, subjected Plaintiffs to distrust and a perception of illegitimacy among Hotel guests, and subjected Plaintiffs to ridicule and contempt among City officials, local community leaders, and members of the public.

**Answer: Deny.**


239.	Askew acted with malice by knowingly publishing the false statements described herein.

**Answer: Deny.**


240.	As a direct and proximate result of Askew's false statements described herein, Plaintiffs have suffered, and will continue to suffer, damages in the form of lost revenue, harm to Patel's personal reputation, harm to PMK's business reputation, and emotional distress and mental anguish suffered by Patel.

**Answer: Deny.**


241.	At all material times, Askew was acting within the scope of his employment with the City Defendants in publishing false statements about Patel's purported arrest and the Hotel's loss of its license.

**Answer: Deny.**

## PRAYER FOR RELIEF

242.    WHEREFORE, Plaintiffs pray this Court grant judgment in favor of Plaintiffs and against Defendants as follows:

a.    On Count I, awarding consequential damages and damages for emotional distress and mental anguish in favor of Plaintiffs in an amount to be determined at trial, but in no event less than $8,700,000 plus interest, attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

b.    On Count II, awarding consequential damages and damages for emotional distress and mental anguish in favor of Plaintiffs in an amount to be determined at trial, but in no event less than $8,700,000, plus interest, attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

c.    On Count III, awarding consequential damages and damages for emotional distress and mental anguish in favor of Plaintiffs in an amount to be dete1mined at trial, but in no event less than $8,700,000, plus interest, attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

d.    On Count IV, awarding consequential damages and damages for emotional distress and mental anguish in favor of Plaintiffs in an amount to be determined at trial, but in no event less than $8,700,000, plus interest, attorneys' fees and costs.

e.    On Count V, awarding consequential damages and damages for emotional distress and mental anguish in favor of Plaintiffs in an amount to be determined at trial, but in no event less than $700,000, plus interest, attorneys' fees and costs.

f.      On Count VI, awarding consequential damages and damages for emotional

distress and mental anguish in favor of Plaintiffs in an amount to be determined at

trial, but in no event less than $700,000, plus interest, attorneys' fees and costs.

g.      On Count VII, awarding consequential damages and damages for emotional

distress and mental anguish in favor of Plaintiffs in an amount to be determined at

trial, but in no event less than $700,000, plus interest, attorneys' fees and costs.

**Answer: No response is required. To the extent that another response is required,**

**Defendants deny the allegations.**

## DEMAND FOR JURY TRIAL

243.    Plaintiffs demand a trial by jury under Federal Rule of Civil Procedure 39 for

all issues triable by jury.

**Answer: No response is required. To the extent that another response is required,**

**Defendants deny the allegations.**

Defendants deny all of Plaintiff's allegations above which are not specifically

admitted.

## AFFIRMATIVE DEFENSES

1. The Plaintiffs have failed to state a claim upon which relief may be granted.

2. Plaintiffs have failed to exhaust their administrative remedies; therefore, this Court lacks subject matter jurisdiction.

3. The Plaintiffs' claims are barred to the extent they have failed to fully comply with the notice and other requirements of the Indiana Tort Claims Act ("ITCA"), IND. CODE §34-13-3-1 et seq.

4. The Plaintiffs failed to mitigate damages as required under state law.

5. To the extent the Plaintiffs' Complaint alleges negligence or state tort claims, the Defendants are immune under the ITCA and/or under common law sovereign immunity.

6. The Plaintiffs' claims are barred to the extent that they waived any such claims by their actions or inactions.

7. The Plaintiffs are barred from recovering any damages to the extent such damages were the proximate cause of the Plaintiffs' contributory negligence.

8. The Plaintiffs are barred from recovering any damages to the extent they were the proximate cause of the actions or inactions of a non-party.

9. The Plaintiffs' claims are barred to the extent they are untimely pursuant to IND. CODE § 34-11-2-4.

10. The Defendants acted in accordance with its authority pursuant to state law.

11. The Plaintiffs' recovery, if any, is limited by IND. CODE §§ 34-13-3-4, 34-13-4-1, and Revised Code of Ordinances § 292-1(c).

12. The alleged injuries and/or damages of which the Plaintiffs complain were the proximate cause of the risk voluntarily incurred and/or assumed by the Plaintiffs.

13. The Plaintiffs' claims are barred to the extent barred under IND.CODE § 34-30-11-1.

14. The Plaintiffs' claims for punitive damages against a governmental entity under state or federal law are barred, and the Plaintiffs are not entitled to punitive damages on any claims against the Defendant in their individual capacities.

15. The Defendants are entitled to any statutory and/or common law immunity applicable to the Plaintiffs' claims under federal and state law, including qualified immunity.

Respectfully Submitted,

OFFICE OF CORPORATION COUNSEL

*/s/ Jess Reagan Gastineau*
Jess Reagan Gastineau (27303-53)
Deputy Chief Litigation Counsel
200 E. Washington Street, Suite 1601
Indianapolis, IN 46204
317.327.4055
Jess.Gastineau2@indy.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this Monday, October 16, 2023 a copy of the foregoing was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Jess Reagan Gastineau*
Jess Reagan Gastineau (27303-53)
Deputy Chief Litigation Counsel

OFFICE OF CORPORATION COUNSEL
200 East Washington Street, Room 1601
Indianapolis, Indiana 46204
Telephone: (317) 327-4055
Fax: (317) 327-3968