Exhibit 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| KARTIK PATEL and PMK CORPORATION d/b/a BUDGET 8 INN, ) | Civil Action No.: 1:23-cv-1495 |
| ) | |
| Plaintiffs, ) | **AMENDED COMPLAINT and** |
| ) | **VERIFIED PETITION FOR** |
| v. ) | **JUDICIAL REVIEW OF** |
| ) | **INDIANAPOLIS BOARD OF** |
| CONSOLIDATED CITY OF ) | **BUSINESS AND** |
| INDIANAPOLIS/MARION COUNTY; CITY ) | **NEIGHBORHOOD SERVICES'** |
| OF INDIANAPOLIS DEPARTMENT OF ) | **ADMINISTRATIVE ACTION** |
| BUSINESS AND NEIGHBORHOOD ) | |
| SERVICES; CHARLES ASKEW, in his ) | |
| official and individual capacities ABBEY ) | |
| BRANDS in her official and individual ) | |
| capacities; and AMY WUNDER in her official ) | |
| and individual capacities, ) | **JURY TRIAL DEMANDED** |
| ) | |
| Defendants. | |

Plaintiffs Kartik Patel ("Patel") and PMK Corporation d/b/a Budget 8 Inn ("PMK," and collectively with Patel, "Plaintiffs" or "Petitioners"), by and through their attorneys, file this civil rights action, pursuant to 42 U.S. Code § 1983, against defendants Consolidated City of Indianapolis/Marion County (the "City"), the City of Indianapolis Department of Business and Neighborhood Services ("BNS," and collectively with the City, the "City Defendants"), Abbey Brands ("Brands"), in her official capacity as Director of BNS and individual capacity, Amy Wunder in her official capacity as BNS Administrator and individual capacity ("Wunder"), and Charles Askew in his individual capacity and his official capacity as a BNS License Administrator ("Askew," and together with Brands and Wunder, the "Individual Defendants"), for violating Plaintiffs' rights to procedural and substantive due process and equal protection under the Fourteenth Amendment to the Constitution of United States and Article I § 12 of the

Indiana Constitution.  Plaintiffs also submit their verified petition for judicial review of administrative proceedings, seeking redress for procedural due process violations and violations of Indiana law related to an administrative appeal stemming from and intertwined with the same transactions and occurrences as Plaintiffs' federal claims.  Finally, Plaintiffs assert claims against the City Defendants under the Indiana law for tortious interference with contractual relationship, intentional interference with business relationship, and defamation.  In support of their claims, Plaintiffs allege as follows:

<u>**Nature of the Action**</u>

1.   This action arises from Defendants' campaign to shut down Plaintiffs' hotel in violation of Plaintiffs' due process and equal protection rights under the United States and Indiana constitutions, and in violation of City ordinances and Indiana statutes, while interfering with Plaintiffs' contracts and business relationships with their hotel guests and publicly disseminating false and defamatory statements that plaintiff Patel had been arrested.  Not surprisingly, Defendants' actions have had a devastating effect on Plaintiffs' finances and business reputation. Plaintiffs have brought the present action to obtain financial compensation and restore their wrongfully besmirched good names in the community.

2. Since 2015, Plaintiffs have operated the Budget 8 Inn Hotel (the "Hotel") on the troubled east side of Indianapolis.  Through Plaintiffs' efforts, the Hotel has become a much-needed asset to that community.  Those efforts have included making rooms at the Hotel available for free or at a discount to individuals trying to get back on their feet.  Indeed, the Hotel often provides the only safe haven for individuals and families in the community, many of whom are in transition to a more permanent living situation.

3.  Plaintiffs worked independently and with the City to address what the City has deemed to be an excessive number of 911 calls by Hotel guests, successfully keeping the call ratio at a

level below the threshold set by the City when calculated consistent with the language of the Revised Code of the Consolidated City of County of Indianapolis/Marion County ("Revised Code").  Although Plaintiffs met all of the requirements needed to obtain/renew the license needed to operate the Hotel, Defendants decided that the time had come to shut down the Hotel.

4.   On January 18, 2023, Plaintiffs applied to renew their annual license to operate the Hotel.  While the application was still pending, Defendants sent a City social worker to talk to Hotel guests under the guise of providing information about City services, but who instead surreptitiously told guests that the Hotel was shutting down.

5.   The following day, Defendants issued a decision denying the Hotel's license renewal application based in part on false information.  *Despite knowing that the Hotel's license would remain in effect for what could be months while the decision was appealed*, Defendants ordered Plaintiffs by email to stop taking guests immediately and to shut down the Hotel within 60 days. Upon receiving the email, plaintiff Patel promptly advised Defendants that the denial was based on inaccurate information.  Nonetheless, Defendants took it upon themselves to begin the process of shutting down the Hotel—effectively and improperly rescinding the Hotel's operating license immediately without notice or hearing.  Defendants directed police and other City officials to go door-to-door at the Hotel and falsely inform guests that they would have to leave because the Hotel was no longer licensed to operate.  Although Defendants later admitted their mistake, the damage had been done.  A large number of guests vacated the Hotel before their stay ended, and the Hotel experienced a substantial drop in new guests.

6.   To further damage Plaintiffs' business and reputations, Defendants also held out to the public that Patel had been arrested and that Patel lied about the arrest in the Hotel's license renewal application, knowing that these assertions were false.

3

7.   Defendants' interference with their business, false statements, and violation of Plaintiffs' civil rights have caused Plaintiffs to suffer significant monetary damages and damage to reputation.  Patel has also suffered ongoing mental anguish and emotional distress arising from Defendants' intentional and malicious violation of his rights, and resulting reputational damage. Plaintiffs demand compensation for lost revenue and earnings, mental anguish, emotional distress, and punitive damages, as well as attorneys' fees and costs pursuant to 42 U.S. Code §§ 1983 and 1988 and other applicable statutes.

## Parties

8.   Plaintiffs incorporate by reference each and every paragraph above as though fully set forth herein.

9.   Plaintiff Patel is domiciled in Indiana and maintains his permanent residence in Brownsburg, Indiana but has been living at the Hotel (Budget 8 Inn, 6850 E. 21st Street, Indianapolis, IN 46219) full-time with his wife, son, and mother since March 2020.

10.   Plaintiff PMK is a corporation organized under the laws of Indiana, and maintains a principal place of business at 6850 East 21st Street, Indianapolis, Indiana 46219.

11.   Plaintiff Patel and his wife own all the outstanding shares of PMK.

12.   Defendant City is a consolidated municipal government located within, and duly chartered under, the laws of the State of Indiana, with its seat of government located at 200 East Washington Street, 2501 City-County Building, Indianapolis, Indiana 46204.

13.   Defendant BNS is the administrative agency responsible for granting, renewing, revoking, denying, and suspending hotel licenses on behalf of the City, and is located at 1200 Madison Ave, Suite 100, Indianapolis, Indiana 46225.

14.   Defendant Brands is the Director of BNS and, upon information and belief, is domiciled and maintains a permanent residence in Indianapolis, Indiana.

4

15.     Defendant Amy Wunder was an Administrator at BNS during all relevant times. She is currently the Deputy Director of Construction and Business Services at BNS.   Upon information and belief, Wunder is domiciled and maintains a permanent residence in Indianapolis, Indiana.

16.     Defendant Askew is a License Administrator with BNS and, upon information and belief, is domiciled and maintains a permanent residence in Indianapolis, Indiana.

## Jurisdiction and Venue

17.     This Court has federal subject matter jurisdiction over Plaintiffs' claims asserting violations of federal constitutional rights under 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1343 (civil rights jurisdiction).

18.     This Court can and should exercise supplemental jurisdiction over Plaintiffs' state law claims, which arise out of the same transactions and occurrences as Plaintiffs' federal claims, pursuant to 28 U.S.C. § 1367(a), and over Plaintiff's petition for judicial review of administrative proceedings discussed herein pursuant to 28 U.S.C. §1367 and *Chicago v. Illinois College of Surgeons*, 522 U.S. 156 (1997).

19.     Personal jurisdiction is proper in this Court because all the Defendants reside and are domiciled in this judicial district.

20.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and 18 U.S.C. § 1965 because all Defendants reside in Indiana, and the City, its agencies, and its political subdivisions are located in this judicial district, wherein a substantial part of the events, actions, and omissions giving rise to Plaintiffs' claims occurred.

## Factual Allegations

### The Hotel

21.     On August 31, 2015, PMK purchased a shuttered hotel property located at 6850 East 21st Street on Indianapolis' east side.

22.     Patel, who owns PMK with his wife, invested roughly $3.85 million to purchase, renovate, enhance, and rebrand the Hotel as the Budget 8 Inn Hotel.

23.     With the City's approval, Plaintiffs re-opened the property on December 22, 2016.

### Plaintiffs and the Hotel: Vital to the Community

24.     Since re-opening the Hotel, Patel has undertaken significant efforts to support the surrounding community and its residents.

25.     The Hotel has offered its guests long-term stays, frequently serving as a safe haven for individuals and families who are in transition to a more permanent living situation.

26.     Patel makes rooms at the Hotel available at a discount to local churches that assist individuals and families to get back on their feet.

27.     The Community Alliance for the Far Eastside also relies on the Hotel to provide housing assistance to residents of the local community.

28.     Patel frequently makes rooms at the Hotel available for free to individuals in particular need when funding for their stays is not otherwise available.

29.     Patel also makes substantial donations to support the communities in which his hotels are located.  For example, Patel donated $20,000 in Visa gift cards to the Indianapolis Public Safety Foundation so Indianapolis Metropolitan Police Department ("IMPD") officers could give the gift cards to local residents in need in an effort to build relationships in their communities.

6

30.     Patel was also presented with the 2018 East District Crime Fighter of the Year Award by the IMPD in August 2018 for his efforts in working with the IMPD and local officials to help reduce crime on the east side of Indianapolis.

**The "Calls for Service Ratio"**

31.     In 2018, the Indianapolis City Council passed an ordinance intended to address public safety concerns at hotels in the City that were considered to be hot spots for calls to emergency services.  *See* Title IV ("Business and Commercial Regulation and Licenses"), Chapter 901 ("Hotels and Places of Lodging") of the Revised Code, §§ 102, 204, and 303-04.

32.     The Revised Code requires BNS to calculate a "calls for service ratio" for each hotel in the City, which allows BNS to identify hotels considered to have an unacceptably high number of emergency calls.  *See* Revised Code § 901-102.

33.     To calculate the "calls for service ratio," BNS uses 911 data to determine the number of calls originating from within a hotel and "divide[s that] by the number of rooms in service at the hotel."  *See* Revised Code § 901-102.

34.     Revised Code § 901-102(c) defines "calls for service" as "the total number of ***calls to law enforcement or the fire department*** that result in a request that a representative be dispatched or directed to the hotel, over a one year period, when those responses:  (1) Result in a representative being dispatched or directed to the hotel; (2) Allege evidence of criminal activity; (3) Result in an arrest, charge or citation; or (4) Find an imminent threat to safety of persons or property."  Revised Code § 901-102 (emphasis added).

35.     If the "calls for service ratio" for a hotel exceeds 2.5 for a one-year period, the Revised Code requires BNS to put the hotel on probation.  *See* Revised Code § 901-303(a).

36.     "Any hotel that enters a probationary period [must] complete meetings, separately or combined, with police, fire, health, and zoning officials to discuss issues related to the property contributing to *criminal activity* and actions to mitigate them and limit their impact." *See* Revised Code § 901-303(b) (emphasis added).

37.     BNS has the discretion not to renew a hotel's license *if*, "[f]or any hotel operating in a probationary period, the calls for service ratio is at or above 2.5 over any one year period after entering probation." *See* Revised Code § 901-204(e)(4).

**Unwanted Scrutiny of the Hotel and BNS by the Local Media**

38.     The Hotel is located in a troubled area on the east side of the City.

39.     Plaintiffs do not dispute that the Hotel receives frequent visits from police and other emergency services, however, a significant number of 911 calls from Hotel are not related to criminal activity.

40.     On June 7, 2021, local news reporter Zach Myers emailed BNS Chief Communications Officer Brandi Pahl to request information for a story about a shooting that occurred at the Hotel that morning.

41.     Myers requested "information on the current status of the motel, as it relates to the city's 'problem hotel' ordinance… Based on the number of emergency runs within a year's time" and whether "the motel currently [is] in good standing, or [on] any kind of probationary status, etc.?"

42.     License and Data analyst Andrew Jaworski provided Pahl with the calls for service ratio at the Hotel, which was 2.09 at the time, and advised that it is "important to note that most locations have received more calls than usual since the pandemic began."

43.     Askew also advised Pahl that the Hotel was "in good standing with their license expiring 1/22/2022," and that "BNS has not had any reported concerns about this location."

44.     Askew also noted that "[w]e collect data for runs made by citizens or guests of the hotel. There possibly could be a high number of runs but if requested by staff of the hotel those are not counted against them."

45.     On June 7, 2021, Pahl responded to Myers as follows:

> The Budget 8 Inn is currently in good standing as they have not reached the 2.5 runs per room ratio that would place them on probation and require them to adopt a mitigation plan.

> They are currently sitting at 2.09 runs per room. Attached is the data we have, we only have IMPD and IFD runs. It is also important to note that these are calls made by citizens or guests of the hotel/motel. There could be a high number of runs, but those that are requested by staff of the hotel/motel are not included in our formula.

> Their license expires on January 22, 2022 – at which time DBNS will take into consideration any complaints and data that we have collected before issuing a renewal.

46.     On the evening of June 7, 2021, CBS4 News published an article authored by Myers.[1]

47.     Although Pahl stated that the calls for service ratio for the Hotel was below the threshold for probation and the Hotel was in good standing, the article reported that the Hotel "has become a 'hot spot' for drugs, overdoses and various other crimes associated with drug activity."

48.     The article also noted that "data from [BNS] only includes IMPD and Indianapolis Fire Department calls," and that the "city's hotel and motel ordinance formula does not factor in emergency calls from motel or hotel employees."

---

[1] Zack Meyers, *City records show hundreds of emergency calls to motel on Indy's east side*, CBS4 News (Jun. 7, 2021), https://www.latimes.com/politics/story/2020-03-19/calls-mount-making-november-mail-in-ballot.https://cbs4indy.com/news/indycrime/city-records-show-hundreds-of-emergency-calls-to-motel-on-indys-east-side/

49.     The article further reported that "a sign could be seen posted outside the Budget 8 Inn office door" which stated:

> If you need police assistance:
> Notify the office.
> 911 calls made from rooms may result in your being asked to leave
> (without a refund).
> $50 penalty will apply

50.     The article ended quoting Pahl's statement:

> "The Budget 8 Inn's license expires on January 22, 2022," Pahl said in a statement. "At which time DBNS will take into consideration any complaints and data that we have collected before issuing a renewal."

51.     On August 10, 2021, Patel met with Askew and Jaworski to discuss these issues and ensure that BNS was properly tallying the calls for service at the Hotel.

52.     Patel provided the telephone numbers for the rooms at the Hotel and the private cell phone numbers of employees to assist BNS in identifying calls that came from the Hotel's rooms and the Hotel's staff.

53.     On or about December 13, 2021, Myers contacted Pahl asking for an update on the license status of the Hotel, and requested the 911 data collected by BNS and the number of runs per year that BNS was going to use to determine if the Hotel would be put on probation.

54.     Pahl asked Askew how to respond and said she thought that the information Myers sought was for the local television news that evening because Myers had given BNS a deadline to respond to his inquiry of 1:30 pm that afternoon.

55.     Askew spoke with BNS Administrator Amy Wunder before responding to Pahl.

56.     Ninety minutes later, Askew responded to Pahl that if Plaintiffs submitted an application for renewal, they would consider putting the Hotel on probation.

