UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KARTIK PATEL, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>CONSOLIDATED CITY OF INDIANAPOLIS/MARION COUNTY, *et al.*,<br><br>Defendants. | ) | No. 1:23-cv-01495-RLY-MKK |

**ENTRY ON PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

In early February 2023, the Indianapolis Department of Business and Neighborhood Services ("BNS") denied Plaintiff Kartik Patel's license renewal application for the Budget 8 Inn—a hotel on the east side of Indianapolis that Patel owns and operates. Patel sues the Consolidated City of Indianapolis/Marion County (the "City"), BNS, and several BNS employees for violating his right to procedural and substantive due process under the Fourteenth Amendment. Both parties now move for summary judgment. For the following reasons, Plaintiffs' motion for partial summary judgment is **DENIED**, and Defendants' cross-motion for summary judgment is **GRANTED**.

## I. Background

### A. The City's Hotel Licensing Scheme

Operating a hotel in Indianapolis requires a business license from BNS. *See* Ind. Rev. Ord. § 901-201(a). And within BNS, the Administrator is largely responsible for

granting or denying hotel license applications. (Dkt. 154-17 at 25–26). Even after a license has been issued, licensees must renew their licenses on an annual basis. *See* Ind. Rev. Ord. § 801-209. Moreover, the City's licensing provisions explain that all licenses are "temporary privileges" and confer no property rights on a licensee. *Id.* § 801-207.

Once a hotel receives a license, BNS monitors how frequently a hotel's guests call law enforcement or the fire department. These "calls for service" are "calls to law enforcement or the fire department that result in a request that a representative be dispatched or directed to the hotel" when those responses (1) result in a representative being dispatched or directed to the hotel; (2) allege evidence of criminal activity; (3) result in an arrest, charge, or citation; or (4) find an imminent threat to safety of persons or property. *Id.* § 901-102(c). Calls to law enforcement "made by employees or agents of the hotel property" do not qualify. *Id.* BNS also tracks the calls for service ratio at each hotel by dividing the number of calls for service by the number of rooms in service at the hotel. *Id.* A hotel is subject to probation if its calls for service ratio reaches or exceeds 2.5. *Id.* § 901-303(a). Hotels on probation must meet with "police, fire, health, and zoning officials to discuss issues related to the property contributing to criminal activity and actions to mitigate them and limit their impact." *Id.* § 901-303(b). And if a hotel's call for service ratio remains at or above 2.5 over any one-year period after entering probation, the Administrator may deny its application for license renewal. *Id.* § 901-204(e)(4).

**B. The Budget 8 Inn's Probationary Period**

Kartik Patel (through his holding company, PMK Corporation) owns and operates the Budget 8 Inn on the Indianapolis east side. (*See* Dkt. 154-1 ¶ 3). This part of Indianapolis is particularly prone to crime, and the Budget 8 is no exception; law enforcement and the fire department routinely receive calls for service from the hotel's guests. (*See* Dkt. 154-3 at 23–24; Dkt. 158-2). In fact, the Budget 8's calls for service ratio in 2021 (3.19) landed the hotel on probation for 2022. (Dkt. 158-8).

By the end of 2022, Patel managed to reduce the Budget 8's calls for service ratio to 1.24. (Dkt. 158-6 at 1). But the strategy he adopted to reach this ratio proved problematic: Patel posted a sign at the Budget 8 urging guests to call the hotel's office if they needed police assistance. (Dkt. 158-9). The sign warned that calling 911 directly may result in the guest being asked to leave (without a refund) and a $50 penalty. (*Id.*).

When an IMPD officer noticed a similar sign at a different hotel owned by Patel, they informed Patel that the sign impermissibly limited guests' ability to call 911.[1] (Dkt. 154-7 at 1). A few months later, in July 2022, Patel received a summons via email charging him with two counts of intimidation—both Class A misdemeanors. (Dkt. 154-8); *see* Ind. Code § 35-45-2-1. Patel was never physically detained or arrested, and the charges were dismissed the following year. (Dkt. 154-8).

[1] Indiana Code § 35-45-2-5 makes it a Class A Misdemeanor for a person who, with the intent to commit, conceal or aid in the commission of a crime, knowingly or intentionally interferes with or prevents an individual from using a 911 emergency telephone system, obtaining medical assistance, or making a report to a law enforcement officer.