57.     Upon information and belief, Askew and Wunder decided BNS would put the Hotel on probation, at least in part so that BNS would not be portrayed unfavorably in the local news.

**BNS Puts the Hotel on Probation as Wunder and Askew had Planned.**

58.     On or about January 18, 2022, Patel received a letter from BNS License Administrator Charles Askew.

59.     According to Askew, the "calls for service ratio" at the Hotel was 3.19 as of the end of the one-year license term ending in January 2021.

60.     The letter indicated that the Hotel was being placed on probation for a one-year period, and asked that Patel set up a meeting with City officials to discuss how to address the issue.

61.     Patel met with Askew and other City officials on March 16, 2022.

62.     Before the meeting, Patel had already begun to implement measures to lower the "calls for service ratio" at the Hotel, which included installing a security system with live cameras linked to the IMPD, hiring additional security personnel, and maintaining a "do not rent" registry of disorderly guests, all at PMK's expense.

63.     At the March 16, 2022, meeting, Patel reported to Askew and other City officials about these efforts to lower the number of calls for service at the Hotel.

**Suspicions Arise that Defendants Are Targeting the Hotel for Closure**

64.     At the March 16 meeting, Patel again expressed concern that BNS's calculation of the "calls for service ratio" was incorrect. Among other errors, Patel pointed out that BNS had sometimes improperly double-counted or triple-counted calls to which more than one emergency service responded.

65.     Patel also noted that BNS counted calls originating from Hotel employees and calls for welfare checks, both of which are expressly excluded from the "calls for service" count by the Revised Code.  *See* Revised Code § 901-102.

66.     Finally, Patel observed that BNS included calls unrelated to criminal activity, such as health-related emergencies for low-income Hotel guests whose only access to healthcare is through emergency services.  Although BNS is technically allowed to include such calls in the count, Patel observed that doing so was not consistent with the purpose of Revised Code § 901-102.

67.     After the meeting, Patel provided Askew with a detailed analysis of the data showing each of the errors.

68.     Patel emailed Askew several times, attempting to demonstrate BNS's miscalculation of the "calls for service ratio" at the Hotel, to which Askew responded by letter that BNS "would not debate the monthly data or change what has been captured" without further explanation.

69.     In light of Askew's steadfast refusal to recalculate the Hotel's "calls for service ratio" in a manner consistent with the Revised Code, Patel began to suspect that Askew was specifically targeting the Hotel for closure.

**Nonetheless, Plaintiffs Continue in Good Faith to Address the "Calls for Service Ratio"**

70.     In the following months, Plaintiffs continued to implement policies to lower the 911 call volume at the Hotel.

71.     Patel had hired off-duty police officers to patrol the property since it opened in 2016.  In January 2022, he replaced them with other personnel he believed would do a more effective job at maintaining security.  Patel also regularly patrols the property himself.

72.     Patel reiterated to Hotel employees that they should continue to assist police in their efforts to investigate any crimes at the Hotel.

73.     Patel also instructed Hotel employees to record when emergency services visited the Hotel to keep a real-time record of the "calls for service ratio."

74.     On May 10, 2022, Patel attended another meeting with BNS and other City officials at which he provided an update on the security measures being taken at the Hotel.

**A Summons is Issued Under Curious Circumstances; No One is Arrested**

75.     On July 22, 2022, an IMPD police officer observed a 911 call sign at another hotel Patel owned, the Regal 8 Motel, similar to the one Myers reported about at the Hotel.

76.     The officer asked an employee at the Regal 8 Motel about the sign and spoke with Patel over the phone.

77.     Patel told the officer about his situation with BNS and his motivation for putting up the sign.  The officer nonetheless advised Patel that the sign likely violated the law.

78.     Patel thereafter removed the sign from the Regal 8 Motel and from the Hotel.

79.     Patel met with Askew again on August 9, 2022, to further update Askew on the security measures being taken at the Hotel.  IMPD Detective Tiffany Mastin attended the meeting, together with other IMPD officials, to address the sign observed by the IMPD officer on July 22.

80.     For reasons that are unclear but troubling in light of the previous unwanted attention from the local news and subsequent events, the incident involving the sign had apparently been turned over to an IMPD Detective *to determine probable cause despite the "offense" at most constituting a misdemeanor*.

81.     Detective Mastin asked Patel "if he was gaming the system by controlling how 911 calls are made from his hotels."

82.     Patel answered that all 911 calls were being funneled through his staff to ensure that the calls were only being placed for reasons appropriate to call 911.

83.     Detective Mastin then waited almost two more months, until September 27, 2022, to complete an Affidavit for Probable Cause in connection with the sign the IMPD officer observed on July 22.

84.     By that time, however, Patel had already removed the signs.

85.     No criminal action was filed at that time.

86.     Instead, Detective Mastin emailed BNS on September 29, 2022, to request the "calls for service ratio" at the Hotel.

87.     BNS responded the same day, advising Detective Mastin that the "calls for service ratio" for the Hotel as of the end of August 2022 was 1.53 – well below the 2.5 threshold for probation required by the Revised Code.

88.     BNS emailed Detective Mastin again on October 3, 2022, to advise the Detective that data from September yielded an updated "calls for service ratio" of 1.7 – again, well below the 2.5 threshold.

89.     It was not until October 19, 2022 – *three months* after Patel spoke with the IMPD officer about the 911 signs – that the Affidavit for Probable Cause was acted upon and the City filed a criminal action against Patel related to the signs.

90.     Patel received via email a Summons issued on October 21, 2022.

91.     The Summons stated that the City was charging Patel with two misdemeanor counts of intimidation in connection with the signs.

92.     The Summons described Patel's alleged offenses as follows:

**COUNT I:**  On or about July 22, 2022, Kartik Patel, the owner of the Regal 8 Motel, did communicate a threat to Mindy Andrew, that is: that she must leave the hotel without a refund for the cost of her hotel room, with the intent that Mindy Andrew be placed in fear of retaliation for calling 911 for assistance, a prior lawful act;

**COUNT II:**  On or about July 22, 2022, Kartik Patel did communicate a threat to Mindy Andrew, another person, that is: that she will be asked to leave the hotel without a refund for the cost of her hotel room if she calls 911 for assistance, with the intent that Mindy Andrew engage in conduct against her will by not calling 911 for assistance;

all of which is contrary to statute and against the peace and dignity of the State of Indiana.

93.     This again was curious as Patel was not present at the Regal 8 Motel during the incident described in the Summons.

94.     Moreover, none of Patel's employees told anyone named Mindy Andrew that she would have to leave the Regal 8 Motel for calling 911.

95.     Indeed, there is no record of any Mindy Andrew ever being a guest at the Regal 8 Motel.

96.     Prosecutors asked Patel to waive his claims against the City in connection with the Summons in exchange for a diversion plea, whereby Patel would avoid a conviction by paying a fine and performing community service.  In light of his innocence, however, Patel refused to plead to a diversion for the charged infractions.

97.     On May 17, 2023, Patel filed a motion to dismiss the charges.

98.     On August 25, 2023, the prosecutors filed a Motion to Dismiss all charges; the court dismissed all charges by way of an August 25, 2023, Order.

99.     Patel was never arrested for the offenses alleged in the Summons.

100.     Service of a Summons does not now, and never has, constituted an "arrest" under Indiana law.

101.     With the benefit of hindsight, it appears that the involvement of Detective Mastin and the issuance of the Summons was intended to further the City's efforts to target the Hotel for closure, as Patel suspected.

**The Suspicions Prove Correct**

102.     On January 18, 2023, Patel submitted an application to renew the Hotel's operating license.

103.     BNS assigned Askew to process Plaintiffs' application.

104.     Defendant Brands, who became Director of BNS on January 1, 2023, supervised Askew's and BNS's processing of Plaintiffs' application to renew the Hotel's operating license.

105.     Upon information and belief, Askew was also supervised by defendant Amy Wunder.

106.     Brand and Wunder were personally involved in internal BNS discussions regarding the license renewal application of the Hotel.

107.     The renewal application included the following question:

> Has the applicant, partner or any corporate officer of the business ever been *arrested or convicted* of a felony, misdemeanor or ordinance violation other than a minor traffic charge? (emphasis added)

108.     Patel correctly responded "No" to this question.

109.     At some point before February 5, 2023, Defendants decided to deny the license renewal application and shut the Hotel down.

**Defendants Implement Their Plan: Step 1 – Denying the Renewal Application
on False Grounds**

110.    On February 5, 2023, *while the renewal application was still pending*, Defendants

sent a social worker to the Hotel purportedly to provide guests with information about City services

available to them, including transportation and food benefits.

111.    In fact, guests at the Hotel advised Patel that the social worker told them that the

City was going to shut the Hotel down.

112.    Upon information and belief, BNS provided the social worker with the information

that she shared with Hotel guests.

113.    This was Patel's first intimation that BNS would be denying his renewal

application.

114.    On February 9, 2023, Patel sent an email to Askew inquiring about the status of the

Hotel renewal application.

115.    That same day, Askew responded by email that BNS had denied the Hotel's

renewal application.

116.    The email identified five sections of the Revised Code as supporting denying the

application under Revised Code §§ 901-204(b)(1), 901-204(d), 801-303(a)(2), 801-303(a)(4), and

901-204(f).

117.    It stated that the application was denied because:  (1) Patel *"failed to disclose being*

*arrested* and charged for two . . . counts of intimidation, an A Misdemeanor, under cause number

49D35-2210-CM-028423"; (2) "A letter received from the [IMPD] shows that this hotel location

is *inimical to the public welfare*"; and (3) "IMPD has provided a letter to the license administrator

*stating objections to the Budget 8 Inn license renewal because of concerns for public safety*."

(emphasis added).

17

118.    Section 901-204(b)(1) provides that "[t]he administrator shall deny any application for a new license, or renewal of a license, if . . . :  (1) [t]he applicant makes a material misrepresentation of fact on the application."

119.    Patel responded to Askew's email and informed him that there was no misrepresentation on the license renewal application because he has never been arrested.

120.    Askew ignored this information and, as of the date of this Complaint, has never explained the source of the error or corrected it.

121.    Section 901-204(d) provides that "[t]he administrator shall deny any application for renewal of a license, if the licensee has failed to comply with sections 801-301 through 801-303."

122.    Section 801-303(a)(2) provides that "[a]ll licenses shall be issued upon the condition that the licensee shall:  . . . (2) Conduct and maintain the licensed business and premises in such a manner that they will not create a nuisance or become inimical to the public welfare."

123.    As of the date Plaintiffs submitted the application, the Hotel's yearlong "calls for service ratio" was below 2.5. In fact, Askew received information showing calls for Indianapolis Municipal Police Department ("IMPD") service at the Budget 8 had decreased dramatically from 2021, from 640 citizen generated calls in 2021 they went down 33% to 430 in 2022. There was a corresponding decrease in the cost to Police regarding these calls of more than 40%, from $166,227 in 2021 to $100,953 in 2022. Additionally, total police response runs likewise decreased dramatically; 28.5% from 2021 to 2022 (987 to 706). Through the first 3 quarters of 2023, police runs were down another 34.5% from the first 3 quarters of 2022 (540 to 354). When compared to the first 3 quarters of 2021, the 2023 runs were down 54.5% (776 to 354).

124.    Although the information available to Askew showed that Plaintiffs had complied with all of the requirements outlined in the applicable City ordinance relating to service call ratios

limits, making denial of a license based on the 2022 call ratios illegal, he nonetheless relied on incomplete information relating to police calls at the facility, to initiate a standard of review outside the scope of his authority.

125.    Section 801-303(a)(4) provides that "[a]ll licenses shall be issued upon the condition that the licensee shall:  . . . (4) [n]ot permit any illegal activity to take place on the licensee's premises or in the conduct of the licensed business."

126.    Despite Askew's sweeping and highly insulting accusation that Patel permitted illegal activity at the Hotel, Askew failed to provide even a single instance of illegal activity at the Hotel that Patel or any Hotel employees purportedly permitted.

127.    To the contrary, Askew was acutely aware of the substantial effort, time, and money Patel invested in order to *reduce* any criminal activity at the Hotel and serve as a resource to law enforcement to support their efforts and initiatives to reduce crime at the Hotel.

128.    Moreover, none of the material Mr. Askew reviewed before denying the renewal indicated that Patel or any Hotel employees permitted or condoned criminal activity.  Chief Randal Taylor of the of the IMPD submitted/signed a letter dated February 3, 2023 (the "IMPD Letter"), objecting to the renewal of the Hotel's license.  While the IMPD Letter included a listing of approximately fifteen (15) calls the IMPD responded to at the Budget 8 Hotel over the prior year, some of which relating to unlawful activity, the letter did not assert that Petitioners were somehow complicit in the unlawful activity—or that they *permitted* this activity or operated the hotel in such a way to create or perpetuate a nuisance.

129.    Section 901-204(f) provides that "the administrator may deny any application for a new license, or renewal of a license, if a written objection detailing the reason for objection is submitted by Marion County Health and Hospital Corporation, Indianapolis Metropolitan Police

Department, or the Indianapolis Fire Department, and the administrator concludes that issuance or renewal of the license would be inimical to the public welfare."

130.    The IMPD letter objected to the Hotel's license renewal, in part, based on "observations made by the IMPD officers who participated in" meetings with Patel claiming that Patel "has not been willing to implement any of the security and safety recommendations made by my officers."

131.    Chief Taylor's statements were false and directly contradicted by BNS's determination nearly a year earlier that Plaintiffs implemented a number of deterrent measures at the Hotel "to support lowering the Calls for Service Ratio and illegal activity on the property," including implementing "live link cameras to IMPD, new security officers, do not rent registry for disorderly guests, and Outreach programs providing services for those in need."

132.    BNS and Agnew knew that Chief Taylor's claims were not accurate.  Askew and the BNS knew that Defendants had complied with every requirement outlined in the applicable ordinance relating to the communication and action relevant to the 2022 probation period. However, Askew and the BNS ignored this compliance and improvement, and denied the license renewal using an unconstitutional and illegal standard of review which was outside the scope of his authority.

133.    Moreover, as previously noted, the Hotel's yearlong "calls for service ratio" was below 2.5 as of the date Plaintiffs submitted the application and has now decreased by 30% to roughly 1.4, both when calculated consistent with the language of the Revised Code.

134.    The License Administrator never made a finding that the renewal of the Hotel's license would be "inimical to the public welfare." The Denial Letter merely noted that IMPD

20

objected to the Renewal Application based on "concerns for public safety," and then observed that the "letter showed that the hotel location is inimical to the public."

**Defendants Double Down on Their Error: Effectively Shutting the Hotel Down in Conscious Disregard of Plaintiffs' Constitutional Rights and the Governing Statutes**

135. Denial of the application to renew the Hotel's license was not effective until February 24, 2023, at the earliest, pursuant to the Administrative Adjudication Act (IC 4-21.5-3-1 through 4-21.5-3-37), which was adopted into the Revised Code via § 801-435(b). *See* IC 4-21.5-3-5(f).

136. The Revised Code also provided Patel with 20 days to appeal the denial of the application to renew. *See* Revised Code § 801-434(b). Upon filing of an appeal, the license would remain in effect until a final decision was made on the appeal. IC 4-21.5-3-5(g).

137. BNS and Askew were aware that the termination of the Hotel's license would not take effect, if ever, for what was likely to be several months.

138. BNS and Askew knew, therefore, that it would be unlawful to order Plaintiffs to stop taking guests immediately.

139. Nonetheless, Askew instructed Patel in the February 9 email that the "Budget 8 Inn is immediately prohibited from furnishing or renting guestrooms to new guests and must cease operations within sixty (60) days of a final decision."

140. Section 901-205 provides that the license administrator "may revoke or suspend a hotel license at any time in accordance with section 801-412 of the Code and shall follow the procedures set forth in that section."