### C. Relevant License Renewal Standards

Indianapolis Ordinance § 901-204 provides both mandatory and discretionary grounds for denying a license renewal application. If none of these grounds apply, the Administrator must grant the renewal. Ind. Rev. Ord. § 901-204(a). Relevant here, the Administrator *must* deny a hotel license application if:

- "[t]he applicant makes a material misrepresentation of fact on the application," *id.* § 901-204(b)(1); or
- the licensee "conduct[s] and maintain[s] the licensed business and premises in such a manner that they . . . create a nuisance or become inimical to the public welfare," *id.* § 901-204(d) (directing to § 801-303(a)(2)).

On the other hand, the Administrator *may* deny a hotel license application if:

> a written objection detailing the reason for the objection is submitted by Marion County Health and Hospital Corporation, Indianapolis Metropolitan Police Department, or the Indianapolis Fire Department, and the administrator concludes that issuance or renewal of the license would be inimical to the public welfare.

*Id.* § 901-204(f).

### D. Renewing the Budget 8's License

In early January 2023, Patel submitted a timely application to renew the Budget 8's operating license. (Dkt. 154-5 at 85–86). Since the Budget 8 successfully decreased its calls for service ratio, BNS originally planned to approve the application. (*Id.* at 186–88). But the Budget 8 "was an item of watchfulness for the IMPD and the City prosecutors because of the incidents that were going on out there." (*Id.* at 187). So Defendant Charles Askew (the License Manager of BNS) decided to notify City Prosecutor Deborah Law about the expected approval. (*Id.* at 188). Law responded by

drafting a letter objecting to the renewal of the Budget 8's hotel license. (*See* Dkt. 154-9 at 3). The final version of that letter eventually worked its way up to IMPD Chief of Police Randal Taylor, who signed it on the recommendation of his attorney. (Dkt. 154-3 at 28–29).

Shortly thereafter, IMPD submitted the written objection to Defendant Amy Wunder, the then-Administrator. (Dkt. 154-12). The letter described the Budget 8 as "a danger to the community," "a drain of taxpayer resources," and "a regular source of chaos, disorder, and crime on the IMPD East District for the last several years." (*Id.* at 1). In addition to detailing the resources that IMPD expended in 2021 and 2022 responding to calls from the Budget 8, the letter recounts some of the specific incidents that occurred at the hotel in 2022. (*Id.* at 1–2). Those incidents included shootings, armed robberies, and drug overdoses. (*Id.* at 2–3). The letter also discusses the "no 911 calls" policy, the intimidation charges against Patel that resulted from that policy,[2] and Patel's alleged failure to comply with security and safety recommendations in accordance with the Budget 8's term of probation. (*Id.* at 1–4).

BNS ultimately denied the Budget 8's renewal application. (Dkt. 154-13). In its letter to Patel explaining the decision, BNS cited three primary reasons for the denial:

---

[2] The renewal application asked whether the applicant had ever been arrested or convicted of a felony, misdemeanor, or ordinance violation other than a minor traffic charge. (Dkt. 154-9 at 3). In his application, Patel answered no. (*Id.*).

- Patel made a "material misrepresentation of fact" on the renewal application by "fail[ing] to disclose being arrested and charged" in connection with the 911 policy (citing § 901-204(b)(1));[3]
- PMK (as licensee) failed to maintain the business and premises in a way that did not render it inimical to the public welfare and permitted illegal activity to take place on the premises (citing §§ 901-204(d), 801-303(a)(2), 801-303(a)(4)); and
- IMPD submitted a written objection to the renewal and the Administrator determined that renewal "would be inimical to the public welfare" (citing § 901-204(f)).

(Dkt. 154-13 at 1). The denial letter also explained that the Budget 8 was prohibited from renting rooms to new guests and "must cease operations within sixty (60) days of a final decision." (*Id.*). Among other things, the Budget 8 also had to "notify all guests of the hotel's cessation of operation," "provide a reasonable amount of time for all guests to vacate their guestrooms," and "allow the City or any partnering organization or charities to contact current guests directly, in order to provide information regarding potential alternative housing options." (*Id.* at 1–2). The end of the denial letter informed Patel of his right to appeal the Administrator's decision. (*Id.* at 2).

**E. The Office of Public Health and Safety Gets Involved**

Separate from BNS and licensing, the City has an Office of Public Health and Safety ("OPHS"). *See generally* Ind. Rev. Ord. § 202-711. Among other roles, OPHS works to reduce violence and homelessness. (Dkt. 154-19 at 11–12). OPHS's

[3] Defendants concede that this was an error. (Dkt. 159 at 18 n.5). Although he was charged with two misdemeanors, Patel was never arrested. He therefore made no misrepresentation of fact.