141. Section 801-412 of the Revised Code requires that a "license administrator shall not suspend or revoke a license under this section without first holding a license administrator's hearing to investigate and examine the qualifications and conduct of the licensee. The license

administrator shall serve notice of and conduct the hearing according to the provisions of Division 2 of this article."

142.    Accordingly, BNS could not revoke Plaintiffs' license without providing notice and conducting a hearing to investigate the reasons for denial.

143.    BNS and Askew were aware of the notice and hearing requirements in the Revised Code.

144.    BNS and Askew were aware that effectively revoking the Hotel's license by ordering Plaintiffs to stop accepting new guests and advising existing guests that they would need to leave, was improper without providing advance notice and conducting a hearing.

145.    Nonetheless, on February 10, 2023, Defendants directed Andrew Merkley, an administrator with the City's Office of Public Health and Safety ("OPHS"), to go to the Hotel.

146.    Merkley was accompanied by City staff and IMPD officers.

147.    Merkley handed Patel a letter from Askew dated February 10, 2023, which stated as follows:

> Pursuant to Section 801-201 of the Revised Code of the Consolidated City of Indianapolis and Marion County ("Revised Code"), the hotel license for Budget 8 Inn located at 6850 E. 21st Street, Indianapolis, Indiana, has been denied by the Department of Business and Neighborhood Services. Kartik Patel, the owner of Budget 8 Inn, has been notified of the license denial and informed of next steps for closing the hotel. At this time, Budget 8 Inn does not have a license to operate in the City of Indianapolis, as required by the Revised Code.
>
> IMPORTANT INFORMATION FOR GUESTS: Budget 8 Inn must cease operations within sixty (60) days of a final decision. Mr. Patel must allow current guests a reasonable amount of time to vacate guestrooms (no less than one week). Mr. Patel must also allow the City of Indianapolis or any partnering organization or charities to contact current guests directly in order to provide information regarding potential resources and alternative lodging options.

> The City of Indianapolis Office of Public Health and Safety ("OPHS") and the Indianapolis Metropolitan Police Department's ("IMPD") Homeless Division have been engaged to help guests connect to resources and provide information on other lodging options. Guests are not required to be assisted by OPHS or IMPD's Homeless Division if they do not wish.
>
> If you have questions or concerns regarding potential resources at a later date, please reach out to OPHS at 317-327-4291 or email OPHSHousing@indy.gov.

148.    The statement in the letter that the Hotel no longer had a license to operate was false, as shown herein *supra*.

149.    Pursuant to Askew's instructions, Merkley, City staff, and the IMPD officers proceeded to visit Hotel guests door-to-door, falsely telling them that the Hotel was no longer licensed to operate, would be closing, and that they would have to leave.

150.    Merkley, City staff, and the IMPD officers provided guests with pamphlets containing information about alternative housing arrangements, sliding pamphlets under the doors of guests who did not answer door knocks.

151.    Per the directive in the February 10 letter, Patel stopped accepting new guests at the Hotel at 3:00 pm on February 10, 2023.

152.    The following day, on February 11, 2023, Patel received from Askew for the first time a formal order denying the Hotel's renewal application.

153.    The order, dated February 6, 2023, contained the same information, directions, and false statements as were in Askew's February 9, 2023, email.

154.    Under the terms of the February 6 Order, Patel was immediately prohibited from taking new guests at the Hotel and ordered to cease all operations within 60 days of a final decision.

**Defendants Admit their Error (Sort Of)—But the Damage Is Done**

155.    By letter dated March 3, 2023, Patel's attorney requested a meeting with Askew to discuss the possibility of a limited and conditional grant of authority for continued operations at the Hotel during the pendency of the appeal.

156.    In the letter, PMK advised that:

> PMK is interpreting [the phrase 'cease operations within 60 days of a final decision in the February 6 Order] with a common sense definition to the effect that the decision becomes "final" when the appeal process is concluded. This would be consistent with Court rules and other protocols applicable to contested matters. If the Department of Business and Neighborhood Services ("BNS") is employing a different definition or taking a different approach, we ask that you please advise and further provide the basis for any such position.

157.    On March 7, 2023, an attorney for the City wrote Patel's counsel responding that BNS's "position has not changed" and that "all operations must cease at the hotel within sixty (60) days of the Committee's decision."

158.    The City's letter gave no indication that Plaintiffs could once again accept new guests.

159.    By letter dated March 14, 2023, Patel's attorney emailed the City attorney seeking clarification on whether Plaintiffs could take new guests.

160.    The City's attorney responded by email ***admitting that the February 6 Order was stayed pursuant to the Administrative Adjudication Act***.

161.    Upon receipt of the March 14 letter, the Hotel once again started accepting new guests.  But the damage had been done.

162.    Defendants' unlawful effort to remove guests from the Hotel and begin shutting it down succeeded.

163.    Existing guests vacated the Hotel.

24

164.    New guests stopped coming to the Hotel.

165.    Local community organizations stopped sending people that required temporary housing to the Hotel.

166.    Because Patel complied with the express terms of the February 6 Order and did not accept new guests at the Hotel from February 10 to March 14, the Hotel experienced a substantial drop in revenue.

167.    The Hotel also lost substantial revenues due to the premature departure of guests before the end of their agreed-upon stays, caused by the actions of the City Defendants and Askew in falsely advising guests on February 10, that the Hotel was closing and they needed to find alternative accommodations.

168.    The drop in Hotel revenue caused by Defendants' actions continues to date, as indicated by substantial decreases in year-over-year revenue for the months of February, March, April, May, June, and July of 2023.

**Administrative Appeal and Hearing before the BNS License Review Committee**

***The License Review Committee***

169.    Indianapolis Mun. Code § 801-432(1) required BNS, at its first meeting in calendar year 2023, to elect three (3) members to constitute a committee for the purpose of hearing appeals, including appeals from the denial of a hotel operating license (the "License Review Committee").

170.    In all instances in which the Indianapolis Municipal Code provides that a decision by a license administrator may be appealed to BNS, BNS acts by and through the License Review Committee.   Indianapolis Mun. Code § 801-432.

171.    All hearings on such appeals must be conducted by the License Review Committee chairperson in the manner prescribed by the Indiana Administrative Adjudication Act, IND. CODE §§ 4-21.5-3-1 through 4-21.5-3-37.   Indianapolis Mun. Code § 801-435(b).

172.    The applicant or licensee bears the burden of proof on an appeal to the License Review Committee that the License Administrator's decision should be vacated because it was either "unlawful, based upon an incorrect or incomplete factual record, or otherwise an abuse of the License Administrator's discretion."  Indianapolis Mun. Code § 801-435(c).

173.    The decision of the License Review Committee with respect to the appeal of a decision of the License Administrator constitutes final action of BNS without any further action, review, or approval by BNS. Indianapolis Mun. Code § 801-432(2).

174.    The determinations of BNS through the License Review Committee are subject to judicial review, as provided in the Indiana Administrative Adjudication Act. Indianapolis Mun. Code § 801-435(b).

### *Petitioners' Appeal to the BNS License Review Committee*

175.    On February 23, 2023, PMK exercised its right to appeal the denial of the application to renew its hotel license and filed a Notice of Appeal with BNS pursuant to Indianapolis Mun. Code § 801-434.

176.    Within two weeks of the scheduling of the appeal hearing, PMK issued discovery requests to BNS and IMPD to explore the bases of the License Administrator's denial of the Hotel's license renewal application.

177.    On March 9, 2023, BNS scheduled a hearing on the Appeal for Friday April 7, 2023, which was Good Friday. Petitioners requested an adjournment of the hearing due to the

26

holiday and to allow Petitioners to receive responses to the propounded discovery. Counsel for the License Administrator declined to consent to the adjournment.

178.    By email of April 3, 2023, counsel for BNS advised that the scheduled hearing was being converted to a prehearing conference. In a series of subsequent emails, although it was specifically permitted by I.C. § 4-21.5-3-19 (b), BNS declined to allow remote participation in the prehearing conference and advised that the conference would not be televised or live streamed on the City's web site, contrary to standard practice.

179.    By separate email dated April 6, 2023, counsel for BNS advised that the Board Secretary would audio record the prehearing conference "for record keeping purposes."

The prehearing conference was conducted on April 7, 2023. At the conference, Counsel for the License Administrator acknowledged the written discovery propounded by PMK and advised that she would be propounding discovery of her own.  The Appeal hearing was rescheduled for August 18, 2023.

### *Petitioners' Attempts to Conduct Discovery*

### *Written Discovery Requests*

180.    On March 23, 2023, PMK served combined Interrogatories and Requests for Production on BNS. These discovery requests were intended to aid PMK in exploring the bases for the denial of the Renewal Application.

181.    On May 15, 2023, BNS provided limited and incomplete responses to the document requests and interrogatories.

182.    Also on March 23, 2023, PMK served combined Interrogatories and Requests for Production on IMPD via email and certified mail to aid in exploring the bases for the statements made in the IMPD Letter.

183.    IMPD initially agreed to provide responses to the written discovery requests. On March 27, 2023, counsel for IMPD emailed Petitioners' counsel and advised that IMPD would "begin to gather the requested materials," but would not be able to complete that task by the initial hearing date.

184.    In the March 27, 2023, email, IMPD counsel also indicated that they would provide information on lower ranking officers "better positioned to provide testimony" than Chief Taylor because the lower ranking officers were the actual source of the information in the IMPD letter, rather than Chief Taylor.

185.    Petitioners never received any further response from IMPD to the discovery requests.

186.    PMK, on several occasions, communicated with BNS and IMPD regarding the outstanding discovery. PMK ultimately advised BNS that continued failure to provide appropriate discovery responses was compromising PMK's ability to prepare for the hearing in this matter and that, unless remedied, PMK would likely have to file a motion to compel discovery and postpone the hearing.

187.    On June 26, 2023, PMK sent a letter to IMPD advising that its failure to provide necessary and appropriate discovery was compromising PMK's ability to prepare for the hearing in this matter and that, in the absence of an adequate response, PMK would likely have to file a motion to compel discovery and postpone the hearing.  IMPD never responded to this letter.

188.    On or about May 31, 2023, the License Administrator propounded Requests for Admission upon PMK, to which PMK timely responded on June 26, 2023.

189.    On July 14, 2023, Petitioners propounded separate Requests for Admission upon the License Administrator and IMPD.

28

190.    Under Indiana Trial Rule 36, a request for admission "is admitted unless, within a period designated in the request, not less than thirty [30] days after service thereof … the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by his attorney."

191.    The Requests served by PMK required responses within 30 days, or no later than August 13, 2023.

192.    Neither party responded to the Requests by August 13.

193.    After Petitioners advised BNS that its failure to timely respond to the Requests for Admission meant they were deemed admitted by operation of law, the License Administrator provided late responses on August 30, 2023.

194.    By email dated September 6, 2023, Petitioners advised BNS that the responses were late, and Petitioners were not waiving any rights, nor were they waiving their contention that the Requests were all deemed admitted by operation of law.

195.    Pursuant to Indiana Trial Rule 36, BNS is deemed to have admitted the following facts by virtue of its failure to serve responses by August 13:

    a.  Kartik Patel was never arrested;

    b.  the denial of the Renewal Application was based on the IMPD Letter;

    c.  Petitioners had implemented all of the recommended security measures noted as failures in the IMPD Letter;

    d.  IMPD had, on more than one occasion, accessed or availed themselves of video footage captured by the Budget 8 Hotel's video surveillance system in the course of police investigations;

    e.  the IMPD Letter was written and submitted at the request of BNS;

    f.  IMPD directed Andrew Merkely (of OPHS) to appear at the Budget 8 Hotel on February 10, 2023, and advise the guests/residents that the hotel had lost

its license and was closing, and they would need to find new accommodations; and

g.   BNS had advised social worker Lorie Bohannon-Liasion that the Budget 8 license was being denied before actually rendering that decision and advising PMK.

196.   The License Administrator's late responses to the Requests for Admission also expressly admitted that *he lacked sufficient knowledge or information to conclude that Kartik Patel was ever arrested.*

### Deposition Subpoenas

197.   On June 26, 2023, with the scheduled hearing date rapidly approaching and BNS/IMPD failing to respond to written discovery or respond to requests to schedule depositions, Petitioners requested the License Review Committee to issue deposition subpoenas for Charles Askew and a representative of IMPD. The subpoenas provided for deposition dates of July 13 (IMPD) and July 14 (Askew).

198.   These subpoenas were critical to Petitioners' appeal, as they would have allowed them to explore such central issues as why the License Administrator concluded that Mr. Patel falsely stated on the renewal application that he had never been arrested when the Board admittedly had insufficient knowledge to reach that conclusion, why the License Administrator ignored Mr. Patel's email explaining that he has never been arrested, and exploring the circumstances behind the IMPD Letter, including who actually wrote it and BNS's role in that process, why the letter included several statements that the IMPD knew were false, and why the License Administrator relied upon the letter despite BNS's having received information almost a year earlier indicating that those statements were false.

199.    On the afternoon of Friday, July 7, 2023, the License Review Committee issued the subpoenas.

200.    Due to the passage of time between Petitioners' request and the License Review Committee's issuing the subpoenas, the original proposed dates for the depositions were no longer feasible. IMPD counsel confirmed this by email dated July 7, 2023, advising that she was not available on July 13 for the IMPD deposition and that she and counsel for the License Administrator would confer and get back to Petitioners' counsel with new dates.

201.    By email dated July 12, 2023, counsel for Petitioners confirmed, out of an abundance of caution, that the depositions would not be proceeding on the dates set forth in the subpoenas, and the parties would confer on new dates.

### Petitioners Move to Compel Discovery and Postpone the Hearing

202.    On July 27, 2023, PMK filed a motion in the Appeal proceedings that sought to compel discovery and sought an adjournment of the hearing on the Appeal from its then-scheduled date of August 18, 2023.

203.    On August 7, 2023, BNS filed its Opposition to the Motion to Compel, stating for the first time that BNS did not believe that it was required to provide further responses to PMK's written discovery because it was never properly served with same.

204.    BNS had previously provided responses to PMK's written discovery without asserting any objection to service.

205.    BNS's Opposition also invoked Marion County LR 49-TR 33 Rule 213(A) for the proposition that PMK was limited to propounding only twenty-five interrogatories.  BNS advised that it believed the first thirteen of PMK's Interrogatories actually constituted twenty-seven

distinct inquiries/interrogatories, inclusive of subparts. BNS did not, however, identify how it arrived at this calculation or what it perceived to be "subparts."

206.    On August 9, 2023, IMPD filed its opposition to the Motion to Compel, stating for the first time that it did not have any obligation to respond to the written discovery because it was not a party to the Appeal. IMPD asserted instead that it would treat the written discovery as a request for public information under the Access to Public Records Act ("APRA"), IND. CODE § 5-14-3.

207.    After receiving the oppositions filed by BNS and IMPD, Petitioners contacted the License Review Committee to inquire when and how they could respond to the Oppositions, and further to suggest that the scheduled August 18, 2023, hearing date be used to argue the Motion to Compel or to hold a conference as to the Motion and the date of the Appeal hearing. The License Review Committee did not respond to this request.

208.    Instead, on August 10, 2023, Petitioners received an email from the City of Indianapolis, Office of Corporation Counsel, advising that the hearing was being adjourned due to an unspecified scheduling conflict of another party.

209.    On August 15, 2023, Camille Blunt, as Administrative Law Judge on behalf of the License Review Committee, entered an Order denying the Motion to Compel.

210.    The August 15 Order adopted, without exception or analysis, the arguments and positions advanced by BNS and IMPD in their respective Oppositions.