Homelessness and Eviction Prevention Division specifically focuses on providing information and resources to individuals without stable housing. (*Id.* at 12).

Defendant Amy Brands (then-Director of BNS) informed Andrew Merkley (then-Director of the OPHS Homelessness and Eviction Prevention Division) that the Budget 8's license was not going to be renewed. (*Id.* at 20–21). This meant that "the hotel would no longer be operational" and "that guests could not stay there." (*Id.* at 21). Although the City expected an appeal, Merkley was told that all guests at the Budget 8 had to vacate within sixty days of Patel receiving notice of the denial. (*Id.* at 55–56). Merkley believed that his division needed to "notify [low-income guests] and help them plan for other shelter options." (*Id.* at 21).

On February 10, 2023, Merkley led a team of about ten people, including volunteers from local organizations that specialize in homelessness and temporary housing, to the Budget 8. (*Id.* at 31–40). The team was accompanied by IMPD's M-CAT unit (which focuses on mental health and substance use crises), though OPHS was careful to ensure that M-CAT was not involved in any communications with guests. (*Id.* at 37–38). At the hotel, OPHS and the volunteers distributed a one-page handout to guests explaining BNS's licensing decision. (Dkt. 154-21). They also explained that the Budget 8 did not have a license to operate and that they needed to make plans to stay elsewhere. (Dkt. 154-19 at 53–54).

**F. Patel's Administrative Appeal**

On February 23, 2023, Patel appealed the City's decision to deny the Budget 8's license renewal application. (Dkt. 158-10). Patel also sought a stay of the restrictions

imposed by the denial letter, which included a prohibition on accepting new guests. (*See* Dkt. 154-13 at 1–2). Not until March 14, 2023, however, did Defendants inform Patel that the prohibition on accepting new guests had been stayed pending review of the Administrator's decision. (Dkt. 154-25).

The BNS License Review Committee (the "Committee")—the body charged with reviewing Patel's appeal—issued a prehearing order scheduling a hearing for November 1, 2023, and establishing hearing procedures.[4] (Dkt. 154-24). Both sides received ten minutes for opening statements, sixty minutes to state their case and present evidence, ten minutes for rebuttal, and ten minutes for closing arguments. (*Id.* at 4). The order also forbade live witness testimony and testimony by way of affidavits. (*Id.* at 3). Instead, the parties offered exhibits. (*Id.*).

On December 15, 2023, the Committee issued its final decision upholding the Administrator's decision. (Dkt. 154-30). The Committee concluded that Patel had maintained the hotel premises in a manner that created a nuisance or was inimical to the public welfare in violation of Indianapolis Ordinance § 801-303(a)(2). (*Id.* at 4–5). It also concluded that the Administrator's conclusion that renewal would be inimical to the public welfare under § 901-204(f) was not unlawful or an abuse of their discretion. (*Id.* at 5). The Committee did not base its decision on whether Patel had been arrested or charged or that he made a misrepresentation of fact on the application. (*See id.*). The

[4] In Indiana administrative proceedings, "the administrative law judge shall afford to all parties the opportunity to respond, present evidence and argument, conduct cross-examination, and submit rebuttal evidence, *except as restricted . . . by the prehearing order*." Ind. Code § 4-21.5-3-25(c) (emphasis added).

Committee's decision to uphold the Administrator's decision meant that the Budget 8 had to close within 60 days.

### G. Procedural History

Patel originally brought this suit on August 22, 2023—before the Committee issued its final decision. On January 19, 2024, after the Committee issued its final decision, Patel filed an amended complaint against the Consolidated City of Indianapolis/Marion County; the City of Indianapolis Department of Business and Neighborhood Services; Abbey Brands, in her official capacity as Director of BNS and her individual capacity; Amy Wunder, in her official capacity as BNS Administrator and her individual capacity; and Charles Askew, in his official capacity as BNS License Manager and his individual capacity. Patel alleged multiple violations of his right to procedural and substantive due process under the Fourteenth Amendment.[5] He also submitted a verified petition for judicial review of his administrative proceeding before the Committee.