211.    On August 29, 2023, Petitioners filed a Motion for Reconsideration of the denial of the Motion to Compel.  In that Motion, Petitioners argued that the License Administrator: (1) did not establish that the Marion County Local Rules and corresponding limitation on the number of allowable interrogatories applied to the subject administrative proceeding; (2) did not establish

how the interrogatories were counted on which to base the assertion that 25 interrogatories were answered; and (3) improperly counted subparts of single integrated interrogatories as separate interrogatories in violation of applicable law. Petitioners also asserted that BNS had waived any arguments relative to service and/or formatting by its prior responses to discovery.

212.    The Motion for Reconsideration also disputed that IMPD was a non-party.

213.    The License Administrator and IMPD filed Oppositions to the Motion to Reconsider on September 6, 2023, and on September 14, 2023, respectively.

214.    In its Opposition, IMPD stated that it had unilaterally "withdrawn" its prior determination that the discovery was being treated as a public records request under APRA, thereby reversing its position yet again.

215.    On September 13, 2023, prior to the IMPD Opposition, Petitioners filed a reply to the BNS Opposition.

216.    On September 18, 2023, ALJ Blunt entered an Order summarily denying the Motion to Reconsider. The Order did not contain any analysis or findings – just a denial and a recitation that the License Review Committee considered the Motion to Reconsider, and the Oppositions filed by the License Administrator and IMPD in reaching its conclusion.  The Order did not say that the License Review Committee considered PMK's Reply.

217.    On September 29, 2023, Petitioners made a Motion to Amend the Order Denying Reconsideration, asking ALJ Blunt to articulate a basis for the findings supporting the denial. No opposition was ever filed to the Motion to Amend. Nonetheless, the ALJ/ Committee never ruled upon or even acknowledged the filing of the Motion.

### *Statements of Support from the Community*

218.     On August 29, 2023, Petitioners submitted to BNS (and all counsel involved in the appeal) written statements from seven separate Indianapolis community leaders, all of whom expressed support for the Budget 8 Hotel and Mr. Patel and sought the reversal of the denial of the Hotel's license renewal application. These statements—executed and submitted by social workers, clerics, business leaders, law enforcement personnel and elected officials—described the Budget 8 Hotel is a valuable resource in the community, particularly its vigilance and resources as a deterrent to criminal activity, its cooperation with law enforcement, and its provision of essential support for the underserved populations of Indianapolis' Eastern District.

### *Appeal Hearing Rescheduled*

219.     On September 6, 2023, the License Review Committee issued an Order re-setting the hearing on the Appeal for November 1, 2023.  There was no prior consultation with counsel for Petitioners regarding their availability.

220.     By email dated September 13, 2023, counsel for Petitioners advised that he had a conflict on November 1 and asked that the hearing be rescheduled. The License Review Committee did not acknowledge or respond to this request.

### *September 21, 2023, Prehearing Conference*

221.     On September 21, 2023, the License Review Committee convened a prehearing conference.

222.     At the conference, Counsel for Petitioners reiterated his request that the matter be rescheduled due to (i) a pre-existing conflict; (ii) the outstanding documentary discovery; and (iii) the prolonged failure of the License Administrator and IMPD to comply with lawfully issued deposition subpoenas.

223.    The License Administrator opposed Petitioners' request.

224.    In discussing the status of the outstanding subpoenas and scheduling depositions, Ms. Law indicated that there would be no depositions.

225.    At the conclusion of the conference, ALJ Blunt denied the request to adjourn and reschedule the hearing.

226.    ALJ Blunt also stated that the License Review Committee would issue a prehearing order defining the rules and parameters for the Appeal hearing.

227.    Petitioners subsequently requested a copy of the recording of the prehearing conference and was told there was no such recording, despite the fact that BNS had previously advised that the Board Secretary makes an audio recording of such proceedings for recordkeeping purposes.

228.    Because there was no recording of the conference, counsel for PMK submitted a letter to ALJ Blunt, dated September 29, 2023, setting out a narrative summary of the September 21, 2023, prehearing conference.

229.    Counsel for the License Review Committee submitted a letter dated October 23, 2023, requesting that the September 29 letter it be stricken from the record—although it did not dispute the accuracy of the letter.

### *October 13, 2023, Prehearing Order*

230.    On September 22, 2023, the License Review Committee issued an Order inviting the parties to submit proposed prehearing orders by October 6, 2023. Petitioners timely submitted a proposed prehearing order and copied opposing counsel.

231.    Petitioners did not receive any proposed prehearing order from the License Administrator.

232.    On October 13, 2023, the License Review Committee issued its Prehearing Order.

233.    Not one single provision of Petitioners' proposed prehearing order made it into the October 13 Order.

234.    Instead, the Order as entered was almost a verbatim copy of a proposed Order *submitted ex parte by counsel for the License Administrator*, in derogation of IND. CODE § 4-21.5-3-11(a).

235.    Upon learning of the *ex parte* submission, Petitioners made a demand on October 23, 2023, that the License Review Committee produce any and all *ex parte* communications between it and the License Administrator/counsel and IMPD/counsel. The License Review Committee never responded or even acknowledged the demand, and never produced the requested communications.

Separately, Petitioners learned through a public records request that there were indeed additional *ex parte* communications between the License Administrator's counsel and ALJ Counsel. These were also brought to the attention of the License Review Committee on October 26, 2023.

236.    The License Review Committee did nothing upon receiving this information.

237.    The Prehearing Order provided that there would be no live witness testimony at the hearing and no witness testimony by affidavit.

238.    Additionally, the Order provided that:

> The Committee's task is to determine whether the agency decision, that is the License Administrator's February 6, 2023, decision, should be vacated because it was either unlawful, based upon an incorrect or incomplete factual record, or otherwise an abuse of the license administrator's discretion. Sec. 801-435(b) of the Revised Code of the Consolidated City of Indianapolis and Marion County.

36

239.    The Prehearing Order also closed discovery as of the date of the Order, which was little more than a formality because the License Review Committee had consistently failed to enforce discovery obligations and stood by while the License Administrator and IMPD defied the lawful subpoenas issued by the License Review Committee.

### *Motion to Enforce Subpoenas and Enjoin Appeal Hearing*

240.    In light of counsel's pronouncement at the September 21, 2023, prehearing conference that there would be "no depositions," Petitioners filed a Motion in the Marion County Superior Court, CAUSE NO. 49D03-2309-PL-038478, on September 29, 2023, seeking an injunction and an order enforcing the subpoenas. In that Motion, PMK argued that the License Administrator and IMPD had ignored and defied lawfully issued subpoenas and that the failure to provide witnesses for deposition was unfairly prejudicial to Petitioners, particularly given the compressed time frame before the scheduled hearing.

241.    The state court matter came on for hearing on Monday, October 16, 2023.  On October 23, 2023, the Superior Court issued an Order denying the Motion and declining to enjoin the appeal hearing.  In its Order, the Court found that it lacked subject matter jurisdiction, as PMK had failed to exhaust its administrative remedies relative to enforcing the subpoenas.

### *November 1, 2023, administrative appeal hearing*

242.    The hearing on the administrative appeal proceeded as scheduled on November 1, 2023, before the three-member License Review Committee.

243.    Consistent with the Prehearing Order, the License Review Committee did not allow any witness testimony to be presented live or by affidavit.

244.    Also consistent with the Prehearing Order, the License Review Committee did not allow Petitioners to cross examine the witnesses against it, including the License Administrator, Chief Taylor, and the person(s) who provided the inaccurate information in the IMPD Letter.

245.    At the close of the three and a half (3 ½) hour hearing, the License Review Committee members cast their votes on the questions before them.  The vote tally was as follows:

> 1 Vote – The Applicant failed to disclose being arrested and charged for two (2) counts of intimidation, an A Misdemeanor, under cause number 49D35-2210-CM-028423 in his renewal application of hotel license LHT-000250;

> 1 Vote: The applicant/licensee permitted illegal activity to take place on the hotel premises or take place in the conduct of the hotel;

> 2 Votes: The applicant/licensee failed to maintain the hotel premises in a manner that will not create a nuisance or become detrimental to the public welfare;

> 2 Votes: IMPD provided a written letter to the license administrator stating its objections to the applicant's license renewal because of public safety concerns.  Based on the letter, the license administrator concluded that renewal of hotel license LHT-000250 would be detrimental to the public welfare; and

> 3 Votes: No – License will not be renewed.

246.    Indianapolis Mun. Code Sec. 801-433 provides that "[t]wo (2) members of the committee shall constitute a quorum. To pass a motion or determination, a quorum of the committee must vote in favor thereof."

247.    Accordingly, although the License Review Committee affirmed the License Administrator's decision not to renew the Hotel's license, the License Review Committee rejected the License Administrator's findings that Petitioners' license renewal application included a material misstatement of fact about his having been arrested, and that Petitioners had permitted illegal activity to take place on the Hotel premises or in the conduct of the Hotel.

**_December 15, 2023, Determination Affirming the License Administrator's Decision_**

248.    Indiana Courts have held due process standards establish that Plaintiffs have a legal right to know the evidentiary bases upon which the License Review Committee's ultimate finding rests. That responsibility lies with the administrative agency, who for that reason must enter specific findings of basic fact to support its finding of ultimate fact and conclusion of law.

249.    On December 15, 2023, the License Review Committee issued its written Determination Affirming the License Administrator's Decision (the "Final Administrative Order").

250.    The License Review Committee's Finding of Fact, accepted the hearsay content of the IMPD Letter relating to the number of calls and the City's costs in relationship to those calls as facts. But the Final Administrative Order gave no information suggesting if or how those alleged calls or costs were unreasonable, uncommon, or a violation of the established service calls standards set forth in the applicable ordinances. Moreover, it did not identify any conduct by the Plaintiffs which caused or contributed to the number of runs or alleged costs.

251.    The License Review Committee's Finding of Fact, also made factual determinations based on hearsay as to the types of incidents the police runs were responding to. But the Final Administrative Order gave no information finding if or how those runs were unreasonable, uncommon, or a violation of the established service calls standards set forth in the applicable ordinances. Moreover, it did not identify any conduct by the Plaintiffs which caused or contributed to any of those service calls.

252.    The License Review Committee's Finding of Fact, also made factual determinations based on the hotly disputed hearsay content of the IMPD Letter claiming that Plaintiffs had failed to implement security and safety recommendations by IMPD. The hearsay

claims of a failure to implement recommendations were demonstrably false, and nothing in the Final Administrative Order indicated any basis for this factual finding. Moreover, the Final Administrative Order did not identify how any of those alleged security and safety recommendations would have or could have impacted a single call reviewed by the License Administrator or referenced in the IMPD letter. The Final Administrative Order gave no suggestion how or why this disputed factual claim represented illegal conduct, a violation of any standard set forth in the applicable licensure ordinance, the conduct required by any ordinance relation to probation relating to the service call ratio, or how or why any action or inaction could be deemed to be inimical to the public welfare.

253.    Without any explanation the Final Administrative Order conclusions of law found, "Appellant's actions and failure to act in certain instances constitute a violation of Sec. 801-303(a)(2)." However, the License Review Committee did not clarify which act or failure to act violated Sec. 801-303(a)(2) or how such nonspecific conduct did, or even could have, violated Sec. 801-303(a)(2).

254.    Contrary to controlling Indiana Statute, the License Review Committee ignored the undisputed evidence that the Hotel was well under the service call ratio limit set by the applicable ordinance. In direct violation of Indiana law, the License Review Committee imposed a penalty on the Hotel owners for contact made by its tenants requesting law enforcement assistance.

255.    The Final Administrative Order's Concluded, "Based upon the above Findings of Fact and Conclusions of Law, the Committee upholds the License Administrator's decision to deny Appellant's license renewal application."

256.    The Final Administrative Order lacks support in the record, did not adequately articulate a basis for the agency's decision, recited the content of hearsay presented without making

40

proper findings of basic fact, inappropriately relied solely on hearsay, and wholly failed to adequately or rationally apply law to the alleged found facts. Failing to follow proper procedures and form for agency orders in this case unmistakably reflect the BSN's ongoing and underlying failure to observe minimal due process standards established by Indiana law and mandated by the United States Constitution and Indiana Constitution.   The Final Administrative Order conspicuously avoids any suggestion that Plaintiffs were given due process or any factual, logical, or legal basis which would indicate that the agency's ultimate decision was correct.

## COUNT I

**Deprivation of Right to Procedural Due Process under the Fourteenth
Amendment to the United States Constitution –
Municipal Liability/Custom or Practice**
*(As Against the City Defendants and the Individual Defendants in their official capacities)*

257.    Plaintiffs incorporate by reference each and every paragraph above as though fully set forth herein.

258.    The Fourteenth Amendment to the United States Constitution prohibits local government actors from depriving an individual of property or liberty interests without due process of law.  Included within this protection are the rights to notice and a hearing when a local government deprives an individual of a protectable property interest.

259.    Plaintiffs held a protectable property interest in the license to operate the Hotel and the right to engage in their business and therefore, pursuant to the Constitution of the United States, were entitled to procedural due process prior to revocation of the license, including notice, a hearing, and a right of appeal.

260.    Defendants deprived Plaintiffs of their due process rights by ordering Plaintiffs to immediately stop taking new guests, without adequate notice, the right to appeal, or a hearing, when they denied Plaintiffs' application to renew the license to operate the Hotel.

41

261.     Defendants further deprived Plaintiffs of their due process rights by sending City officials and police to the Hotel to tell guests that the Hotel was not licensed to operate and that they would have to leave, effectively revoking Plaintiffs' license before the February 6 Order legally took effect and without adequate notice, the right to appeal, or a hearing.

262.     Plaintiffs also held a protectable liberty interests protected by the Due Process Clause in their "reputation, good name, honor, and integrity." *Quinn v. Shirey*, 293 F.3d 315, 319 (6th Cir.2002). Defendants' actions and inactions caused direct harm to these constitutionally protected liberty interest.  This damage to Defendants' reputation (and related liberty interests) are actionable as they are inexorably intertwined with Defendants' action to alter Defendants rights or status previously recognized by law.

263.     Defendants were acting in their official capacities under color of state law with deliberate indifference to the constitutional rights of Plaintiffs.

264.     Defendants' actions were not isolated but were undertaken in accordance with a policy or practice so permanent and well-settled as to constitute a custom or usage with the force of law.

265.     Defendants' unconstitutional actions were taken in accordance with a rule or regulation passed the City's legislative body.

266.     Defendants' unconstitutional actions were taken in accordance with a decision or policy statement made by the BNS policymaking official for the City.

267.     Plaintiffs were deprived of their due process rights as a direct and proximate result of Defendants' actions.

268.     As a direct and proximate result of Defendants' deprivation of Plaintiffs' due process rights, Plaintiffs have suffered, and will continue to suffer, damages in the form of lost

revenue, a substantial decrease in the value of the Hotel property, harm to Patel's personal reputation, harm to PMK's business reputation, emotional distress and mental anguish suffered by Patel, and attorneys' fees to defend against Defendants' improper license revocation and effective shutdown of the Hotel.

269.   Plaintiffs have also incurred, and will continue to incur, attorneys' fees in order to enforce their rights through the prosecution of this action.

## COUNT II

**Deprivation of Right to Procedural Due Process under the Fourteenth Amendment to the United States Constitution - Municipal Liability/Failure to Train and Supervise**
*(As Against the City Defendants and Brands and Wunder in their official capacities)*

270.   Plaintiffs incorporate by reference each and every paragraph above as though fully set forth herein.

271.   The City and BNS, as well as defendants Abbey Brands, as the Director of BNS, and Amy Wunder, as a BNS Administrator, had a duty to ensure that License Administrators, including Defendant Askew, were trained, and supervised to perform their duties in a way that did not violate the rights of members of the public protected by the United States Constitution.