On January 29, 2024, the court stayed the original denial of Patel's license renewal application such that the Budget 8 could remain open for business. (Dkt. 54). In the meantime, Patel's license renewal applications for the Budget 8 were granted for both 2024 and 2025. (Dkt. 154-2 at 26). Both parties now move the court for summary judgment. (Dkt. 151; Dkt. 158). Additionally, after filing his opening brief, Patel moved

[5] Patel also brought these claims under the "Due Course of Law" Clause in the Indiana Constitution, but due process claims are analyzed the same under both the United States Constitution and the Indiana Constitution. *Ind. High Sch. Athletic Ass'n, Inc. v. Carlberg*, 694 N.E.2d 222, 241 (Ind. 1997).

to dismiss his federal equal protection claim and his state law claims for tortious interference with a contractual relationship, intentional interference with a business relationship, and defamation. Defendants do not object. (Dkt. 173). The court therefore dismisses these claims with prejudice.

## II. Legal Standard

Summary judgment is appropriate where the record evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute about a material fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court views the facts in the light most favorable to the nonmovant and draws all reasonable inferences in the nonmovant's favor. *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018).

Courts often confront cross-motions for summary judgment because Rules 56(a) and (b) of the Federal Rules of Civil Procedure allow both plaintiffs and defendants to move for such relief. In such situations, courts must consider each party's motion individually to determine if that party has satisfied the summary judgment standard. *Sizelove v. Madison-Grant United Sch. Corp.*, 597 F. Supp. 3d 1246, 1268 (S.D. Ind. 2022). The court construes all facts and draws all reasonable inferences therefrom in the light most favorable to the respective nonmovant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 574 (1986).

## III. Discussion

### A. Procedural Due Process

Patel alleges five different violations of his right to procedural due process under the Fourteenth Amendment. They include: (1) a *Monell* claim against the City, BNS, and the individual Defendants in their official capacities under a custom or practice theory; (2) a *Monell* claim against the City, BNS, and Brands and Wunder in their official capacities under a failure to train and supervise theory; (3) a claim against Askew in his individual capacity; (4) a claim against Brands and Wunder in their individual capacities; and (5) a claim against the City and BNS for violations that allegedly occurred during Patel's administrative appeal before the License Review Committee.

"A procedural due process claim consists of two elements: (i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process." *Reed v. Goertz*, 598 U.S. 230, 236 (2023). Patel argues that he was deprived of protected interests in his property and liberty.

#### 1. Property Interest

Patel first argues that he had constitutionally protected property interests in his hotel operating license and the renewal of that license.

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). "This means an entitlement that stands or falls on the application of rules to facts. To the extent a request appeals to discretion rather than to

rules, there is no property." *Scott v. Vill. of Kewaskum*, 786 F.2d 338, 339–40 (7th Cir. 1986). Moreover, property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Roth*, 408 U.S. at 577; *see also Perry v. Sindermann*, 408 U.S. 593, 601 (1972) (explaining that a property interest can also be created through less formal rules or "mutually explicit understandings").

Here, the City's licensing ordinance makes clear that "a license shall not confer any property or other rights not specifically provided in Title IV of this Code on any licensee." Ind. Rev. Ord. § 801-207(b). This is particularly strong evidence that Patel lacked a property interest in his license. But the court does not rely on this language alone. *See Reed v. Vill. of Shorewood*, 704 F.2d 943, 948 (7th Cir. 1983) (finding protectable property interest in Illinois liquor license despite statutory language that liquor license "shall not constitute property"). Instead, the court also considers whether the ordinance "establish[es] substantive criteria which, if met, automatically entitle[s] an applicant to a [hotel] license." *Bayview-Lofberg's, Inc. v. City of Milwaukee*, 905 F.2d 142, 145 (7th Cir. 1990). For without such substantive criteria, "no property interest is created within the meaning of the due process clause." *Id.* at 145–46.

Patel originally argued that § 901-204(a) limits the Administrator's discretion to deny a license renewal application. That section reads:

> The administrator ***shall*** issue a new license, or grant the renewal of a license, ***except*** as provided in subsections (b), (c), or (d) of this section, which require the administrator to deny any application for a new license, or renewal of a license, and except as provided in subsections (e) and (f) of this section,

> under which the administrator ***may*** deny any application for a new license, or renewal of a license.

Ind. Rev. Ord. § 901-204(a) (emphasis added). Missing from this provision, however, are any substantive criteria that, if met, would entitle Patel to a license renewal. In fact, the provision identifies certain conditions that deprive the Administrator of discretion to *deny* a license renewal. At the same time, the provision points to two subsections "under which the administrator *may* deny any application for . . . renewal of a license." *Id.* (emphasis added). And here, the latter of these subsections—subsection (f)—served as one of the bases for the Administrator's decision. That subsection provides that:

> The administrator ***may*** deny any application for . . . renewal of a license, if a written objection detailing the reason for objection is submitted by Marion County Health and Hospital Corporation, Indianapolis Metropolitan Police Department, or the Indianapolis Fire Department, and the administrator concludes that issuance or renewal of the license would be inimical to the public welfare.