272.   The City, BNS, Brands, and Wunder were aware of Askew's actions at the time they occurred.

273.   The City, BNS, Brands, and Wunder's training program was not adequate to train its Employees to properly handle recurring situations.

274.   The City, BNS, Brands, and Wunder failed to adequately supervise its employees.

275.   The City, BNS, Brands, and Wunder knew that it was highly predictable that due process violations of the type described herein would occur without more/different training and/or adequate supervision of its officers and employees, because it was highly predictable.

276. The City, BNS, Brands, and Wunder failure to provide adequate training/supervision caused the above alleged violation(s) of Plaintiff's constitutional rights.

277. The City, BNS, Brands, and Wunder were aware or acted with deliberate indifference to whether Askew's actions described herein violated the due process rights of Patel and PMK protected by the United States Constitution.

278. The City, BNS, Brands, and Wunder directed, approved, and/or ratified through inaction, Askew's actions described herein.

279. The City, BNS, Brands, and Wunder failed to train and supervise Askew sufficiently to prevent and/or mitigate Askew's violation of the constitutional rights of the public, including the constitutional rights of Plaintiffs, protected by the United States Constitution.

280. The failure of the City, BNS, Brands, and Wunder to train and supervise Askew to prevent and/or mitigate Askew's violation of the rights of the public, including the constitutional rights of Plaintiffs protected by the United States Constitution, amounts to a deliberate indifference to the constitutional rights of the public and Plaintiffs, and directly and proximately caused the deprivation of Plaintiffs' due process rights.

281. As a direct and proximate result of the failure of the City, BNS, Brands, and Wunder to train and/or supervise Askew to prevent and/or mitigate Askew's violation of the constitutional rights of the public, including the constitutional rights of Plaintiffs, protected by the United States Constitution, Plaintiffs have suffered, and will continue to suffer, damages in the form of lost revenue, a substantial decrease in the value of the Hotel property, harm to Patel's personal reputation, harm to PMK's business reputation, emotional distress and mental anguish suffered by Patel, and attorneys' fees to defend against Defendants' improper license revocation and shutdown of the Hotel.

282.    Plaintiffs have also incurred and will continue to incur attorneys' fees in order to enforce their rights through the prosecution of this action.

## COUNT III

**Deprivation of Right to Procedural Due Process under the Fourteenth Amendment to the United States Constitution - Personal Liability**
*(As Against Defendant Askew in his personal capacity)*

283.    Plaintiffs incorporate by reference each and every paragraph above as though fully set forth herein.

284.    Defendant Askew's actions described herein violated the due process rights of Patel and PMK protected by the United States Constitution.

285.    Defendant Askew was aware or acted with deliberate indifference to whether his actions described herein violated the due process rights of Patel and PMK protected by the United States Constitution.

286.    Defendant Askew personally and directly participated in the violation of Plaintiffs' procedural due process rights protected by the United States Constitution.

287.    Askew was acting under color of state law.

288.    Plaintiffs were deprived of their due process rights as a direct and proximate result of Askew's actions.

289.    As a direct and proximate result of Askew's violation of Plaintiffs' rights to due process under the United States Constitution, Plaintiffs have suffered, and will continue to suffer, damages in the form of lost revenue, a substantial decrease in the value of the Hotel property, harm to Patel's personal reputation, harm to PMK's business reputation, emotional distress and mental anguish suffered by Patel, and attorneys' fees to defend against Defendants' improper license revocation and effective shutdown of the Hotel.

290.     Plaintiffs have also incurred and will continue to incur attorneys' fees in order to enforce their rights through the prosecution of this action.

## COUNT IV

**Deprivation of Right to Procedural Due Process under the Fourteenth Amendment to the United States Constitution - Personal Liability**
***(As Against Defendants Brands and Wunder in their personal capacity)***

291.     Plaintiffs incorporate by reference each and every paragraph above as though fully set forth herein.

292.     Defendant Askew's actions described herein violated the due process rights of Patel and PMK protected by the United States Constitution.

293.     Defendants Brands and Wunder were aware of Defendant Askew planned actions identified above which violated the due process rights of Patel and PMK protected by the United States Constitution.

294.      Defendants Brands and Wunder had a supervisory role and were consulted about and/or knew of Askew's planned actions identified above which he was about to take which violated the due process rights of Patel and PMK protected by the United States Constitution.

295.     Defendants Brands and Wunder acted with deliberate indifference to whether Askew's actions described herein violated the due process rights of Patel and PMK protected by the United States Constitution.

296.     Defendants Brands and Wunder approved/assisted/condoned/purposely ignored Askew's actions described herein violated the due process rights of Patel and PMK protected by the United States Constitution.

297.     Defendants Askew, Brands and Wunder reached an understanding, conspiring to deprive Patel and PMK or their due process rights protected by the United States Constitution.

46

298.    Defendants Askew, Brands and Wunder were willful participant[s] in that joint activity.

299.    Defendants Askew, Brands and Wunder personally and directly participated in the violation of Plaintiffs' procedural due process rights protected by the United States Constitution.

300.    Defendants Brands and Wunder were acting under color of state law.

301.    Plaintiffs were deprived of their due process rights as a direct and proximate result of Brands and Wunder's actions or inactions.

302.    As a direct and proximate result of Brands and Wunder's violation of Plaintiffs' rights to due process under the United States Constitution, Plaintiffs have suffered, and will continue to suffer, damages in the form of lost revenue, a substantial decrease in the value of the Hotel property, harm to Patel's personal reputation, harm to PMK's business reputation, emotional distress and mental anguish suffered by Patel, and attorneys' fees to defend against Defendants' improper license revocation and effective shutdown of the Hotel.

303.    Plaintiffs have also incurred and will continue to incur attorneys' fees in order to enforce their rights through the prosecution of this action.

## **COUNT V**

**Deprivation of Right to Procedural Due Process Under Article I § 12 of the Indiana Constitution**
***(As Against the City Defendants and the Individual Defendants)***

304.    Plaintiffs incorporate by reference each and every paragraph above as though fully set forth herein.

305.    Article I § 12 of the Indiana Constitution provides that "[a]ll courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy

47

by due course of law." Included within this protection are the rights to notice and a hearing when a local government deprives an individual of a protectable property or reputational interest.

306.   Plaintiffs held a protectable property interest in the license to operate the Hotel and the right to engage in their business, as well as a protectable liberty interest in their reputation, and therefore, pursuant to the Indiana Constitution, were entitled to procedural due process prior to the effective revocation of the Hotel's license, including notice, a hearing, and a right of appeal.

307.   Defendants deprived Plaintiffs of their Indiana due process rights by denying Plaintiffs application to renew the license to operate the Hotel on the grounds that Patel lied about being arrested and the Hotel was "inimical to the public welfare," and by ordering Plaintiffs to immediately stop taking new guests without adequate notice, the right to appeal, or a hearing.

308.   Defendants further deprived Plaintiffs of their due process rights by sending City officials and police to the Hotel to tell guests that the Hotel was not licensed to operate and that they would have to leave, effectively revoking Plaintiffs' license before the February 6 Order legally took effect, without adequate notice, the right to appeal, or a hearing.

309.   Defendants Askew, Brands' and Wunder's actions and inactions described herein violated the due process rights of Patel and PMK protected by the Indiana Constitution.

310.   Defendants Askew, Brands and Wunder were aware or acted with deliberate indifference to whether their actions described herein violated the due process rights of Patel and PMK protected by the Indiana Constitution.

311.   Defendants Askew, Brands and Wunder personally and directly participated in the violation of Plaintiffs' procedural due process rights protected by the Indiana Constitution.

312.   The City and BNS, as well as defendant Abbey Brands, as the Director of BNS, and Amy Wunder, as a BNS Administrator, had a duty to ensure that License Administrators,

including Defendant Askew, were trained, and supervised to perform their duties in a way that did not violate the rights of members of the public protected by the Indiana Constitution.

313.    The City, BNS, Brands, and Wunder were aware of Askew's actions described herein.

314.    The City, BNS, Brands, and Wunder were aware or acted with deliberate indifference to whether Askew's actions described herein violated the due process rights of Patel and PMK protected by the Indiana Constitution.

315.    The City, BNS, Brands, and Wunder directed, approved, and/or ratified through inaction, Askew's actions described herein.

316.    The City, BNS, Brands, and Wunder failed to train and supervise Askew sufficiently to prevent and/or mitigate Askew's violation of the constitutional rights of the public, including the constitutional rights of Plaintiffs, protected by the Indiana Constitution.

317.    The failure of the City, BNS, Brands, and Wunder to train and supervise Askew to prevent and/or mitigate Askew's violation of the rights of the public, including the constitutional rights of Plaintiffs, protected by the Indiana Constitution amounts to a deliberate indifference to the constitutional rights of the public and Plaintiffs, and directly and proximately caused the deprivation of Plaintiffs' due process rights under the Indiana Constitution.

318.    As a direct and proximate result of Defendants' deprivation of Plaintiffs' due process rights, Plaintiffs have suffered, and will continue to suffer, damages in the form of lost revenue, a substantial decrease in the value of the Hotel property, harm to Patel's personal reputation, harm to PMK's business reputation, emotional distress and mental anguish suffered by Patel, and attorneys' fees to defend against Defendants' improper license revocation and shutdown of the Hotel.

319.    Plaintiffs have also incurred and will continue to incur attorneys' fees in order to enforce their rights through the prosecution of this action.

## COUNT VI

**Deprivation of Right to Substantive Due Process Under the Fourteenth Amendment to the United States Constitution - Ordinances Void for Vagueness (As Against the City Defendants)**

320.    Plaintiffs incorporate by reference each and every paragraph above as though fully set forth herein.

321.    Indianapolis Mun. Code § 801-303(a)(2) states: "All licenses shall be issued upon the condition that the licensee shall . . . (2) Conduct and maintain the licensed business and premises in such a manner that they will not create a nuisance or become inimical to the public welfare." (emphasis added).

322.    Indianapolis Mun. Code **§** 901-204(d) requires denial of an application for a license renewal if the condition discussed in the previous paragraph is not met, stating: "The administrator shall deny any application for renewal of a license, if the licensee has failed to comply with sections 801-301 through 801-303."

323.    Indianapolis Mun. Code **§** 901-204(f) states: "The administrator may deny any application for a new license, or renewal of a license, if a written objection detailing the reason for objection is submitted by Marion County Health and Hospital Corporation, Indianapolis Metropolitan Police Department, or the Indianapolis Fire Department, and the administrator concludes that issuance or renewal of the license would be inimical to the public welfare." (emphasis added).

324.    The phrase "inimical to the public welfare" in § 801-303(a)(2) and § 901-204(f) is not defined in either Ordinance.

50

325.   BNS has promulgated no ascertainable standards providing specific guidance and boundaries for what constitutes actions or inactions that are "inimical to the public welfare," as that phrase is used in § 801-303(a)(2) and § 901-204(f).

326.   The delegation of authority to the License Administrator under the "inimical to the public welfare" standard in § 801-303(a)(2) and § 901-204(f) is so broad and undefined that arbitrary prosecutions are almost certain to happen, as they did here.

327.   The "inimical to the public welfare" standard gives the License Administrator unfettered discretion to deny a license or license renewal with no set criteria, based on the individual predilections, biases, and prejudices of the Administrator.

328.   Sections 801-303(a)(2) and 901-204(f) do not provide a licensee or potential licensee of ordinary intelligence with a reasonable opportunity to know what conduct is prohibited by the "inimical to the public welfare" standard, so as to provide them with fair notice of how to act to avoid running afoul of the prohibition.

329.   Quite the contrary is true.  In this case, both the Administrator and the License Review Committee used the term "inimical to the public welfare" to set a completely different standard of conduct and requirements for a Hotel owner, which directly contradicted the standards established in the applicable ordinances relating to the city's evaluation of service calls at a hotel.

330.   Moreover, neither the License Review Committee nor this Court have been given the guidance necessary for effective review of a decision that renewal of a hotel license would be "inimical to the public welfare," in order to determine whether the conclusion is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

331.   For these reasons, Indianapolis Mun. Code § 801-303(a)(2) and § 901-204(f) violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution in

that they are unconstitutionally void for vagueness to the extent that they allow a License Administrator to deny a license renewal application based on the "inimical to the public welfare" standard.

332.    The License Administrator's denial of PMK's license renewal application, based in part on a violation of the "inimical to the public interest" standard in Indianapolis Mun. Code § 801-303(a)(2), violated Plaintiffs' due process rights.

333.    The License Review Committee's affirmance of the License Administrator's denial of PMK's license renewal application, based almost entirely on unspecified violations of the "inimical to the public interest" standard in Indianapolis Mun. Code § 801-303(a)(2), violated Plaintiffs' due process rights.

334.    The License Administrator's denial of PMK's license renewal application, based in part on a violation of the "inimical to the public interest" standard in Indianapolis Mun. Code § 901-204(f), violated Plaintiffs' due process rights.

335.    The License Review Committee's affirmance of the License Administrator's denial of PMK's license renewal application, based almost entirely on a violation of the "inimical to the public interest" standard in Indianapolis Mun. Code § 901-204(f), violated Plaintiffs' due process rights.

336.    As a direct and proximate result of Defendants' violation of Petitioners' due process rights under the Fourteenth Amendment to the United States Constitution, Plaintiffs have suffered, and will continue to suffer, damages in the form of lost revenue, a substantial decrease in the value of the Hotel property, harm to Patel's personal reputation, harm to PMK's business reputation, emotional distress and mental anguish suffered by Patel, and attorneys' fees to defend against Defendants' improper license revocation.

337.     In light of the unmistakable evidence relating to vagueness of the "inimical to the public interest" standard, Mun. Code §§ 801-303(a)(2) and 901-204(f) are defective and represent a violation of due process both as written and as applied.   As a result, in addition to monetary damages, Plaintiffs seek a declaratory judgment deeming these ordinances illegal and void.

338.     In light of the Plaintiffs/Petitioners likelihood of success on the merits, the irreparable harm suffered by Plaintiffs/Petitioners, the balance of equities and hardships in this case, and a weighing of public interest considerations, in addition to an award of monetary damages, Plaintiffs/Petitioners seek injunctive relief and an court order enjoining Defendants from ordering the closing of the Budget 8 Inn, or any order precluding Plaintiffs from accepting new guests at the Budget 8 Inn, during the pendency of this action, during the pendency of this action.

## COUNT VII

### Deprivation of Right to Substantive Due Process Under Article I § 12
### of the Indiana Constitution - Ordinances Void for Vagueness
### (As Against the City Defendants)

339.     Plaintiffs incorporate by reference each and every paragraph above as though fully set forth herein.

340.     Article I § 12 of the Indiana Constitution provides that "every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law."

341.     Indiana state and federal substantive due process analysis is identical. *N.B. v. Sybinski*, 724 N.E.2d 1103, 1112 (Ind. Ct. App. 2000).

342.     Therefore, for the reasons set forth in Count VI, *supra*, Defendants' denial of PMK's license renewal application based on a violation of the "inimical to the public

interest" standard in Indianapolis Mun. Code § 801-303(a)(2) and §901-204(f) violated Plaintiffs' due process rights under Article I § 12 of the Indiana Constitution and must be vacated.

343.   As a direct and proximate result of Defendants' denial of Plaintiffs' due process rights under Article I § 12 of the Indiana Constitution, Plaintiffs have suffered, and will continue to suffer, damages in the form of lost revenue, a substantial decrease in the value of the Hotel property, harm to Patel's personal reputation, harm to PMK's business reputation, emotional distress and mental anguish suffered by Patel, and attorneys' fees to defend against Defendants' improper license revocation.