*Id.* § 901-204(f). In other words, once the Administrator receives a written objection from one of the listed entities, the Administrator may deny a license application if they conclude that renewing the license "would be inimical to the public welfare." What is this if not discretion? Just like an ordinance that permits a committee to consider factors relating "to the public health, safety, and welfare," the "inimical to the public welfare" language here calls upon the Administrator "to review and exercise discretion and judgment." *Bayview-Lofberg's*, 905 F.2d at 145–46.

Foreclosed by the language of § 901-204(f), Patel suggests that the application of other ordinances, statutes, and factual circumstances creates an "implied" property interest in license renewal. He argues that a "contextual review" shows that the discretion

provided by § 901-204(f) was limited by other provisions. For example, § 801-201(2) requires that the Administrator's orders be "reasonable." That provision also explains that the Administrator's powers are intended to enforce "all of the provisions of [the] Code." *Id.* And Patel devotes significant attention to the calls for service ratio.

In 2022, BNS placed the Budget 8 Inn on probation for its 3.19 calls for service ratio in 2021. (Dkt. 158-8). By the end of the year, the Budget 8 decreased its calls for service ratio below the 2.5 threshold. Patel directs the court to § 901-204(e)(4). That provision permits the Administrator to "deny any application for . . . renewal of a license, if . . . [f]or any hotel operating in a probationary period, the calls for service ratio is at or above 2.5 over any one year period after entering probation." Ind. Rev. Ord. § 901-204(e)(4). Since the Budget 8's calls for service ratio dipped below 2.5 in 2022, Patel argues that he was entitled to renewal. That is wrong.

Remember, § 901-204(e) lists several grounds for denying a license—grounds on top of the Administrator's existing discretion to deny an application using § 901-204(f). But complying with one of the several discretionary grounds for denying a license in § 901-204(e) does not entitle an applicant to a license. *Cf. Ace Partners, LLC v. Town of E. Hartford*, 883 F.3d 190, 200–01 (2d Cir. 2018). Even if none of the grounds provided in § 901-204(e) apply, nothing about that subsection limits the Administrator's ability to deny a license application under § 901-204(f). As Defendants point out, the purpose of giving the Administrator discretion to deny licenses using § 901-204(f) is to account for unforeseen or unforeseeable circumstances that might warrant denying a hotel license. A

"contextual review" therefore only confirms the discretionary nature of the hotel licensing regime.

Patel also suggests that cases that Defendants rely on—like *Scott* and *Bayview-Lofberg's*—are inapposite because the laws in those cases "created a structure of complete municipal discretion," and § 901-204(f) does not offer Defendants "complete discretion." (Dkt. 170 at 17–18). This "complete discretion" standard finds no support in the law. *See Wallace v. Robinson*, 940 F.2d 243, 247 (7th Cir. 1991) ("There is no such thing as unbridled discretion in American law.").

Finally, Patel claims that a licensee seeking renewal has "greater interests" than a new applicant. But the ordinance itself suggests otherwise, for it makes clear that even after a license has issued, it remains "subject to regulation, suspension, and revocation . . . whenever the mayor, the council or the license administrator deems the public welfare to require such regulation, suspension or revocation." Ind. Rev. Ord. § 801-207(b). Since the ordinance vests the mayor, the council, and the license administrator with discretion to revoke an issued license, there can be no property interest in a license, regardless of whether an applicant seeks renewal or a new license. *See id.* ("All licenses shall be granted and accepted as temporary privileges, and a license shall not confer any property or other rights not specifically provided in Title IV of this Code on any licensee."). § 901-204(f) likewise recognizes no distinction between the two. *Id.* § 901-204(f) ("The administrator may deny any application for a new license, or renewal of a license . . . .").

All that to say, Patel had no property interest in his hotel operating license or the renewal of that license.