344.    As a direct and proximate result of Defendants' violation of Petitioners' due process rights under the Fourteenth Amendment to the United States Constitution, Plaintiffs have suffered, and will continue to suffer, damages in the form of lost revenue, a substantial decrease in the value of the Hotel property, harm to Patel's personal reputation, harm to PMK's business reputation, emotional distress and mental anguish suffered by Patel, and attorneys' fees to defend against Defendants' improper license revocation.

345.    In light of the unmistakable evidence relating to vagueness of the "inimical to the public interest" standard, Mun. Code §§ 801-303(a)(2) and 901-204(f) are defective and represent a violation of due process both as written and as applied.   As a result, in addition to monetary damages, Plaintiffs seek a declaratory judgment deeming these ordinances illegal and void.

346.    In light of the Plaintiffs/Petitioners likelihood of success on the merits, the irreparable harm suffered by Plaintiffs/Petitioners, the balance of equities and hardships in this case, and a

weighing of public interest considerations, in addition to an award of monetary damages, Plaintiffs/Petitioners seek injunctive relief and an court order enjoining Defendants from ordering the closing of the Budget 8 Inn, or any order precluding Plaintiffs from accepting new guests at the Budget 8 Inn, during the pendency of this action, during the pendency of this action.

## COUNT VIII

### Deprivation of Right to Substantive Due Process Under the Fourteenth Amendment to the United States Constitution - Arbitrary and Capricious, Unsupported by Substantial Evidence, and Contrary to Statutory Authority (As Against the City Defendants)

347.    Plaintiffs incorporate by reference each and every paragraph above as though fully set forth herein.

348.    An agency decision violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution if it is unsupported by substantial evidence, arbitrary and capricious, or contrary to any constitutional principle or statutory authority.

349.    The principle of substantive due process ensures that state action is not arbitrary or capricious regardless of the procedures used.

350.    Per the February 6, 2023, letter from the License Administrator announcing his decision, his denial of the license renewal application for the Hotel was based on Section 901-204(d), and 901-204(f) of the Indianapolis Revised Code.

351.    Section 901-204(d) provides that "[t]he administrator shall deny any application for renewal of a license, if the licensee has failed to comply with sections 801-301 through 801-303."

352.   Section 801-303(a)(2) states "All licenses shall be issued upon the condition that the licensee shall: . . . (2) Conduct and maintain the licensed business and premises in such a manner that they will not create a nuisance or become inimical to the public welfare."

353.   The License Administrator did not make a finding that the conduct and maintenance of the Hotel "created a public nuisance."

354.   The License Administrator denied Petitioners' license renewal application in part based on "[a] letter received from the Indianapolis Metropolitan Police Department ('IMPD') [that] shows that this hotel location is inimical to the public [sic]."

355.   As explained above, a statute or code provision that allows rejection of a license application based on an "inimical to the public welfare" finding without any ascertainable standards to limit and guide enforcement, or to advise the public what actions or inactions will give rise to such a finding, violates the Due Process Clause as void for vagueness.   Therefore, the fact that the IMPD Letter allegedly "shows that this hotel location is inimical to the public" cannot be considered part of the "substantial evidence" upon which the License Administrator's decision to deny the license renewal application must be based.

356.   The IMPD Letter is the only evidence cited in the License Administrator's February 6, 2023, letter supposedly supporting his "inimical to the public" finding.

357.   The IMPD Letter is unauthenticated and inadmissible as hearsay, among other reasons, and contains demonstrably false statements of fact, some of which BNS knew at the time were false.

56

358.   The IMPD Letter was signed by Chief Taylor, although its contents were supplied by other as-yet unnamed and unknown persons.

359.   The IMPD Letter quotes statistics on the number and costs of 911 calls from the Hotel and IMPD responses during 2021 and 2022s, including a list of certain crimes allegedly committed at the Hotel.

360.   There is no indication in the record that either the IMPD or the License Administrator compared the crime statistics cited in the IMPD Letter with statistics on other hotels and businesses in the community.  Without such a comparison, there is no way to discern whether these statistics (if they, in fact, were some or all of the bases for the "inimical to the public" finding) were used arbitrarily and capriciously, and/or to further an inappropriate or illegal bias against the Hotel or Mr. Patel.  As such, this information also cannot be considered part of the "substantial evidence" upon which the License Administrator's decision to deny the license renewal application must be based.

361.   The License Administrator used the service call information cited in the IMPD Letter to deny the license renewal.  In doing so, he applied a standard which was not approved by, and in fact contradicts, the controlling ordinance standards for evaluating service calls.

362.   The IMPD Letter falsely accuses Petitioners of failure to implement any of the security and safety recommendations made by the IMPD.  BNS was aware at the time of the License Administrator's decision that this accusation was false.

363.   The IMPD Letter also references "very specific concerns about the hotel operator's 'no 911 calls' policy."  These are false accusations as well, to the extent that the

letter indicates that the IMPD's "concerns" were current at the time of the letter, that Patel had "refused to change his policy," and that the underlying issues were ongoing.

364.   Inasmuch as the actual source of the accusations in the IMPD letter are unknown, substantial portions of the letter are demonstrably inaccurate, and BNS was aware of some of those inaccuracies, the IMPD Letter cannot be considered part of the "substantial evidence" upon which the License Administrator's decision to deny the license renewal application must be based.

365.   Section 901-204(f) states: "The administrator may deny any application for a new license, or renewal of a license, if a written objection detailing the reason for the objection is submitted by . . . [IMPD]. . . and the administrator concludes that issuance or renewal of the license would be inimical to the public welfare."

366.   Section 901-204(f) requires both a valid letter from IMPD and a finding by the License Administrator that renewing the license for the Hotel would be "inimical to the public welfare."

367.   As explained above, the IMPD Letter cannot be considered part of the "substantial evidence" upon which the License Administrator's decision to deny the license renewal application must be based.

368.   Also as explained above, a statute or code provision that allows rejection of a license application based on an "inimical to the public welfare" finding violates the Due Process Clause as void for vagueness.

369.   Moreover, the License Administrator failed to make a separate finding that renewal of the Hotel's license would be "inimical to the public welfare," as required by §

901-204(f).  The License Administrator notes both requirements of Section 901-204(f), but points to the IMPD Letter as satisfying only one. There is no finding that renewal of the Hotel's license would be "inimical to the public welfare."

370.    A finding that the relicensing of the Hotel would be "inimical to the public welfare" would necessarily require a comparison of the "public welfare" without the hotel vs. with the hotel. The License Administrator did not do this.  If he had, he would have needed to consider the statements of support from individuals and organizations in the community demonstrating that the Hotel is not inimical to the public welfare but rather a benefit to the community and an asset to IMPD/law enforcement, that the unlawful activity on the Hotel's premises was undertaken by persons over whom Petitioners had no control, and that the unlawful activity is the product of the character of the community in which the Hotel sits, not the Hotel itself.  Without such an analysis, any finding that the relicensing of the Hotel would be "inimical to the public welfare" the finding remains unsupported by substantial evidence.

371.    The decision by the License Administrator to deny Petitioners' license renewal application, was unsupported by substantial evidence, and was arbitrary and capricious, under each of Indianapolis Mun. Code § 901-204(d), and § 901-204(f).

372.    The License Review Committee did not apply the legal standards required by Indianapolis Mun. Code § 901-204(d) and § 901-204(f) to Petitioners' actions. Instead, the Committee found that Petitioners "failed to maintain the hotel premises in a manner that will not create a nuisance or become *detrimental* to the public welfare," (emphasis

added), and that "the license administrator concluded that renewal of hotel license LHT-000250 would be *detrimental* to the public welfare" (emphasis added).

373.   The word "detrimental" does not appear in either Indianapolis Mun. Code § 901-204(d) or § 901-204(f).

374.   The words "detrimental" and "inimical" are not synonymous.

375.   Merriam-Webster.com defines "inimical" as "being adverse, often by reason of hostility or malevolence; reflecting or indicating hostility."  It defines "detrimental" as "obviously harmful; damaging."

376.   Using the definitions of these terms supplied by Merriam-Webster.com, an action can be detrimental to the public welfare but not inimical to the public welfare if it was harmful to the public welfare but not hostile or malevolent, such as an action taken in a good faith but mistaken belief that it would be beneficial to the public welfare.

377.   Accordingly, License Review Committee's decision was inconsistent with its statutory authority because the denial of Petitioners' license renewal application on the basis that Petitioners "failed to maintain the hotel premises in a manner that will not create a nuisance or become detrimental to the public welfare," and that "the license administrator concluded that renewal of hotel license LHT-000250 would be detrimental to the public welfare."

378.   By affirming the License Administrator's arbitrary and capricious decision, which was not based on substantial evidence, and by applying the incorrect standard of "detrimental to the public welfare," the License Review Committee violated Petitioner's due process rights under the Fourteenth Amendment to the United States Constitution.

379.   The License Review Committee December 15, 2023, Determination Affirming the License Administrator's Decision also used a standard for evaluating service calls which ignored, and in fact, contradicted the standard established in the applicable hotel licensure ordinances.

380.   Moreover, they relied on demonstrably false and incomplete information relating to the alleged conduct of Petitioners in responding to advice given by the IMPD. In doing so they imposed undefined standards which were conspicuously contradicted by the standard established in the applicable hotel licensure ordinances.

381.   As a direct and proximate result of Defendants' denial of Plaintiffs' due process rights under the Fourteenth Amendment to the United States Constitution, Plaintiffs have suffered, and will continue to suffer, damages in the form of lost revenue, a substantial decrease in the value of the Hotel property, harm to Patel's personal reputation, harm to PMK's business reputation, emotional distress and mental anguish suffered by Patel, and attorneys' fees to defend against Defendants' improper license revocation.

382.   In light of the Plaintiffs/Petitioners likelihood of success on the merits, the irreparable harm suffered by Plaintiffs/Petitioners, the balance of equities and hardships in this case, and a weighing of public interest considerations, in addition to an award of monetary damages, Plaintiffs/Petitioners seek injunctive relief enjoining Defendants from ordering the closing of the Budget 8 Inn, or any order precluding Plaintiffs from accepting new guests at the Budget 8 Inn, during the pendency of this action, during the pendency of this action.

## COUNT IX

**Deprivation of Right to Substantive Due Process Under Article I § 12 of the Indiana Constitution - Arbitrary and Capricious and Unsupported by Substantial Evidence (As Against the City Defendants)**

383.   Plaintiffs incorporate by reference each and every paragraph above as though fully set forth herein.

384.   Article I § 12 of the Indiana Constitution provides that "every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law."

385.   Indiana state and federal substantive due process analysis is identical. *Sybinski*, 724 N.E.2d at 1112.

386.   For the reasons set forth in, Count VIII, Paragraphs 334 through 368, *supra*, the decision by the License Administrator to deny Petitioners' license renewal application, and the decision of the License Review Committee to affirm the License Administrator's decision, were unsupported by substantial evidence, and were arbitrary and capricious, under each of Indianapolis Mun. Code §§ 901-204(d) and 901-204(f).

387.   For the reasons set forth in Paragraphs Count VIII, the decision by the License Review Committee applying the incorrect standard of "detrimental to the public welfare," exceeded its statutory authority.

388.   By affirming the License Administrator's arbitrary and capricious decision, which was not based on substantial evidence, and by applying the incorrect standard of "detrimental to the public welfare," the License Review Committee violated Petitioner's due process rights under Article I § 12 of the Indiana Constitution.

389.   As a direct and proximate result of Defendants' denial of Plaintiffs' due process rights under Article I § 12 of the Indiana Constitution, Plaintiffs have suffered, and will continue to suffer, damages in the form of lost revenue, a substantial decrease in the value of the Hotel property, harm to Patel's personal reputation, harm to PMK's business reputation, emotional distress and mental anguish suffered by Patel, and attorneys' fees to defend against Defendants' improper license revocation.

390.   In light of the Plaintiffs/Petitioners likelihood of success on the merits, the irreparable harm suffered by Plaintiffs/Petitioners, the balance of equities and hardships in this case, and a weighing of public interest considerations, in addition to an award of monetary damages, Plaintiffs/Petitioners seek injunctive relief enjoining Defendants from ordering the closing of the Budget 8 Inn, or any order precluding Plaintiffs from accepting new guests at the Budget 8 Inn, during the pendency of this action, during the pendency of this action

## COUNT X

### Equal Protection Under the Law Under the Fourteen Amendment to the United States Constitution - Equal Protection: Class Of One (As Against Individual Defendants)

391.   Plaintiffs incorporate by reference each and every paragraph above as though fully set forth herein.

392.   On information and belief, Petitioners contend they are victims of discrimination intentionally visited on them by the Individual Defendants who knew or should have known that they had no justification, based on their public duties, for singling Plaintiffs out for unfavorable treatment. The Individual Defendants actions discussed in this Complaint show they acted for personal reasons, with discriminatory intent and effect.

63

393.    The Individual Defendants knew Kartik Patel was never arrested, yet the denial of license renewal falsely claimed that Patel had been arrested, and the Individual Defendants used a factual claim they knew to be false, as a basis to deny the License renewal.

394.    Individual Defendants agreed to work in conjunction to deny of license renewal Application and conspired to orchestrate and obtain an the IMPD Letter, which the Individual Defendants knew to contain false information so they could apply their own standards which were inconsistent with and contrary to the standards set forth in the applicable Ordinances, with which Petitioners were in full compliance:

    a. On information and belief, the IMPD letter signed by Chief Taylor was written and submitted at the request of the Individual Defendants. This belief is supported by the timing of events, the peculiar sequence of events, observations made by the petitioners and matters deemed admitted by the BSN's failure to respond to admissions during the licensure appeal;

    b. The Individual Defendants knew Petitioners had implemented all of the recommended security measures noted as failures in the IMPD Letter;

    c. The Individual Defendants knew IMPD had, on more than one occasion, accessed or availed themselves of video footage captured by the Budget 8 Hotel's video surveillance system in the course of police investigations;

    d. The Individual Defendants knew that the Budget 8 Inn was within the ratio of service call limit set forth in applicable ordinances.

    e. The Individual Defendants knew that Petitioners were in full compliance with all conduct requirements in Ordinances relating to their 2022 Probation period.

395.    On information and belief, BNS advised social worker Lorie Bohannon-Liasion that the Budget 8 license was being denied before actually rendering that decision and advising PMK. This belief is supported by the timing of events, the peculiar sequence of events,

observations made buy the petitioners and matters deemed admitted by the BSN's failure to respond to admissions during the licensure appeal.

396.    The decision to deny the license renewal represented *intentional and irrational* discrimination undertaken for *improper purpose*, which will be shown through the discovery process.  Plaintiff had tried to perform discovery to get a clearer insight into this issue during the administrative appeal process, but they were precluded form confronting those making the claims or performing any evaluation of why the obviously false claims were being used.

397.    Individual Defendants actions and inactions were undertaken with the intent to discriminate in the sense of intending to treat Plaintiffs differently from other persons for reasons of a personal character, that is, reasons not grounded in their public duties.

398.    On information and belief, Plaintiffs anticipate discovery will uncover evidence of similarly situated individuals who received different and more favorable treatment than Plaintiffs, which may further establish there was no proper motivation for the disparate treatment.

399.    As a direct and proximate result of Defendants' denial of Plaintiffs' equal protection rights under the Fourteenth Amendment to the United States Constitution, Plaintiffs have suffered, and will continue to suffer, damages in the form of lost revenue, a substantial decrease in the value of the Hotel property, harm to Patel's personal reputation, harm to PMK's business reputation, emotional distress and mental anguish suffered by Patel, and attorneys' fees to defend against Defendants' improper license revocation.

**COUNT XI**

**Deprivation of Right to Procedural Due Process Under the Fourteenth Amendment
to the United States Constitution –
Administrative Appeal Due Process Violations
(As Against the City Defendants)**

400.    Plaintiffs incorporate by reference each and every paragraph above as though fully set forth herein.

401.    The Due Process Clause of the Fourteenth Amendment to the United States Constitution states, in relevant part, that no State shall "deprive any person of life, liberty, or property, without due process of law."