### 2. Liberty Interest in Reputation

Patel also claims that Defendants deprived him of a liberty interest in his reputation, good name, honor, and integrity. *See Goss v. Lopez*, 419 U.S. 565, 574 (1975). The Seventh Circuit has previously stated:

> It is well-settled that an individual has no cognizable liberty interest in his reputation; consequently, when a state actor makes allegations that merely damage a person's reputation, no federally protected liberty interest has been implicated. *See Paul v. Davis*, 424 U.S. 693, 711–12 (1976); *Hojnacki v. Klein–Acosta*, 285 F.3d 544, 548 (7th Cir. 2002). Indeed, "mere defamation by the government does not deprive a person of liberty protected by the Fourteenth Amendment, even when it causes serious impairment of one's future employment." *Hojnacki*, 285 F.3d at 548 (internal quotations and citations omitted). Rather, it is only the "alteration of legal status," such as governmental deprivation of a right previously held, "which, combined with the injury resulting from the defamation, justif[ies] the invocation of procedural safeguards." *Paul*, 424 U.S. at 708–09; *Townsend v. Vallas*, 256 F.3d 661, 669 (7th Cir. 2001). As such, when a state actor casts doubt on an individual's "good name, reputation, honor or integrity" in such a manner that it becomes "virtually impossible for the [individual] to find new employment in his chosen field," the government has infringed upon that individual's "liberty interest to pursue the occupation of his choice." *Townsend*, 256 F.3d at 670.

*Dupuy v. Samuels*, 397 F.3d 493, 503 (7th Cir. 2005) (quoting *Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 617 (7th Cir. 2002)). This test is known as the "stigma plus" test. *Mann v. Vogel*, 707 F.3d 872, 878 (7th Cir. 2013).

Patel claims that his protected liberty interest is not tied to future employment opportunities. Instead, he argues that the City deprived him of his "right to enter into contracts to rent rooms to new guests." (Dkt. 170 at 24). But this formulation of Patel's liberty interest demonstrates a misunderstanding of the "stigma plus" test, for a necessary element of the "stigma plus" test is reputational damage so severe as to make it "virtually

impossible" for the plaintiff to earn a living in their chosen field. *Townsend*, 256 F.3d at 670. A liberty interest untethered to a plaintiff's future employment opportunities is not a liberty interest the "stigma plus" test contemplates.

*Mann*—another case that Patel relies on—is instructive. There, a plaintiff working in the childcare field had her day care license revoked and was "labeled as a possible child abuser." 707 F.3d at 876, 878. The court held that the plaintiff had "sufficiently pleaded the requirements of the 'stigma plus' test" because she alleged that being labeled a "child abuser" had prevented her from finding employment in the occupation of her choice. *Id.* at 878.

Here, Patel has provided no evidence that by incorrectly stating that the Budget 8 did not have a hotel license, Defendants made it "virtually impossible for [him] to find new employment in his chosen field." *Khan v. Bland*, 630 F.3d 519, 353 (7th Cir. 2010) (quoting *Brown v. City of Mich. City, Ind.*, 462 F.3d 720, 730 (7th Cir. 2006)). In fact, the record shows that even during the license-renewal process, Patel continued to operate the Budget 8 and the two other hotels that he owns—hotels that he continues to operate today. (Dkt. 154-2 at 6, 24).

Because Patel has provided no evidence that it was virtually impossible for him to find employment in the hotel industry, he cannot establish a protected liberty interest. And because Patel cannot establish that he has a protected interest in his property or liberty, Defendants are entitled to summary judgment on all of Patel's procedural due process claims.

### B. Substantive Due Process

The court has identified four distinct actions that Patel claims to have violated his right to substantive due process: (1) an arbitrary and capricious application of § 901-204(b)(1); (2) an arbitrary and capricious application of § 901-204(d) and § 801-303(a)(2); (3) an arbitrary and capricious application of § 901-204(f); and (4) Defendants' issuance of the orders in the denial letter and enforcement of those orders when OPHS employees visited the Budget 8.

"A person seeking relief under section 1983 for a violation of [his] Fourteenth Amendment right to substantive due process faces a difficult task," *Flores v. City of S. Bend*, 997 F.3d 725, 729 (7th Cir. 2021), as "the scope of substantive due process is very limited," *Tun v. Whitticker*, 398 F.3d 899, 902 (7th Cir. 2005). A viable substantive due process claim requires conduct "that 'violated a fundamental right or liberty' and was so 'arbitrary and irrational' as to 'shock the conscience.'" *Nelson v. City of Chicago*, 992 F.3d 599, 604 (7th Cir. 2021) (quoting *Campos v. Cook Cnty.*, 932 F.3d 972, 975 (7th Cir. 2019)). Fundamental rights and liberties are those "which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997) (citation modified).