402.    Due process under the Fourteenth Amendment requires notice, an opportunity to be heard, and an opportunity to confront witnesses. The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.

403.    Petitioners' interest in the Hotel's operating license is a protectable property interest.

404.    The discovery and prehearing procedures utilized by the License Review Committee on appeal, and the conduct of the hearing, violated Petitioners' due process rights.

**Discovery and Prehearing Procedures**

405.    IND. CODE § 4-21.5-3-17(a) required the License Review Committee to allow Petitioners "full opportunity to file pleadings, motions, and objections . . ."

406.   Although Petitioners were allowed to file papers in the proceedings before the Committee, doing so was meaningless because those papers were not given due consideration by the Committee.

407.   Papers filed by Petitioners that were not given due consideration by the Committee included PMK's Motion to Compel Discovery, PMK's Motion for Reconsideration, PMK's Motion for entry of a supplemental or revised order articulating the bases for denial of the Motion to Reconsider, PMK's proposed prehearing order, request of Petitioners' counsel to reschedule the November 1, 2023, hearing, and Petitioners' objections to *ex parte* communications between the Committee and Defendants' counsel.

408.   The License Review Committee's primary method for assuring that Petitioners were not given a meaningful opportunity to be heard was that the Committee refused to allow-and in some ways, affirmatively thwarted- Petitioners' efforts to explore the factual bases for the License Administrator's determination, despite the propriety of the License Administrator's determination being the sole issue the License Review Committee decided on appeal.

409.   The Committee's methodology included, but was not limited to, doing nothing while lawful subpoenas it had issued to the License Administrator and IMPD were defied, and allowing IMPD to take flatly inconsistent positions on whether it was required to produce documents and a witness for deposition, ultimately allowing IMPD to produce neither.

**Hearing Procedures**

410.    The License Review Committee's failure and refusal to allow Petitioners a meaningful opportunity to be heard continued with the hearing.

411.    The stage was set for denial of Petitioners' due process rights at the hearing when the License Review Committee entered BNS's *ex parte* submission as the final Prehearing Order virtually unchanged.  Petitioners were provided with no opportunity to comment upon or object to BNS's submission and did not even find out about it until after the Prehearing Order was entered.

412.    During the hearing, the parties were not allowed to present live witness testimony or testimony by way of affidavits, although both the Due Process Clause and the Indiana Administrative Orders and Procedures Act guarantee a party the right to be heard.

413.    Indianapolis Mun. Code Section 801-423 states: "The license administrator shall preside over and conduct the hearings in an informal manner, giving the affected applicant or licensee and any other person who has relevant information an opportunity to participate to the extent necessary to provide due process and full consideration of all facts and issues."

414.    Refusing to allow the parties to present live witnesses meant that Mr. Patel and others were not allowed to refute the License Administrator's "findings" (if they can be called that) and affirm the accuracy of Petitioners' version of the facts.

415.    Refusing to allow testimony by affidavits meant that Petitioners were denied the opportunity to submit the written statements of support from social workers, clerics, business leaders, law enforcement personnel and elected officials, affirming that the

Budget 8 is a valuable resource in cooperation with law enforcement and the provision of essential support for the underserved populations of Indianapolis' Eastern District.

416.    Due process also requires that a party be allowed to confront adverse witnesses.

417.    Indiana AOPA provides that "[t]o the extent necessary for full disclosure of all relevant facts and issues, the administrative law judge shall afford to all parties the opportunity to respond, present evidence and argument, conduct cross-examination, and submit rebuttal evidence, except as restricted by a limitation under subsection (d) or by the prehearing order." IND. CODE § 4-21.5-3-25 (emphasis added).

418.    As noted *supra*, the Prehearing Order denying Petitioners the right to conduct cross examination was a virtually unchanged version submitted *ex parte* by defense counsel.  The Prehearing Order, therefore, was invalid.

419.    Nonetheless, Petitioners were not allowed to confront witnesses against them during the hearing.  Petitioners were not allowed to cross examine the License Administrator about the inaccurate facts upon which his decision was based, or cross examine an IMPD representative about the author, circumstances, and substance of its letter to BNS.

420.    The Pre-hearing Order indicated that the License Review Committee would evaluate if the License Administrator's decision was illegal, based on incomplete or inaccurate information or was otherwise an abuse of discretion.  However, they precluded examination of the License administrator and the person who provided him with false and

incomplete information.  Cross examination would have shown the decision was illegal, based on incomplete/inaccurate information and an abuse of discretion.

421.    Petitioners were forced to present their case at the hearing within the confines of the almost nonexistent record that resulted from the Committee's unconstitutional prehearing procedures.

422.    The License Review Committee's prehearing rulings and non-rulings, and the restrictions on the presentation of evidence at the hearing, each individually and together, violated Petitioners' due process rights by preventing them from being heard in a meaningful manner.

423.    Therefore, the License Review Committee's affirmance of the License Administrator's decision deprived Petitioners of a property right without due process of law, in violation of the Fourteenth Amendment to the United States Constitution.

424.    As a direct and proximate result of Defendants' denial of Plaintiffs' due process rights under the Fourteenth Amendment to the United States Constitution, Plaintiffs have suffered, and will continue to suffer, damages in the form of lost revenue, a substantial decrease in the value of the Hotel property, harm to Patel's personal reputation, harm to PMK's business reputation, emotional distress and mental anguish suffered by Patel, and attorneys' fees to defend against Defendants' improper license revocation.

425.    In light of the Plaintiffs/Petitioners likelihood of success on the merits, the irreparable harm suffered by Plaintiffs/Petitioners, the balance of equities and hardships in this case, and a weighing of public interest considerations, in addition to an award of monetary damages, Plaintiffs/Petitioners seek injunctive relief enjoining Defendants from ordering the closing of the

Budget 8 Inn, or any order precluding Plaintiffs from accepting new guests at the Budget 8 Inn, during the pendency of this action, during the pendency of this action.

## COUNT XII

### Deprivation of Right to Procedural Due Process Under Article I § 12 of the Indiana Constitution—Administrative Appeal Due Process Violations
### (As Against the City Defendants)

426.     Plaintiffs incorporate by reference each and every paragraph above as though fully set forth herein.

427.     Article I § 12 of the Indiana Constitution provides that "every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law."

428.     Indiana state and federal substantive due process analysis is identical. *Sybinski*, 724 N.E.2d at 1112.

429.     For the reasons set forth in Count XI, the prehearing rulings and non-rulings, and the restrictions on the presentation of evidence at the hearing, each individually and together, violated Petitioners' due process rights by preventing them from being heard in a meaningful manner.

430.     Therefore, the License Review Committee's affirmance of the License Administrator's decision deprived Petitioners of a property right without due process of law, in violation of Article I §12 of the Indiana Constitution.

431.     As a direct and proximate result of Defendants' denial of Plaintiffs' due process rights under Article I § 12 of the Indiana Constitution, Plaintiffs have suffered, and will continue to suffer, damages in the form of lost revenue, a substantial decrease in the

value of the Hotel property, harm to Patel's personal reputation, harm to PMK's business reputation, emotional distress and mental anguish suffered by Patel, and attorneys' fees to defend against Defendants' improper license revocation.

432.     In light of the Plaintiffs/Petitioners likelihood of success on the merits, the irreparable harm suffered by Plaintiffs/Petitioners, the balance of equities and hardships in this case, and a weighing of public interest considerations, in addition to an award of monetary damages, Plaintiffs/Petitioners seek injunctive relief enjoining Defendants from ordering the closing of the Budget 8 Inn, or any order precluding Plaintiffs from accepting new guests at the Budget 8 Inn, during the pendency of this action, during the pendency of this action.

## Count XIII

### Verified Petition for Judicial Review of Agency Action

433.     Petitioners incorporate by reference each and every paragraph above as though fully set forth herein.

434.     Petitioners original Complaint, filed on August 18, 2023, primarily focused on Constitutional Due Process violations relating to Petitioners hotel licensure renewal. All new counts contained in this Amended Complaint relate to the same concerted action and/or conspiracy aimed at denying license renewal by way of denying Petitioners' their right to due process and equal protection set forth in the Fourteenth Amendment to the United States Constitution.

435.     Petitioners request for Judicial Review of Agency action, stated herein focuses on the same continued and systematic denial of due process and Defendants' campaign to shut down Plaintiffs' hotel.

436.    In *City of Chicago v. Illinois College of Surgeons*, 522 U.S. 156 (1997), the Supreme Court held that a federal court has jurisdiction over a petition for judicial review of a final decision by an administrative agency where the petition contains both federal constitutional and state administrative challenges to the agency decision.

437.    On February 23, 2023, PMK exercised its right to appeal the denial of the application to renew its hotel license and filed a Notice of Appeal.

438.    On November 1, 2023, the final hearing relating to that administrative appeal was held before the License Review Committee.

439.    On December 15, 2023, the License Review Committee issued its written Determination Affirming the License Administrator's Decision (the "Final Administrative Order").

440.    A true and accurate copy of the Final Administrative Order is attached hereto as Exhibit 1.

441.    Petitioners have standing to seek Judicial Review of Agency action pursuant to I.C. § 4-21.5-5-3(a)(1) and (3), as they are persons to whom the final agency action is specifically directed and are eligible for standing under a law applicable to the final agency action.

442.    Petitioners have exhausted all administrative remedies available within the Indianapolis Board of Business and Neighborhood Services, whose actions are being challenged.

443.    This petition for review has been timely filed in that it was filed with this Court within thirty (30) days after the date that notice of the Final Administrative Order.

444.    This petition for review has been filed in an appropriate court with the clerk of that court. 28 U.S.C. §1367; *Chicago v. Illinois College of Surgeons*, 522 U.S. 156 (1997).

445.    Petitioners name and mailing address have been accurately set forth in the caption and in ¶¶ 9 and 10, *supra*.

446.    The name and mailing address of the Indianapolis Board of Business and Neighborhood Services was accurately set forth in the caption and in ¶ 13, *supra*.

447.    The facts identified above demonstrate that the petitioner has been prejudiced because the Action of the Indianapolis Board of Business and Neighborhood Services and its actions and/or inactions, as well as the Final Administrative Order were: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;(2) contrary to constitutional right, power, privilege, or immunity;(3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;(4) without observance of procedure required by law; or (5) unsupported by substantial evidence.

448.    For the reasons set forth in the Amended Complaint, the License Review Committee's order affirming the License Administrator's denial of Petitioners' license renewal application was arbitrary and capricious, an abuse of discretion, unsupported by substantial evidence, and in excess of the Committee's statutory authority.

449.    For the reasons set forth in the Amended Complaint, the License Review Committee's order affirming the License Administrator's denial of Petitioners' license

renewal application was not in accordance with Indiana law and without observance of procedure required by Indiana law.

450.   For the reasons set forth in the Amended Complaint, the License Review Committee's order affirming the License Administrator's denial of Petitioners' license renewal application violated Petitioners' rights under the United States and Indiana Constitutions.

451.   For the reasons set forth in the Amended Complaint, the License Review Committee's order affirming the License Administrator's denial of Petitioners' license renewal application was in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.

452.   Therefore, this Court is permitted to, and Petitioners request relief as allowed under IND. CODE § 4-21.5-5-14(d), vacating the License Review Committee's affirmance of the License Administrator's denial of Petitioners' license renewal application and ordering that the License Administrator issue and/or renew Petitioners License.

453.   Pursuant to Ind. Code § 4-21.5-5-9, Petitioners request this Court issue an order staying the action of the agency pending decision by the court.  Such a stay is appropriate as the facts set forth herein show a reasonable probability that the order or determination appealed from is invalid or illegal. Petitioners assert they are willing to file a bond as ordered by this Court which complies with Ind. Code § 4-21.5-5-9(A)(2).

454.   In light of the Plaintiffs/Petitioners likelihood of success on the merits, the irreparable harm suffered by Plaintiffs/Petitioners, the balance of equities and hardships in this case, and a weighing of public interest considerations, Plaintiffs/Petitioners seek injunctive relief

enjoining Defendants from ordering the closing of the Budget 8 Inn, or any order precluding Plaintiffs from accepting new guests at the Budget 8 Inn, during the pendency of this action, during the pendency of this action.

455.     Petitioners have verified this Petition for Judicial Review of Agency action by way of affirmation under oath located at the end of this document.

456.     As indicated in Ind. Code § 4-21.5-5-13, Plaintiffs are taken needed steps to obtain and transmit to the court the original or a certified copy of the agency record for judicial review of the agency action.

## COUNT XIV

### Tortious Interference with Contractual Relationship
*(As Against the City Defendants)*

457.     Plaintiffs incorporate by reference each and every paragraph above as though fully set forth herein.

458.     Defendant Askew instructed police and other City officials to approach guests at the Hotel door-to-door on February 10, 2023, and tell them that the Hotel was no longer licensed, would be closing, and that guests would have to leave.

459.     At the time Askew instructed police and other City officials to approach guests at the Hotel door-to-door on February 10, 2023, and tell them that the Hotel was no longer licensed, would be closing, and that guests would have to leave, he was aware that Plaintiffs' Hotel license was still in effect, pursuant to the Revised Code and Administrative Adjudication Act.

460.     Askew was aware as of February 10, 2023, that the Hotel rented guest rooms for extended stays, which generated a substantial portion of the Hotel's revenue.

461.    Askew was aware as of February 10, 2023, that Hotel guests signed agreements governing the terms of their occupancy, including the length of their stay.

462.    Askew sent the police and City officials to the Hotel with the intention of having guests vacate their rooms.

463.    As a direct result of Askew's instructing police and other City officials to approach guests at the Hotel door-to-door on February 10, 2023, to tell them that the Hotel was no longer licensed, would be closing, and that guests would have to leave, a significant number of guests at the Hotel vacated the Hotel and stopped paying for their rooms in breach of their agreements with Plaintiffs.

464.    As a direct and proximate result of Askew's conduct in tortiously interfering with the contracts between Plaintiffs and Hotel guests, Plaintiffs lost, and will continue to lose, substantial revenues.

465.    At all material times, Askew was acting within the scope of his employment with the City Defendants in tortiously interfering with agreements between the Hotel and its guests.

## COUNT XV

### Intentional Interference with Business Relationships
### *(As Against the City Defendants)*

466.    Plaintiffs incorporate by reference each and every paragraph above as though fully set forth herein.

467.    Defendant Askew instructed police and other City officials to approach guests at the Hotel door-to-door on February 10, 2023, and tell them that the Hotel was no longer licensed, would be closing, and that guests would have to leave.

468.    At the time Askew instructed police and other City officials to approach guests at the Hotel door-to-door on February 10, 2023, and tell them that the Hotel was no longer licensed,

would be closing, and that guests would have to leave, he was aware that Plaintiffs' Hotel license was still in effect, pursuant to the Revised Code and Administrative Adjudication Act.

469.    Askew was aware as of February 10, 2023, that the Hotel rented guest rooms for extended stays, which generated a substantial portion of the Hotel's revenue.

470.    Askew was aware as of February 10, 2023, that Plaintiffs had valid business relationships with Hotel guests in connection with their stay at the Hotel.

471.    Many of these business relationships were not governed by contracts.

472.    Askew sent the police and City officials to the Hotel with the intention of having guests vacate their rooms.

473.    As a direct result of Askew's instructing police and other City officials to approach guests at the Hotel door-to-door on February 10, 2023, to tell them that the Hotel was no longer licensed, would be closing, and that guests would have to leave, Askew interfered in the Plaintiffs' business relationship with a significant number of guests at the Hotel who vacated the Hotel and stopped paying for their rooms.