Here, Patel has provided no evidence of a violation of a fundamental right or liberty. In fact, none of the violations identified above even implicate a fundamental right or liberty. In his reply brief, Patel seems to suggest that Defendants violated his right to cross-examination during his administrative hearing before the License Review

Committee. (*See* Dkt. 170 at 41). But that right is not the sort of fundamental right on which a substantive process claim can be based because the right to cross-examination is a *procedural* guarantee. *Cf. Glucksberg*, 521 U.S. at 720 ("[T]he 'liberty' specially protected by the Due Process Clause includes the rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, [and] to bodily integrity[.]" (citation modified)). And "[p]rocess is not an end in itself. Its constitutional purpose is to protect a *substantive* interest to which the individual has a legitimate claim of entitlement." *Wallace*, 940 F.2d at 248 (quoting *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983)).

Accordingly, Defendants are also entitled to summary judgment on all of Patel's substantive due process claims.

**C. Vagueness**

In addition to the due process claims the court has already discussed, Patel also challenges § 901-204(f) as unconstitutionally vague, both facially and as applied.

"The void for vagueness doctrine rests on the basic due process principle that a law is unconstitutional if its prohibitions are not clearly defined." *Hegwood v. City of Eau Claire*, 676 F.3d 600, 603 (7th Cir. 2012).[6] But the due process clause does not require "perfect clarity and precise guidance." *Ward v. Rock Against Racism*, 491 U.S.

---

[6] "The Seventh Circuit has read *Aladdin's Castle* to suggest that the vagueness doctrine applies 'in attenuated form' to licensing provisions and has assumed without deciding that there are at least some limits on the permissible degree of vagueness of such provisions." *Whole Woman's Health All. v. Hill*, 388 F. Supp. 3d 1010, 1035 (S.D. Ind. 2019) (quoting *Baer v. City of Wauwatosa*, 716 F.2d 1117, 1124 (7th Cir. 1983)), *vacated as moot*, No. 1:18-cv-1904, 2022 WL 20755425 (Feb. 25, 2022).

781, 794 (1989). Rather, a statute is unconstitutionally vague only if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Ctr. for Individual Freedom v. Madigan*, 697 F.3d 464, 478–79 (7th Cir. 2012) (quoting *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012)).

Moreover, "[t]he degree of vagueness that the Constitution tolerates . . . depends in part on the nature of the enactment." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982). Economic regulation, for instance, "is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action." *Id.* Enactments with civil rather than criminal penalties likewise receive "greater tolerance" because "the consequences of imprecision are qualitatively less severe." *Id.* at 498–99.

Here, Patel's facial challenge to § 901-204(f) fails because he does not claim that the ordinance threatens his First Amendment rights. *See United States v. Plummer*, 581 F.3d 484, 488 (7th Cir. 2009) (explaining that void-for-vagueness challenges are analyzed as-applied unless First Amendment interests are threatened).

As for Patel's as-applied challenge, the court must "examine the facts of the case . . . exclusively, and not any set of hypothetical facts under which the statute might be unconstitutional." *Hegwood*, 676 F.3d at 603. For a party "who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Hoffman Estates*, 455 U.S. at 495.

Section 901-204(f) regulates economic behavior and imposes no criminal penalties, so it is subject to a less strict vagueness test. *See id.* at 498–99. The challenged provision gives the Administrator discretion to deny a hotel license renewal application if (1) IMPD, IFD, or the Marion County Health and Hospital Corporation submits a written objection explaining the basis for the objection and (2) the Administrator concludes that "renewal of the license would be inimical to the public welfare." Ind. Rev. Ord. § 901-204(f). The "public welfare" is defined as "the health, safety, prosperity and convenience of the inhabitants of the city, either as a whole or individually." *Id.* § 801-102(b).

Patel correctly notes that the City has not adopted ascertainable standards for determining what constitutes "inimical to the public welfare." He argues that without more definite standards, § 901-204(f) vests the Administrator with "unfettered discretion to deny a license renewal, using no set criteria, based on nothing but the individual predilections, biases, and prejudices of the particular Administrator." (Dkt. 152 at 27). But to the extent the Administrator may arbitrarily and discriminatorily enforce the "inimical to the public welfare" standard, Patel must still show that the standard was applied arbitrarily and discriminatorily as to him. As this court has explained, "[e]very rule is susceptible of arbitrary enforcement in the sense that charges may be laid without sufficient evidence to support them. That does not make every rule vague." *Whole Woman's Health All.*, 388 F. Supp. 3d at 1038. The ultimate question for the court is whether the Administrator unconstitutionally applied the "inimical to the public welfare" standard to deny the Budget 8's license renewal application. *See Hegwood*, 676 F.3d at 603–04. If the answer is no, Patel's challenge fails.