474.    As a direct and proximate result of Askew's conduct in intentionally interfering with the business relationships between Plaintiffs and Hotel guests, Plaintiffs lost, and will continue to lose, substantial revenues.

475.    At all material times, Askew was acting within the scope of his employment with the City Defendants in intentionally interfering with the business relationships between the Hotel and its guests.

## COUNT XVI

### Defamation
### *(As Against the City Defendants)*

476.     Plaintiffs incorporate by reference each and every paragraph above as though fully set forth herein.

477.     The February 6, 2023, order was drafted by, or at the direction of, Defendant Askew.

478.     The February 6 Order was issued by Askew.

479.     At the time Askew issued the February 6 Order, he was aware that the statement in the order that Patel "failed to disclose being arrested and charged for two . . . counts of intimidation, an A Misdemeanor, under cause number 49D35-2210-CM-028423" in the license renewal application for the Hotel was false.

480.     Upon information and belief, Askew distributed the February 6 Order to police, City officials, and members of the public, holding out to them that Patel had been arrested and had lied about the arrest in the Hotel's license renewal application.

481.     As of February 10, 2023, Askew was aware that Plaintiffs' Hotel license was still in effect, pursuant to the Revised Code and the Administrative Adjudication Act.

482.     On February 10, 2023, Askew instructed police, and other City officials to approach guests at the Hotel door-to-door to tell them that the Hotel was no longer licensed, would be closing, and that guests would have to leave. Askew knew these statements were false.

483.     Upon information and belief, Askew advised members of the public and/or press that the Hotel was no longer licensed, would be closing, and that guests would have to leave. Askew knew these statements were false.

484.     The false statements described herein were defamatory on their face in that they harmed Plaintiffs' personal and business reputations, subjected Plaintiffs to distrust and a perception of illegitimacy among Hotel guests, and subjected Plaintiffs to ridicule and contempt among City officials, local community leaders, and members of the public.

485.     Askew acted with malice by knowingly publishing the false statements described herein.

486.     As a direct and proximate result of Askew's false statements described herein, Plaintiffs have suffered, and will continue to suffer, damages in the form of lost revenue, harm to Patel's personal reputation, harm to PMK's business reputation, and emotional distress and mental anguish suffered by Patel.

487.     At all material times, Askew was acting within the scope of his employment with the City Defendants in publishing false statements about Patel's purported arrest and the Hotel's loss of its license.

## PRAYER FOR RELIEF

*WHEREFORE*, Plaintiffs pray this Court grant judgment in favor of Plaintiffs and against Defendants as follows:

a.  On Count I, awarding consequential damages and damages for emotional distress and mental anguish in favor of Plaintiffs in an amount to be determined at trial, but in no event less than $8,700,000 plus interest, attorneys' fees, and costs pursuant to 42 U.S.C. § 1988.

b.  On Count II, awarding consequential damages and damages for emotional distress and mental anguish in favor of Plaintiffs in an amount to be determined at trial, but in no event less than $8,700,000, plus interest, attorneys' fees, and costs pursuant to 42 U.S.C. § 1988.

c.  On Count III, awarding consequential damages and damages for emotional distress and mental anguish, as well as punitive damages, in favor of Plaintiffs in an amount to be determined at trial, but in no event less than $8,700,000, plus interest, attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

d.  On Count IV, awarding consequential damages and damages for emotional distress and mental anguish, as well as punitive damages, in favor of Plaintiffs in an amount to be determined at trial, but in no event less than $8,700,000, plus interest, attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

e.  On Count V, Plaintiffs seek declaratory judgment, finding that the actions or inactions identified in Count V represent violations of Article I § 12 of the Indiana Constitution and other applicable Indiana law. Plaintiffs seek any and all appropriate relief, to be granted concurrently and/or alternatively, including monetary, equitable, statutory and injunctive relief, as justice, or Indiana law, so require.

f.  On Count VI, awarding consequential damages and damages for emotional distress and mental anguish, as well as punitive damages, in favor of Plaintiffs in an amount to be determined at trial, but in no event less than $8,700,000, plus interest, attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

g.  On Count VI, Plaintiffs *further seek* a declaratory judgment deeming Mun. Code §§ 801-303(a)(2) and 901-204(f), both as written and as applied, to be unconstitutional, illegal, and void. Plaintiffs/Petitioners also seek injunctive relief and court order enjoining Defendants from ordering the closing of the Budget 8 Inn or precluding Plaintiffs from accepting new guests at the Budget 8 Inn, during the pendency of this action.

h.  On Count VII, Plaintiffs seek declaratory judgment deeming Mun. Code §§ 801-303(a)(2) and 901-204(f), both as written and as applied, to be a violation of Article I § 12 of the Indiana Constitution and other applicable Indiana law. Plaintiffs seek any and all appropriate relief, to be granted concurrently and/or alternatively, including monetary, equitable, statutory and injunctive relief, as justice, or Indiana law, so require.

i.  On Count VIII, awarding consequential damages and damages for emotional distress and mental anguish, as well as punitive damages, in favor of Plaintiffs in an amount to be determined at trial, but in no event less than $8,700,000, plus interest, attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

j.  On Count VIII, Plaintiffs/Petitioners also seek injunctive relief enjoining Defendants from ordering the closing of the Budget 8 Inn or precluding Plaintiffs from accepting new guests at the Budget 8 Inn, during the pendency of this action.

k.  On Count IX, Plaintiffs seek declaratory judgment finding that the actions or in actions identified in Count IX represent violations of Article I § 12 of the Indiana Constitution and other applicable Indiana law. Plaintiffs seek any and all appropriate relief, to be granted concurrently and/or alternatively, including monetary, equitable, statutory and injunctive relief, as justice, or Indiana law, so require.

l.  On Count X, awarding consequential damages and damages for emotional distress and mental anguish, as well as punitive damages, in favor of Plaintiffs in an amount to be

determined at trial, but in no event less than $8,700,000, plus interest, attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

m.  On Count XI, awarding consequential damages and damages for emotional distress and mental anguish, as well as punitive damages, in favor of Plaintiffs in an amount to be determined at trial, but in no event less than $8,700,000, plus interest, attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and other applicable Indiana statutes.

n.  On Count XII, Plaintiffs seek declaratory judgment determining that the actions or inactions identified in Count XII represent violations of Article I § 12 of the Indiana Constitution and other applicable Indiana law. Plaintiffs seek any and all appropriate relief, to be granted concurrently and/or alternatively, including monetary, equitable, statutory and injunctive relief, as justice, or Indiana law, so require.

o.  On Count XIII, Plaintiffs seek an immediate Order staying enforcement of the February 6, 2023 order issued by the BNS as well as the December 15, 2023 License Review Committee's written Determination Affirming The License Administrator's Decision; injunctive relief enjoining Defendants from ordering the closing of the Budget 8 Inn, or precluding Plaintiffs from accepting new guests at the Budget 8 Inn, during the pendency of this action; Judgment and Order vacating the License Review Committee's affirmance of the License Administrator's denial of Petitioners' license renewal application and ordering that the License Administrator renew Petitioners' license; an award attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and/or applicable Indiana statutes/law; any and all appropriate relief, to be granted concurrently and/or alternatively, including monetary, declaratory, equitable, statutory, as justice, or Indiana law, so require.

p.  On Count XIV, awarding consequential damages and damages for emotional distress and mental anguish in favor of Plaintiffs in an amount to be determined at trial, but in no event less than $700,000, plus interest, attorneys' fees, and costs.

q.  On Count XV, awarding consequential damages and damages for emotional distress and mental anguish in favor of Plaintiffs in an amount to be determined at trial, but in no event less than $700,000, plus interest, attorneys' fees, and costs.

r.  On Count XVI, awarding consequential damages and damages for emotional distress and mental anguish in favor of Plaintiffs in an amount to be determined at trial, but in no event less than $700,000, plus interest, attorneys' fees, and costs.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury under Federal Rule of Civil Procedure 39 for all issues triable by jury.

**VERIFICATION**

I affirm under penalty of perjury the content of Count XIII, Verified Petition For Judicial Review of Agency Action and factual claims corresponding to that Count, are true to the best of my knowledge and belief, signed this date, Tuesday, December 19, 2023.

Kartik Patel (Individually and as an
authorized representative of)
PMK Corporation
d/b/a Budget 8 Inn

Respectfully Submitted,

**TOMPKINS LAW**

 */s/ John L. Tompkins*
John L. Tompkins
johnltom@mac.com

608 East Market Street
Indianapolis, IN 46202
P: (317) 507-4838

**Bielski Law LLC**

/s/ *E.G. Bielski*
Edward G. Bielski, #17862-53
ed@edbielski.com

608 East Market Street
Indianapolis, Indiana 46202
(317) 631-6866
(317) 685-2329 (Fax)

*Counsel for Plaintiffs/Petitioners*
*Kartik Patel and PMK Corporation*

**CERTIFICATE OF SERVICE**

I certify that the foregoing was electronically filed using the Court's CM/ECF system on the day of filing and is available to all counsel of record using the same.

/s/ *E.G. Bielski*
Edward G. Bielski

Exhibit 1

STATE OF INDIANA          )

                                  )           SS:

COUNTY OF MARION       )

**BEFORE THE LICENSE REVIEW COMMITTEE OF THE
INDIANAPOLIS BOARD OF BUSINESS AND
NEIGHBORHOOD SERVICES**

In the Matter of:

APPEAL AS TO DENIAL OF KARTIK PATEL'S
APPLICATION TO RENEW HOTEL OPERATING
LICENSE #LHT-000250 FOR PROPERTY
LOCATED AT 6850 EAST 21ST STREET,
INDIANAPOLIS, INDIANA

**DETERMINATION AFFIRMING THE LICENSE
ADMINISTRATOR'S DECISION**

Pursuant to Section 801-435 of the Revised Code of the Consolidated City of Indianapolis and Marion County, IN (Revised Code), the above matter came before the License Review Committee (Committee) on November 1, 2023, upon the written notice of appeal of the License Administrator's denial of the application to renew hotel license #LHT-000250 filed by Kartik Patel on behalf of PMK, Corp. (Appellant).

Appellant appeared in person and was represented by counsel, David Catuogno, Jeff McQuary and Ted Nolting. The License Administrator for the Indianapolis Department of Business and Neighborhood Services (License Administrator or BNS) was represented by counsel, Julie Slaughter and Ian Devereux.

On or about January 9, 2023, Appellant applied for a renewal of the license for its hotel, Budget 8 Inn, located at 6850 East 21st Street, Indianapolis, Indiana. On February 6, 2023, the License Administrator issued its letter denying the license renewal application. The decision to

1

deny the license renewal was based on the License Administrator's duties and discretion under the following provisions of the Revised Code:

1. Section 901-204(b)(1): The license administrator **shall** deny any application for a renewal of a license if the applicant makes a material misrepresentation of fact on the application for renewal.

2. Section 901-204(d) and Section 801-303(a)(2): The license administrator **shall** deny an application for a renewal of a license if the licensee has failed to maintain the licensed premises in a manner that will not create a nuisance or become inimical to the public welfare.

3. Section 901-204(d) and Section 801-303(a)(4): The license administrator **shall** deny an application for a renewal of a license if the licensee permitted illegal activity to take place on the licensed premises or in the conduct of the licensed business.

4. Section 901-204(f): The license administrator **may** deny an application for a renewal of a license if a written objection detailing the reason for the objection is submitted by the Indianapolis Metropolitan Police Department (IMPD) and the administrator concludes that renewal of the license would be inimical to the public welfare.

The foregoing determinations shall be referred to in these Findings and Conclusions as Counts 1 through 4, respectively.

In accordance with Revised Code Sec. 801-435(c), the Committee conducted an administrative hearing to determine if the License Administrator's decision to deny the hotel license renewal was either unlawful, based upon an incorrect or incomplete factual record, or otherwise an abuse of the administrator's discretion.

Based upon the evidence presented to the Committee and the arguments of counsel,

the Committee makes the following findings of fact and conclusions of law.

**FINDINGS OF FACT**

1. Appellant is the licensee and applicant for the renewal of hotel license #LHT-000250 for Budget 8 Inn, located at 6850 East 21st Street, Indianapolis, Indiana (Budget 8 Inn).

   **COUNT 2:**

2. Under Revised Code Sec. 801-303(a)(2), a hotel licensee is required to "maintain the licensed business and premises in such a manner that they will not create a nuisance or become inimical to the public welfare."

3. The Revised Code defines public welfare to mean "the health, safety, prosperity and convenience of the inhabitants of the city, either as a whole or individually. *See* Sec. 801-102(b).

4. Merriam-Webster's Dictionary defines inimical as: being adverse by reason of hostility.

5. During calendar year 2022, IMPD responded to 430 citizen-generated calls to the Budget 8 Inn. One thousand three hundred and fifteen (1315) units responded to those 430 calls and IMPD spent 1222,155 minutes responding to those calls. Those 430 calls cost the taxpayers $103,953.91.

6. Between January 1, 2021 and December 31, 2022, IMPD spent at least $270,181.44 to police the Budget 8 Inn.

7. Between January 1, 2021 and February 28, 2023, IMPD received police calls for various incidents that amounted to a  nuisance or were inimical to the public welfare: 6 calls reporting burglary, 25 calls reporting disturbance with a weapon, 73 calls reporting domestic disturbance, 11 calls reporting harassment, 55 calls reporting overdose, 13 calls

reporting person armed with a weapon, 3 calls reporting rape, 14 calls reporting robbery, 40 calls reporting theft, 25 calls reporting stolen vehicle, 11 calls reporting person shot and 5 calls reporting person stabbed.

8. PMK has not implemented the following security and safety recommendations provided by IMPD: hiring security during peak days/hours, independent documentation of security related incidents that occur on its property to ensure a robust and effective "Do Not Rent List," the availability of emergency equipment such as Narcan to help address the number of overdose incidents, and linking the hotel's security cameras to the IMPD B-Link system.

**COUNT 4:**

9. Under Sec. 901-204(f), the license administrator may deny an application for a renewal of a license if a written objection detailing the reason for the objection is submitted by the Indianapolis Metropolitan Police Department and the administrator concludes that renewal of the license would be inimical to the public welfare.

10. On February 3, 2023, Chief of Police Randal Taylor, submitted a letter to the License Administrator on behalf of IMPD objecting to the renewal of Appellant's hotel license. The letter provided the reasons for IMPD's objection.

**CONCLUSIONS OF LAW**

11. As to Count 2, a majority of the Committee finds Appellant violated the Revised Code requirement that a licensee maintain the hotel premises in a manner that will not create a nuisance or be inimical to the public welfare. Appellant's actions and failure to act in certain instances constitute a violation of Sec. 801-303(a)(2). Accordingly, the License Administrator's decision to deny the license renewal under Sec. 901-204(d) was **not**

unlawful, based upon an incorrect or incomplete factual record, nor an abuse of the administrator's discretion.

12. As to count 4, all three Committee members find IMPD property submitted its objection to Appellant's license renewal under Sec. 901-204(f). The details provided by Chief of Police Randal Taylor's written objection were sufficient to allow the License Administrator to conclude that renewal of the Appellant's license would be inimical to the public welfare. Accordingly, the License Administrator's decision to deny the license renewal under Sec. 901-204(f) was **not** unlawful, based upon an incorrect or incomplete factual record, nor an abuse of the administrator's discretion.

**DECISION**

Based upon the above Findings of Fact and Conclusions of Law, the Committee upholds the License Administrator's decision to deny Appellant's license renewal application.

Entered in the record of this matter on the 15th day of December 2023, with copies to the applicant and all Counsel via electronic mail with a certified copy delivered to the license administrator.

/s/ Camille Blunt

Camille Blunt on behalf of the License Review Committee,
Chairperson and Hearing Officer, License Review Committee