On February 6, 2023, BNS sent Patel a denial letter explaining why it denied the Budget 8 Inn's license renewal application. (Dkt. 154-13). Of the three reasons BNS provided for the denial, Patel's vagueness challenge concerns only the last:

> In accordance with Section 901-204(f) of the Revised Code, the license administrator may deny an application for a renewal of a license if a written objection detailing the reason for the objection is submitted by IMPD and the administrator concludes that renewal of the license would be inimical to the public welfare. IMPD has provided a letter to the license administrator stating objections to the Budget 8 Inn license renewal because of concerns for public safety.

(*Id.* at 1). Clearly, the IMPD letter convinced the Administrator that renewal would be inimical to the public welfare. So what were these "concerns for public safety"? Well, the letter begins by describing the Budget 8 as "a regular source of chaos, disorder, and crime." (Dkt. 154-12 at 1). An analysis of police activities at the Budget 8 revealed that from the start of 2021 to the end of 2022, IMPD responded to 1,070 citizen-generated calls from the hotel and spent at least $270,000 policing it. (*Id.*). The hotel's calls for service ratio—which measures the volume of calls for service relative to the number of rooms a hotel operates—landed the Budget 8 on probation for 2022. (Dkt. 158-8); *see* Ind. Rev. Ord. § 901-102. Importantly, that ratio does not include calls made by a hotel's employees. Ind. Rev. Ord. § 901-102.

Patel allegedly relied on this exception to decrease the hotel's ratio and avoid another year of probation. (Dkt. 154-12 at 3). He posted a sign instructing guests to call the Budget 8's office if they needed police assistance. (*Id.*; Dkt. 158-9). The signs warned that 911 calls made from hotel rooms could result in the guest being asked to leave (without a refund) and a $50 penalty. (Dkt. 154-12 at 3; Dkt. 158-9). The IMPD

letter further claimed that Patel refused to change the policy even after an IMPD officer explained that the policy unlawfully interfered with an individual's ability to call 911 for assistance. (Dkt. 154-12 at 3).

Finally, the IMPD letter provided a list of specific incidents that occurred at the hotel in 2022. (*Id.* at 2–3). In addition to shootings, overdoses, and other crimes, officers discovered different deceased individuals in the hotel's rooms on multiple occasions. (*Id.* at 2). And in January 2023, just a few weeks before IMPD provided BNS with its letter, three individuals were shot at or near a room at the hotel. (*Id.* at 3).

To summarize, IMPD demonstrated in detail that the Budget 8 was not only a hotbed for crime but a drain on public resources. The Administrator surely relied on the IMPD letter to conclude that renewing the Budget 8's license would be "inimical to the public welfare"—that is, harmful to "the health, safety, prosperity and convenience of the inhabitants of the city, either as a whole or individually." Ind. Rev. Ord. § 801-201(b). Based on this record, that conclusion was not arbitrary and discriminatory. The "inimical to the public welfare" standard is by no means a model of clarity. But there is little doubt that the conduct described in IMPD's objection letter qualifies. As such, the court cannot conclude that § 901-204(f) was unconstitutionally applied to the Budget 8's license renewal application.

### D. Judicial Review of Administrative Appeal

Finally, Patel asks this court to review the Committee's order affirming the Administrator's denial of the Budget 8's license renewal application. Under Indiana law, a court may set aside an agency action and (1) remand the case to the agency for further

proceedings or (2) compel agency action that has been unreasonably delayed or unlawfully withheld. Ind. Code § 4-21.5-5-15. Here, Patel asks the court to vacate the Committee's order and to order the Administrator to issue or renew the Budget 8's license. (Dkt. 44 ¶ 452).

But BNS granted the hotel a license in 2024 and 2025; BNS only denied the hotel's renewal application in 2023. (Dkt. 154-2 at 26). And 2023 is over. In effect, Patel asks the court to order Defendants to do something they have already done—issue the Budget 8 a license. Since there is no relief for the court to grant on this claim, it is moot.

## IV. Conclusion

For the foregoing reasons, Plaintiffs' motion for partial summary judgment (Dkt. 151) is **DENIED**, and Defendants' cross-motion for summary judgment (Dkt. 158) is **GRANTED**. Moreover, Plaintiffs' motion for voluntarily dismissal of certain claims (Dkt. 167) is **GRANTED**. Those claims are dismissed with prejudice. As all claims have been resolved, final judgment shall issue forthwith by separate order.

**IT IS SO ORDERED** this 10th day of March 2026.

RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distribute Electronically to Registered Counsel of Record.